## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VICTOR CAGARA ORTIGUERRA, DONATO MANALILI AGUSTIN, AMADO TRANATE YUZON, CHRISTOPHER ESCALANTE RAYOS, ARVIN BANZON SAN PEDRO, WILFREDO BATONG SATUROS, ROSEL NUFABLE HERNANDEZ, SIEGFRIED TAPIA CARLOS, RENATO ARBOLIDA DECENA, and ISAIAS SANTIAGO DIGLASAN** | **CIVIL ACTION NO. 22-cv-00309**<br><br>**SECTION "J"**<br>**JUDGE CARL J. BARBIER**<br><br>**MAG. DIV. (4)**<br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |
| **VERSUS** | |
| **GRAND ISLE SHIPYARD, LLC and GIS, LLC** | |

## MEMORANDUM IN SUPPORT OF RENEWED RULE 12(b)(3) MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND COMPEL ARBITRATION

Defendants, Grand Isle Shipyard, LLC[1] and GIS, LLC ("GIS" or "Defendants"), submit their Memorandum in Support of Renewed[2] Motion to Dismiss First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and to Compel Arbitration. For the following reasons, this Court should grant Defendants' Motion, dismiss this action, and order Plaintiffs Victor Cagara Ortiguerra ("Ortiguerra"), Donato Manalili Agustin ("Agustin"), Amado Tranate Yuzon ("Yuzon"), Christopher Escalante Rayos ("Rayos"), Arvin Banzon San Pedro ("San Pedro"),Wilfredo Batong Saturos ("Saturos"), Rosel Nufable Hernandez ("Hernandez"), Siegfried Tapia Carlos ("Carlos"), Renato Arbolida Decena ("Decena") and Isaias Santiago Dinglasan

---

[1] GIS, LLC owns Grand Isle Shipyard, LLC.  Grand Isle Shipyard, LLC is the actual employer of the Plaintiffs in this matter.

[2] GIS filed its original Motion on June 8, 2022, R. Doc 14.  GIS's Renewed Motion addresses claims raised in Plaintiffs' First Amended Class Action Complaint, filed June 28, 2022, R. Doc. 19.

("Dinglasan") (collectively "Plaintiffs") to submit their claims to an arbitration tribunal in the Philippines.

## I.       INTRODUCTION

Plaintiffs are all Philippine nationals who came to the United States to work for GIS as welders and fitters on oil rigs, pursuant to Contracts of Employment they signed in Makati City, Philippines, the terms of which were authorized and approved by the Philippine Overseas Employment Administration ("POEA"). These contracts include the Standard Terms and Conditions Governing the Overseas Employment of Filipino Seafarers that incorporate the labor law of the Philippines which are also signed by Plaintiffs. The POEA is the administrative arm that enforces a comprehensive framework of laws in the Philippines governing the overseas employment and protection of Filipino workers. Under the employment contracts signed by Plaintiffs, their exclusive remedy as to **any** claim or dispute involving their employment, is through arbitration in the Philippines before the National Labor Relations Committee ("NLRC"), which has original and exclusive jurisdiction.

In their First Amended Complaint, Plaintiffs again allege violations of the Fair Labor Standards Act ("FLSA"), claiming they were not properly paid the minimum wage and overtime under the Act.[3] However, as definitively decided by the U.S. Court of Appeals for the Fifth Circuit in *Lim v. Offshore Specialty Fabricators, Inc.*[4] and most recently, by the Western District of Louisiana in *Calicdan v. M.D. Nigeria, LLC*[5], the arbitration provisions incorporated into the

---

[3] See First Amended Class Action Complaint at ¶¶ 142-149, R.Doc. 19.
[4] 404 F.3d 898 (5th Cir. 2005).
[5] See Judgment, *Calicdan v. M D Nigeria, LLC et al*, 2022 WL 2162645 (W.D. La. June 15, 2022); Report and Recommendation, *Calicdan v. M D Nigeria, LLC et al*, 2022 WL 2165638 (W.D. La. May, 17, 2022) (Attached to Motion as Exhibit "I").

PD.38102448.1

standard POEA approved employment contracts are valid and must be enforced under The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The Convention").

In an apparent but flawed attempt to circumvent the mandatory arbitration required under an international arbitration treaty, of which the United States and the Philippines are signatories, Plaintiffs have added additional claims, but this attempt is unavailing. Plaintiffs now assert claims pursuant to the Trafficking Victims Protection Act ("TVPA"), claiming violations of Title 18, Chapter 77 of the United States Code: 18 U.S.C. SS 1589, 1590, and 1594(b).[6] Specifically, the Plaintiffs allege the Defendants used physical restraint to force their labor and kept Plaintiffs locked in a bunkhouse except when using company provided transportation. However, as this court held in *Baricuatro v. Indus. Pers. & Mgmt. Services*, and the Western District more recently held in *Calicdan*, TVPA claims should **also** be arbitrated under the POEA.[7] The Fifth Circuit and Western District of Louisiana have also held that federal policy "favors enforcing arbitration agreements" found in international arbitration agreements.[8]

Plaintiffs also allege Defendants violated the Fair Housing Act ("FHA") by discriminating against Plaintiffs based on race, color, and/or national origin when assigning housing and quarantine accommodations.[9] However, since the housing/living quarters provided by GIS was directly arising from Plaintiffs' employment, it also is subject to the mandatory arbitration.

---

[6] See First Amended Class Action Complaint at ¶¶ 150-64, R. Doc. 19.
[7] *Baricuatro v. Indus. Pers. & Mgmt. Servs,* 927 F. Supp. 2d 348, 371 (E.D. La. 2013); *Calicdan v. M.D. Nigeria, LLC,* 2022 WL 2165638 (W.D. La. May 17, 2022) (Report and Recommendation);2022 WL 2162645 (W.D. La. June 15, 2022) (Judgment)
[8] *Servando Paraon Calicdan v. M D Nigeria, LLC*, 2022 U.S. Dist. LEXIS 106453, at *17-18 (W.D. La. 2022), *aff'd*, 2022 U.S. Dist. LEXIS 106446 (W.D. La. 2022); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 906 (5th Cir. 2005).
[9] See First Amended Class Action Complaint at ¶¶ 165-170, R. Doc. 19.

PD.38102448.1

Likewise, the Eastern District of Louisiana has held that FHA claims are subject to arbitration when binding arbitration agreements are present, as they are in this matter.[10]

Lastly, ignoring established law, Plaintiffs' First Amended Complaint also seeks a declaratory judgment that the enforceable arbitration provision should not be enforced and that the forum selection for arbitration in the Philippines should be disregarded.[11] However, the Fifth Circuit has held that forum selection clauses in POEA employment contracts require that any causes of action be pursued in the Republic of the Philippines. [12]

This Honorable Court is not the proper venue or forum to hear Plaintiffs' claims. Plaintiffs' claims should be dismissed and they should be compelled to submit their claims to an arbitration tribunal in the Philippines, pursuant to the Contracts of Employment and Standard Terms and Conditions they signed, the established law of the Philippines that requires such, and the governing international arbitration treaty which applies to all claims asserted in this matter.

## I.    FACTUAL BACKGROUND

### A.    The Parties.

GIS is a U.S. based oil and gas services company that provides a variety of services to clients in the drilling industry, including construction and repair work on offshore oil rigs and ships.[13] On occasion, GIS employs temporary foreign workers, such as Plaintiffs.[14] Plaintiffs Ortiguerra, Agustin, Yuzon, Rayos, San Pedro, Saturos, Hernandez, Carlos, Decena, and

---

[10] *Doe v. Tonti Mgmt. Co.*, No. CV 20-2466, 2021 WL 5508874, at *16 (E.D. La. Mar. 1, 2021) (motion to compel arbitration in FHA lawsuit granted); *Turnipseed v. APMT, LLC*, No. CV 18-5187, 2018 WL 5977889, at *3 (E.D. La. Nov. 14, 2018) (compelling arbitration in FHA lawsuit) *see also Kothe v. AIMCO*, No. 06-2097-CM, 2007 WL 2725975, at *2 (D. Kan. Sept. 17, 2007) (noting that "arbitration can be compelled for claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act, and Title VII" and "[l]ogically, if arbitration can be compelled for claims under other civil rights laws, then . . . arbitration can be compelled for claims under the Fair Housing Act."

[11] See First Amended Class Action Complaint at ¶¶ 171-76, R. Doc. 19.

[12] *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 219-24 (5th Cir. 1998).

[13] See Declaration of Hecton Lanasse, Attached to Defendants' Motion as Exhibit "A".

[14] See Exhibit "A" (Declaration of Hecton Lanasse).

Dinglasan are all citizens of the Republic of the Philippines.[15] Ortiguerra, Yuzon, Rayos, , Saturos, Hernandez, Carlos, Decena, and Dinglasan were employed by GIS as welders.[16]  Agustin and San Pedro were employed by GIS as fitters.[17]

    **B.**     **Applicable Philippines Labor Law.**

The Philippines has established a comprehensive framework of laws governing the employment of Filipinos overseas. The Philippines Labor Code mandates that the hiring of Filipino workers must be done through the Oversea Employment Development Board ("OEDB"), and employers such as GIS are prohibited from hiring workers directly.[18] Foreign employers are required to use a POEA accredited manning agency for the recruitment and hiring of workers.[19] These manning agencies act as an agent for the employers in the Philippines and help employers satisfy all the legal requirements under Philippine law for employment, including but not limited to the execution of contracts with POEA approval. [20] GIS maintains a relationship with POEA accredited manning agency DNR Offshore and Crewing Services, Inc. ("DNR") to facilitate these requirements and actions in the Philippines.[21]

The Labor Code requires employers to hold contracts of employment with their Filipino workers and that those contracts be approved by the Philippines Department of Labor.[22] The Labor Code also contains provisions intended to help the Philippine economy by mandating the remittance of wages earned overseas back into the Philippines. It is required under Philippine law that "all Filipino workers abroad to remit a portion of their foreign exchange earnings to their

---

[15] See Republic of the Philippines Passports, Attached to Defendants' Motion as Exhibit "B" **[Redacted].**
[16] See First Amended Class Action Complaint at ¶¶ 12-30, R. Doc. 19.
[17] See First Amended Class Action Complaint at ¶¶ 14, 20, R. Doc. 19.at ¶¶ 8, 14, R. Doc. 1.
[18] The Labor Code of the Philippines, Presidential Decree No. 442, as Amended at Pages 3-4, Attached to Defendants' Motion as Exhibit "C".
[19] See Exhibit "A" (Declaration of Hecton Lanasse).
[20] See Exhibit "A" (Declaration of Hecton Lanasse).
[21] See Exhibit "A" (Declaration of Hecton Lanasse).
[22] See Exhibit "C" at Page 5 (The Labor Code of the Philippines).

families, dependents, and/or beneficiaries in the country in accordance with rules and regulations prescribed by the Secretary of Labor."[23]

As part of the Philippines' labor law, the Migrant Workers and Overseas Filipinos Act of 1995 (the "MWOFA") was enacted to protect overseas workers from abuse.[24] The MWOFA defines "overseas workers" as any person engaged in work "in a state of which he or she is not a citizen or on board navigating the foreign seas."[25] Section 10 of the MWOFA mandates that the Labor Arbiters of the NLRC shall have exclusive jurisdiction of **all** claims involving Filipino overseas workers (not just seafarers) and spells out the mandatory arbitration provision:

> SECTION 10. Money Claims. — Notwithstanding any provision of law to the contrary, the Labor Arbiters of the National Labor Relations Commission (NLRC) shall have the original and exclusive jurisdiction to hear and decide, within ninety (90) calendar days after the filing of the complaint, the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages. (emphasis added).

The MWOFA establishes the POEA as the administrative arm of the overseas employment system.[26] The POEA's duties include promoting and monitoring overseas employment of Filipino workers from the preemployment stage and securing best employment terms and conditions for the workers.[27]

In October 2010, the POEA promulgated Memorandum Circular No. 10.[28] Circular No. 10 appended the Amended Standard Terms and Conditions Governing the Overseas Employment

---

[23] See Exhibit "C" at Page 5 (The Labor Code of the Philippines).
[24] The Migrant Workers and Overseas Filipinos Act of 1995, as Amended by Republic Act No. 10022 at Pages 18-19, Attached to Defendants' Motion as Exhibit "D".
[25] See Exhibit "D" at Page 3 (The Migrant Workers and Overseas Filipinos Act of 1995).
[26] See Exhibit "D" at Page 4-5 (The Migrant Workers and Overseas Filipinos Act of 1995).
[27] See Exhibit "D" at Pages 18-19 (The Migrant Workers and Overseas Filipinos Act of 1995).
[28] See POEA Memorandum Circular No. 10, Series of 2010, Attached to Defendants' Motion as Exhibit "E".

of Filipino Seafarers On-Board Ocean-Going Ships ("Standard Terms and Conditions"), which set forth the minimum requirements for employment of Filipino seafarers.[29] Under Circular No. 10 of 2010, a "seafarer" is defined as "any person who is employed or engaged in overseas employment in any capacity on board a ship other than a government ship used for military or non-commercial purposes.[30] Subsequently, the POEA enacted the 2016 POEA Rules, which redefined "seafarer" as "any person who is employed or engaged or works **in any** capacity on board a ship." [31]

Circular No. 10 requires manning agencies who contract with employers to facilitate employment of Filipino workers (such as DNR did for GIS in this instance) to submit seafarers' contracts to the POEA for approval and processing. Seafarers are required to attend a Pre-Departure Orientation Seminar ("PDOS") within two weeks prior to their departure, during which they must discuss the Standard Terms.[32] Circular No. 10 further requires that Filipino seafarers be given a copy of their employment contracts as well as a copy of the Standard Terms.[33] Circular No. 10 also contains the following provision exclusively requiring arbitration of all employment claims:

> SECTION 29. DISPUTE SETTLEMENT PROCEDURES
>
> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary

---

[29] See Exhibit "E" at Pages 3-39 (POEA Memorandum Circular No. 10).
[30] See Exhibit "E" at Page 2 (POEA Memorandum Circular No. 10).
[31] See 2016 Revised POEA Rules and Regulations Governing the Recruitment and Employment of Seafarers, Attached to Defendants' Motion as Exhibit "F".
[32] See POEA Memorandum Circular No. 3, Series of 1983, Attached to Defendants' Motion as Exhibit "G".
[33] See Exhibit "E" (POEA Memorandum Circular No. 10).

arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

The Philippine Overseas Employment administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers.

SECTION 31. APPLICABLE LAW

Any unresolved dispute, claim or grievance arising out of or in connection with this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory.

**C.     Plaintiffs' Contracts of Employment.**

Plaintiffs Ortiguerra, Agustin, Yuzon, Rayos, San Pedro, Saturos, Hernadez, Carlos, Decena and Dinglasan all entered into identical POEA standardized and approved Contracts of Employment to perform duties offshore working on GIS's customer's oil rigs/platforms.[34] The contracts identify DNR as the Agent, and Grand Isle Shipyard, Inc. as the name of the Principal/Shipowner.[35] The contracts identify each Plaintiff as "Seafarer."[36] Plaintiffs' Contracts of Employment incorporate the POEA Standard Terms and Conditions in full. Specifically, Clause 2 states "[t]he terms and conditions in accordance with Governing Board Resolution No. 9, and **Memorandum Circular No. 10**, both Series of 2010, and Memorandum Circular No. 34, series of 2020 (compliance with the 2018 Amendments to the Maritime Labor Convention 2006) **shall**

---

[34] See Plaintiffs' Contracts of Employment and Standard Terms and Conditions, Attached to Defendants' Motion as Exhibit "H" **[Redacted]**; Exhibit "A" (Declaration of Hecton Lanasse).
[35] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions) **[Redacted]**.
[36] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions) **[Redacted]**.

**be strictly and faithfully observed.**" [37] (emphasis added). The contracts are signed by each Plaintiff, the employer and a representative official of the POEA, who approved each contract as required under the law of the Philippines.[38] Likewise, full and complete copies of the Standard Terms and Conditions signed by each Plaintiff are included with each of the Plaintiffs' Contracts of Employment. [39] Directly arising out of their employment with GIS, GIS provided all Plaintiffs with housing/living quarters during their employment.[40]

## II.      LAW AND ARGUMENT FOR MOTION

### A.      Legal Standard for Motion to Dismiss.

In *Lim v. Offshore Specialty Fabricators, Inc.*, the Fifth Circuit determined that a Rule 12(b)(3) motion is the proper procedural vehicle to request dismissal based on a forum selection clause with a Filipino overseas worker.[41] "Under Rule 12(b)(3), the burden of sustaining venue rests with the plaintiff."[42] The court accepts as true all allegations in the complaint and resolves any conflicts in favor of the plaintiff.[43] However, the court is allowed to look beyond the complaint and consider the evidence submitted by the parties.[44] Dismissal is appropriate when all of the issues raised must be submitted to arbitration.[45]

### B.   Plaintiffs' claims should be dismissed because their Contracts of Employment require all claims arising out of their employment or the Contracts to be arbitrated in the Philippines and the Convention requires enforcement of the arbitration provision.

---

[37] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions ) **[Redacted]**.
[38] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions ) **[Redacted]**.
[39] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions ) **[Redacted]**.
[40] See Exhibit "A" (Declaration of Hecton Lanasse).
[41] *Lim,* 404 F.3d at 902
[42] *Axiall Can. Inc. v. MECS Inc*., 517 F.Supp.3d 603, 606 (W. D. La. 2021).
[43] *Id*.
[44] *Id*. (citing *Ambraco, Inc. v. Bossclip B.V*., 570 F.3d 233, 238 (5th Cir. 2009)).
[45] *Id.; see also, Lim*, 404 F.3d at 908 (reversing district court's denial of motion to dismiss and finding dismissal warranted on the arbitration provision).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 202-208, to which both the United States and the Philippines are signatories, provides that:

> [e]ach contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

*Id.* quoting Convention, Article II(1); *Francisco v. STOLT ACHIEVEMENT* MT, 293 F.3d 270, 272 (5th Cir. 2002); *Balen v. Holland America Line, Inc.*, 2007 WL 4190407, *5 (W.D. WA. Nov. 7, 2007).

The Convention is the supreme law of the land.[46] "If an international arbitration clause falls under The Convention Act, The Convention requires district courts to order arbitration." [47] In applying the Convention, the Fifth Circuit "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen.  "If these requirements are met, the Convention **requires** district courts to order arbitration."[48] These requirements are satisfied in the instant matter and thus, Plaintiffs' claims should be dismissed and they should be ordered to assert those claims in the Philippines.

> **1. Plaintiffs' employment contracts contain a clear and unambiguous agreement to arbitrate all claims arising out of the employment relationship.**

---

[46] *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co*., 767 F.2d 1140, 1145 (5th Cir. 1985).
[47] *Lim,* 404 F.3d at 903  (internal quotations omitted) (quoting *Sedco*, 767 F.2d at 1145); *see also* 9 U.S.C._ § 201 ("The Convention  . . . shall be enforced in United States courts ....").
[48] *Francisco*, 293 F.2d at 273.

All Plaintiffs signed the standard employment contracts, which expressly adopt and incorporate the Standard Terms in Clause 2 where it states "[t]he terms and conditions in accordance with POEA Governing Board Resolution No. 09 and **Memorandum Circular No. 10**, both series of 2010, ***shall be strictly and faithfully observed***." [49] The standard terms in Circular 10 state in relevant part:

> SECTION 29. DISPUTE SETTLEMENT PROCEDURES
>
> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.
>
> The Philippine Overseas Employment administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers.

Further, in addition to the incorporated reference in the Contracts of Employment, each of the Plaintiffs personally signed full copies of the Standard Terms and Conditions, which contain the same mandatory arbitration provisions contained in Circular 10. [50]

---

[49] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions ). *See also Llagas v. Sealift Holdings,* 2018 U.S. Dist. LEXIS 237529, *9 (W. D. La. July 27, 2018) ("The POEA-mandated employment contracts incorporate the Philippine government's Standard Terms...through reference to Memorandum Circular No. 10").
[50] See Exhibit "H" (Plaintiffs' Contracts of Employment and Standard Terms and Conditions ) **[Redacted]**.

This exact provision to arbitrate in the Philippines has been interpreted as valid and enforceable by the Fifth Circuit, the Western District of Louisiana and this Honorable Court. In *Lim v. Offshore Specialty Fabricators, Inc.*, as in the instant case, the plaintiffs asserted various wage claims under the FLSA. In *Lim*, the Fifth Circuit determined that the plaintiffs FLSA claims, initially asserted in the Eastern District of Louisiana, were properly arbitrated in the Philippines, even though FLSA claims are rooted in United States law:

> Without deciding whether plaintiffs' claims are subject to the FLSA, we note that the NLRC, the Philippine body charged with arbitrating employment claims under Standard Terms § 29, is statutorily empowered to have "original and exclusive jurisdiction to hear and decide ... the claims arising out of an employer-employee relationship or by virtue of *any law* or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages".

*Lim*, 404 F.3d at 907-08. In *Lim*, the Fifth Circuit also noted that Section 10 of the MWOFA bestows exclusive jurisdiction of all claims from Filipino overseas workers onto the NLRC.[51] The Fifth Circuit's ruling in *Lim* is binding precedent.

The Western District of Louisiana followed *Lim* and enforced the same arbitration provision in *Llagas v. Sealift Holdings, Inc.*, 2018 U.S. Dist. LEXIS 237529, *8-16 (W. D. La. July 27, 2018). In *Llagas* the District Court relied on the express language of Section 29 of Circular No. 10 that was adopted and incorporated into the contract in question and compelled arbitration in the Philippines.[52] The District Court in *Llagas* cited to *Lim* in noting that "[a] plaintiff 'seeking to avoid the enforcement of an arbitration agreement faces a high bar, even when the claims at issue are statutory.'"[53]

---

[51] *Lim,* 404 F.3d at 908.
[52] *Id.* at *16.
[53] *Id.* at 13 (citing *Lim*, 404 F.3d at 907).

12

Much more recently, in the Western District of Louisiana, the U.S. Magistrate's Report and Recommendation in *Calicdan v. M.D. Nigeria, LLC et al.*, No. 6:21-cv-03283 (W. D. La. May 17, 2022), recommended that the defendant's Motion to Dismiss and Compel Arbitration be granted on the basis of the express arbitration provisions of the POEA approved contract. The Report and Recommendation was subsequently approved by the District Court, which entered a Judgment granting defendant's Motion to Dismiss and Compel Arbitration.[54]

The Report and Recommendation noted that "the Court is further bound by the Migrant Workers Act, which grants original and exclusive jurisdiction to the Labor Arbiters of the NLRC to hear and decide 'claims arising out of an employer-employee relationship or by virtue of *any law*, or contract involving Filipino workers for overseas deployment including claims actual, moral, exemplary and other forms of damages.'" [55] *See also Amizola v. Dolphin Shipowner, S.A.,* 354 F. Supp. 2d 689, 696-97 (E. D. La. 2004) (internal citations omitted)("[Plaintiff] signed a written employment contract, and the arbitration provision provides for arbitration of claims, whether covered by a collective bargaining agreement or not, in the Philippines as designated by the Department of Labor and Employment . . . .").

### 2. Plaintiffs' employment contracts provide for arbitration of all claims in the Republic of the Philippines, a Convention Signatory.

It is clear that the arbitration provision in the Contracts of Employment provide for arbitration of Plaintiffs' claims in the Philippines and that the Philippines is a Convention signatory. As the Fifth Circuit noted, the NLRC has exclusive jurisdiction over all claims under "***any law***" arising out

---

[54] See Judgment, *Calicdan v. M D Nigeria, LLC et al*, 2022 WL 2162645 (W.D. La. June 15, 2022); Report and Recommendation, *Calicdan v. M D Nigeria, LLC et al*, 2022 WL 2165638 (W.D. La. May, 17, 2022), Attached to Defendants' Motion as Exhibit "I".
[55] See Exhibit "I" at *8 (Report and Recommendation).

of the employment relationship or the contract involving Filipino workers.[56] As a result, all of Plaintiffs claims must be arbitrated in the Philippines.[57]

### 3. Plaintiffs' agreements arise out of a commercial legal relationship.

Plaintiffs' FLSA claims arise out of their employment contracts with DNR as welders and fitters for GIS, which contracted with DNR as its agent for overseas workers pursuant to a legal agreement. In *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270 (5th Cir. 2002), the Fifth Circuit considered a Filipino seaman's employment contract similar to the one at issue and clarified that such contracts "arise out of a commercial legal relationship". 293 F.3d at 273. This is well settled law that has been adopted throughout the Fifth Circuit. *See Llagas*, 2018 U.S. Dist. LEXIS 237529, at *9; *Lim* , 404 F.3d at 908; *Amizola*, 354 F. Supp. 2d at 696-97. It is undisputed that Plaintiffs' agreement to arbitrate arises out of a commercial legal relationship.

### 4. Plaintiffs are parties to the agreement and are not American citizens.

The passports of each of the ten Plaintiffs establish that they are citizens of the Philippines.[58] The contracts signed by the Plaintiffs also state that each is a citizens of the Philippines.[59] Accordingly, all prongs of the four-part test are satisfied.  The arbitration agreement incorporated into Plaintiffs' employment are controlled by The Convention: The employment contracts are in writing; they require arbitration in the Philippines, a signatory to The Convention; they describe a "contractual legal relationship"; and Plaintiffs are not American citizens. The Standard Terms and Condition, which also require arbitration in the Philippines were signed by each Plaintiff. Because the United States is a signatory to The Convention, and Congress enacted enabling legislation, The Convention is applicable as federal law in this case and the arbitration provision within the

---

[56] *Lim*, 404 F.3d at 908.
[57] *Id*. (finding FLSA claims subject to arbitration in Philippines).
[58] See Exhibit "B" (Republic of the Philippines Passports) **[Redacted]**
[59] See Exhibit "H" (Contracts of Employment and Standard Terms and Conditions).

Employment Contracts and Standard Terms must be honored by dismissing Plaintiffs' lawsuit and compelling arbitration in the Philippines.

> **5. Plaintiffs' TVPA claims are subject to POEA's mandatory arbitration agreement.**

In the Western District of Louisiana's recent ruling in *Calicdan v. M.D. Nigeria, LLC,* 2022 WL 2165638 (W.D. La. May 17, 2022) (Report and Recommendation) 2022 WL 2162645 (W.D. La. June 15, 2022) (Judgment), the District Court approved the Magistrate's Report and Recommendation and issued a Judgment that the plaintiff's TVPA claim (and all other claims) were subject to POEA arbitration in the Philippines, and granted the defendant's Motion to Dismiss and to Compel Arbitration. The fact that the unsuccessful and rejected arguments asserted by the plaintiff in *Calicdan* are essentially identical to those asserted in Plaintiffs' First Amended Class Action Complaint is not a coincidence. Counsel for Plaintiffs in this case is the same attorney for the plaintiff in *Calicdan*, and the same rejected arguments are merely being recycled in the instant litigation. Likewise, in *Baricuatro v. Indus. Pers. & Mgmt. Servs.,* this court considered TVPA claims from Filipino workers.[60] As in this case, the *Baricuatro* plaintiffs argued that they experienced forced labor in violation of the TVPA.[61] The plaintiffs also argued that their TVPA claim did not "arise from" employment and thus was not subject to mandatory arbitration.[62] The court stated that claims "appear to go to the very nature of the employment relationship" holding that the TVPA claims at issue should be arbitrated.[63] In *Lim,* Filipino plaintiffs challenged arbitration provisions within their POEA contracts, arguing that the provisions were against Louisiana public policy and inapplicable to their wage claims.[64] The *Lim* court reasoned that

---

[60] 927 F. Supp. 2d at 371.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Lim*, 404 F.3d at 901.

"strong federal policy in favor of international arbitration agreements in general . . . favors enforcing the arbitration agreements."[65] Since the Plaintiffs' TVPA claims in the instant case are rooted in the employer-employee relationship, the claims should be subject to POEA mandatory arbitration agreement.

### 6. Plaintiffs' FHA discrimination claims should be subject to POEA's mandatory arbitration agreement.

In this case, Plaintiffs base their FHA claims upon the housing/living quarters GIS provided to Plaintiffs arising out of and as a direct result of their employment with GIS. Accordingly, such a claim clearly falls under the mandatory arbitration in the Philippines under the enforceable and binding Contracts of Employment in this matter. Federal courts have consistently found that binding arbitration agreements will be upheld in FHA claims.[66] For example, in *Turnipseed,* the Eastern District of Louisiana granted a defendant's motion to compel arbitration when a plaintiff wanted the agreement dismissed.[67] This court held that no federal law or policy prohibits arbitration in FHA claims.[68] Thus, the Plaintiffs FHA discrimination claims should be arbitrated under POEA.

### 7. Plaintiffs' request for a declaratory judgment should be denied.

As noted above, Plaintiffs contractually agreed to arbitration in accordance with the law of the Philippines, and federal courts in Louisiana and the Fifth Circuit have consistently enforced POEA arbitration agreements identical to the ones in this matter. Nonetheless, Plaintiffs' First

---

[65] *Id.* at 906.
[66] *Doe v. Tonti Mgmt. Co.*, No. CV 20-2466, 2021 WL 5508874, at *16 (E.D. La. Mar. 1, 2021); *Turnipseed v. APMT, LLC*, No. CV 18-5187, 2018 WL 5977889, at *3 (E.D. La. Nov. 14, 2018) *quoting Kothe v. AIMCO*, No. 06-2097-CM, 2007 WL 2725975, at *2 (D. Kan. Sept. 17, 2007) (noting that "arbitration can be compelled for claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act, and Title VII" and "[l]ogically, if arbitration can be compelled for claims under other civil rights laws, then . . . arbitration can be compelled for claims under the Fair Housing Act.").
[67] *Turnipseed*, , No. CV 18-5187, 2018 WL 5977889, at *3.
[68] *Id.*

Amended Class Action Complaint asserts a myriad of ostensible reasons as to why this well-established precedent should be ignored.  These include purported public interest factors, including that "[t]he NLRC" in the Philippines will not enforce U.S. statutory remedies", the unsupported conclusory claim that "[c]orruption in NLRC arbitration is widespread" and other reasons Plaintiffs allegedly do not want to return to their home country.[69] Plaintiffs' request for a declaratory judgment rejecting arbitration has been rejected by federal courts under almost identical circumstances, and it should be rejected here.

Plaintiff's argument is that the Philippines is an inadequate and unavailable forum and thus analyzed under the *forum non conveniens* analysis. *See Layson v. Baffin Invs., Ltd.*, 2015 U.S. Dist. LEXIS 124962, at *16-*17 (M.D. La. Sep. 18, 2015) (relying on *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, et al.*, 134 S.Ct. 568, 580, 187 L. Ed. 2d 487 (2013) to determine whether the Philippines and NLRC are an adequate and available forum for POEA contract claims).  In *Atlantic Marine*, the Supreme Court ruled that the private interest factors[70] are irrelevant to enforcing a valid forum-selection clause under the *forum non conveniens* analysis and that the "valid forum-selection clause should be given controlling weight in all but the most exceptional circumstances." *Layson*, 2015 U.S. Dist. LEXIS 124962, at *16-*17, citing *Atlantic Marine,* 134 S.Ct. at 583. "The district court 'should not consider arguments about the parties' private interests. Instead, the court 'must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. (quoting *Atlantic Marine,* 134 S.Ct. at 583).

---

[69] See First Amended Class Action Complaint at ¶¶ 95-115, R. Doc. 19.

[70] The private interest factors include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1154 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S. Ct. 1928, 104 L. Ed. 2d 400 (1989).

17

The Philippines is an available forum. The Supreme Court and the Fifth Circuit makes clear that a foreign forum is available to a plaintiff haling from the forum's country if the defendant submits itself to the foreign jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 102 S.Ct. 252, 265, 70 L.Ed.2d 419, 435 (1981) (the "requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."); *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 728 (5th Cir. 1990) (finding the Philippines an available forum); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). In this instance, GIS is willing to submit to the jurisdiction of the NLRC as it is **required** to do under the contract. Thus, the Philippines forum is an available forum.

The Philippines is an adequate forum. "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, ***even though they may not enjoy all the benefits of an American court***." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007)(emphasis added). "The substantive law of the foreign forum ***is presumed to be adequate unless the plaintiff makes some strong showing to the contrary***, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Id.* (emphasis added). Critically, the Fifth Circuit has ruled that the determination of adequacy and availability is subject to precedent and district courts can rely on previous rulings on adequacy and availability. *In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009). "Unless [the plaintiff] can show evidence distinguishing this case from our precedent . . . or ***reliable*** evidence of some subsequent change in [Philippine] law that calls our earlier determinations into serious question, plaintiffs cannot prevail in their [*forum non conveniens*] defense." *Id.* (emphasis added).

The Fifth Circuit and numerous courts within the circuit have found the Philippines to be an available and adequate forum. *See, e.g. Layson*, 2015 U.S. Dist. LEXIS 124962, at *26; *Quintero*, 914 F.2d at 731; *Llagas*, 2018 U.S. Dist. LEXIS 237529, at *12; *Lim*, 404 F.3d at 900; *Francisco v. STOLT Achievement MT*, 293 F.3d 270 (5th Cir. 2002); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998); *Baricuatro*, 927 F. Supp. 2d at 360. Plaintiff provides no reliable evidence of a subsequent change that justifies a deviation from this precedent. Instead, the facts of this case further establish the Philippines as adequate and available to Plaintiff.

It is notable that in the recently decided *Calicdan* case in the Western District of Louisiana, the plaintiff in that case made similar arguments, each of which the court fully and squarely rejected in favor of the contractually agreed arbitration in the Philippines.  As noted by the court in *Calicdan* "[i]t is hardly unfair to require a Filipino national to prosecute his claims in his own country" and "the Court finds Plaintiff must proceed to arbitration as required by the contracts mandated by his home country." *Calicdan*, 2022 WL 2165638 at *11; s*ee also Gavino v. Eurochem Italia*, 2001 WL 845456 at *4 (E.D. La. July 24, 2001), citing *Scherk v. Albertoo-Culver Co.*, 417 U.S. 506, 516-17 (1974) ("[T]he Court does not find that [the plaintiff's] appeal to equity overcomes the strong policy favoring arbitration in international disputes.") Accordingly, due to the aforementioned reasons, the First Amended Class Action Complaint's request for a declaratory judgment to find the arbitration agreement unenforceable should be denied.

### III.   CONCLUSION

Having signed and entered into POEA-approved Contracts of Employment and Standard Terms and Conditions to work as welders and fitters, Plaintiffs cannot pursue their employment-related FLSA claims, TVPA forced labor claims, and FHA discrimination claims in this Court. The arbitration provision, forum selection and choice of law rules within their employment contracts

PD.38102448.1

and mandated under Philippine law requires that their claims be brought before an arbitrator or panel of arbitrators in the Philippines. For these reasons, this Court should dismiss Plaintiffs' claims on the basis of improper venue, deny their declaratory judgment, and compel them to submit their claims before an arbitrator in the Philippines.

Dated August 1, 2022

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:      */s/ David M. Korn*
DAVID M. KORN (#21676) [T.A.]
STEPHANIE M. POUCHER (#37263)
MARK FIJMAN (#37680)
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
david.korn@phelps.com
stephanie.poucher@phelps.com
mark.fijman@phelps.com

**ATTORNEYS FOR DEFENDANTS, GRAND ISLE SHIPYARD, LLC AND GIS, LLC**