# 2016 REVISED POEA RULES AND REGULATIONS GOVERNING THE RECRUITMENT AND EMPLOYMENT OF SEAFARERS

## PART I
## GENERAL PROVISIONS

### RULE I
### Statement of Policy

It is the policy of the Administration:

1. To uphold the dignity and fundamental human rights of Filipino seafarers navigating foreign seas, and promote full employment and equality of employment opportunities for all;

2. To protect every Filipino seafarer desiring to work overseas by securing the best possible terms and conditions of employment;

3. To allow the deployment of Filipino seafarers to ships whose owners or employers are compliant with international laws and standards that protect the rights of seafarers;

4. To develop strategies and programs to ensure full and quality employment opportunities for Filipino seafarers, through possession of appropriate levels of competence, training and certification as required by the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, (1978 STCW Convention, as amended) and other applicable conventions, laws, rules and regulations;

5. To ensure careful selection of Filipino seafarers for overseas employment, in order to protect the good name of the Philippines overseas;

6. To pursue, with the active participation of the private sector, the creation of an environment conducive to an overseas employment program that maximizes opportunities for employment generation, facilitation, enhancement and preservation;

7. To support programs for the reintegration of returning Filipino seafarers into Philippine society;

8. To disseminate and allow free flow of information which will properly prepare individuals for making informed and intelligent decisions about overseas employment, and will inform Filipino seafarers of their rights and obligations, as well as instruct and guide them on how to assert their rights, and to provide them the available mechanisms to assert such rights;



1

9.  To establish an adequate shared government information system on overseas employment, using computer databases that are linked electronically to allow verification and free flow of data exchanges;

10. To provide an effective gender-sensitive mechanism that can adequately protect and safeguard the rights and interests of Filipino seafarers;

11. To recognize the participation of the private sector in the recruitment and placement of Filipino seafarers to serve national development objectives;

12. To monitor and regulate private sector participation in the recruitment and placement of Filipino seafarers;

13. To formulate and implement, in coordination with appropriate entities concerned, a system for promoting and monitoring the employment of Filipino seafarers, taking into consideration their welfare and domestic manpower requirements; and

14. To protect and promote the welfare of the Filipino seafarers, in partnership with other government agencies, licensed manning agencies, non-government organizations, unions, seafarers' associations, stakeholders and other duly recognized similar entities, in a spirit of mutual trust and respect.

**RULE II**
**Definition of Terms**

For purposes of these Rules, the following terms are defined as follows:

1.  Accreditation — refers to the grant of authority by the Administration to a principal/employer to recruit and hire Filipino seafarers for overseas employment through a licensed manning agency.

2.  Administration — refers to the Philippine Overseas Employment Administration (POEA).

3.  Administrator — refers to the Administrator of the POEA.

4.  Allottee — refers to any person named or designated by the seafarer to be the recipient of his/her remittances in the Philippines, in accordance with Article 22 of the Labor Code.

5.  Authentication — refers to an attestation by the Philippine Embassy/Philippine Consulate General or competent authority of the genuineness of the signature appearing on the document, for the purpose of identifying a specific document and giving credence to the official act of the notary public or certifying officers thereon for use, if and when required, as an instrument of evidence in a foreign country.

6.  Beneficiary — refers to the person/s to whom death compensation and other benefits of the seafarers under the employment contract are due and payable in accordance with the rules of succession under the Civil Code of the Philippines, as amended.

7. Claims — refers to: (a) valid contractual claims for compensation or benefits arising from an employer-employee relationship or valid contractual claims for any personal injury, illness or death at levels provided within the terms and conditions of employment of seafarers, which are within the jurisdiction of NLRC; or (b) refers to any claims arising from recruitment violations within the jurisdiction of POEA.

8. Contracted seafarer — refers to a Filipino seafarer whose employment contract has been processed by the POEA for overseas deployment.

9. Cruise Ship Personnel — refers to seafarers engaged as part of the hotel crew onboard a passenger ship.

10. DOLE — refers to the Department of Labor and Employment.

11. Derogatory record — refers to the resolution on the finding probable cause by the Department of Justice for illegal recruitment, falsification, swindling/estafa, or for other related crimes or offenses, or a licensed manning agency whose license had been cancelled or revoked by the POEA, including its proprietors, partners or officers, directors, and employees responsible for the commission of the crime or offense. This includes a certification from the NBI that a person has derogatory record.

12. DFA — refers to the Department of Foreign Affairs.

13. Documentary cost — refers to the cost of all statutory requirements to be shouldered by the applicant Filipino seafarer for overseas employment.

14. Employment Contract / Standard Employment Contract — refers to the POEA - prescribed contract containing the minimum terms and conditions of employment, which shall commence upon actual departure of the seafarer from the Philippine airport or seaport in the point of hire.

15. Enrollment — refers to the enlistment by the Administration of a ship of an accredited principal/employer to its appointed manning agent for the purpose of employing seafarers.

16. Fisher — refers to any person employed or engaged in any capacity or carrying out an occupation on board any fishing vessel, including persons working on board who are paid on the basis of a share of the catch but excluding pilots, naval personnel, other persons in the permanent service of a government, shore-based persons carrying out work aboard a fishing vessel, and fisheries observers (check).

17. Head or manage a licensed manning agency — refers to any of the following acts:

   a. Controlling and supervising the operations of the licensed manning agency or any branch thereof; or

b. Exercising the authority to hire or fire employees and to lay down and execute management policies of the licensed manning agency or branch thereof.

18. Jobs fair authority — refers to the authority issued by the Administration which allows licensed manning agencies to conduct recruitment activities outside their registered addresses during jobs fairs.

19. Jobs Fair — refers to an employment facilitation activity for licensed manning agencies to conduct recruitment activities in a venue outside of their registered business addresses.

20. Joint and Several Liability — refers to the nature of liability of the principal/employer and the licensed manning agency, for any and all claims arising out of the implementation of the employment contract involving seafarers. It shall likewise refer to the nature of liability of partners, or officers and directors with the partnership or corporation over claims arising from employer-employee relationship.

21. LAC — refers to the Labor Assistance Center of the POEA located at international airports and other exit points.

22. LOA — refers to the letter of authority issued by the Administration authorizing an accredited principal/employer or its representative/s to participate in the screening, interview and selection of applicants for their crew orders, in places outside the registered business address of the licensed manning agency as indicated in the special recruitment authority.

23. License — refers to the document issued by the Secretary of Labor and Employment or his/her duly authorized representative authorizing a person, partnership or corporation to operate a licensed manning agency.

24. Licensed Manning Agency — refers to a person, partnership or corporation duly licensed by the Secretary or his/her duly authorized representative to engage in the recruitment and placement of Filipino seafarers for a ship plying international waters and for related maritime activities.

25. Manning Agreement — refers to a written agreement entered into by and between a principal/employer and a licensed manning agency defining their respective rights, obligations and responsibilities in the recruitment and placement of seafarers.

26. Manning Agency Fee — refers to the amount charged by a licensed manning agency to its principal/employer as payment for actual services rendered in relation to the recruitment and placement of seafarers.

27. MARINA — refers to the Maritime Industry Authority.

28. NBI — refers to the National Bureau of Investigation.

4

29. New Principal — refers to a principal/employer which has never been accredited with any licensed manning agency; provided, that its new ship must not have been enrolled with any licensed manning agency. The principal/employer and its ship shall likewise not have directly hired Filipino seafarers.

30. NLRC — refers to the National Labor Relations Commission.

31. Non-licensee — refers to a person, partnership or corporation without a valid license to engage in the recruitment and placement of Filipino seafarers, or whose license had been revoked, cancelled, expired or otherwise delisted from the roll of licensed manning agencies registered with the Administration.

32. OEC — refers to the overseas employment certificate which serves as a travel exit document.

33. Overseas Employment — refers to the engagement of a Filipino seafarer on board a ship navigating foreign waters other than a government ship used for military or non-commercial purposes, or on an installation located offshore or on the high seas under a government-approved standard employment contract.

34. OWWA — refers to the Overseas Workers Welfare Administration.

35. PDOS — refers to the Pre-Departure Orientation Seminar.

36. PEOS — refers to the Pre-Employment Orientation Seminar.

37. Philippine Overseas Shipping Enterprise — refers to any entity registered and duly authorized to engage in overseas shipping activities, among others, under the laws of the Philippines.

38. POLO — refers to the Philippine Overseas Labor Office.

39. Principal — refers to the employer or to a person, partnership or corporation engaging and employing seafarers through a licensed manning agency.

40. Provisional License — refers to a license issued to a new manning agency with a non-extendible period of two (2) years within which the new licensee shall comply with its undertaking to deploy fifty (50) seafarers to the new principal and ship/s.

41. Recruitment and Placement — refers to any act of canvassing, enlisting, contracting, transporting, utilizing, hiring, or procuring seafarers, and includes referrals, contract services, promising or advertising for overseas maritime employment, whether for profit or not.

42. Seafarer — refers to any person who is employed or engaged or works in any capacity on board a ship.

5

43. SEC — refers to the Securities and Exchange Commission.

44. Ship — means a ship other than one which navigates exclusively in inland waters or waters within, or closely adjacent to, sheltered waters or areas where port regulations apply;

45. Shipowner — refers to the owner of the ship or another organization or person, such as the manager, agent or bareboat charterer, who has assumed the responsibility for the operation of the ship from the owner and who, on assuming such responsibility, has agreed to take over the duties and responsibilities imposed on a shipowner in accordance with the MLC, 2006 regardless of whether any other organization or persons fulfill part or certain duties or responsibilities on behalf of the shipowner.

46. Special Recruitment Authority — refers to the authority granted to a licensed manning agency to conduct recruitment outside its registered business address.

47. TESDA — refers to the Technical Education and Skills Development Authority.

48. Underage Seafarer — refers to one who is below eighteen (18) years or below the minimum age requirement for overseas employment as determined by the POEA Governing Board.

49. Verification — refers to the act performed by the POLO that involves reviewing and verifying the manning documents of the principal/employer, to establish the existence of the principal/employer and its capability to hire seafarers.

**PART II**
**LICENSING AND REGULATION**

**RULE I**
**Private Sector Participation in the Overseas Employment Program**

SECTION 1. Participation of the Private Sector. — The private sector shall participate in the recruitment of Filipino seafarers for overseas employment, in accordance with these Rules and any subsequent guidelines that may be issued by the POEA Governing Board and the Administration.

SECTION 2. Who may participate; Required Capitalization. — Any Filipino citizen acting as a sole proprietor or a partnership, or a corporation at least seventy-five percent (75%) of the authorized and voting capital stock of which is owned and controlled by Filipino citizens, may engage in the business of recruitment and placement of Filipino seafarers.

The sole proprietor or the partnership shall have a minimum capitalization of Five Million Pesos (PhP5,000,000.00); and a minimum paid-up capital of Five Million Pesos (PhP5,000,000.00) in case of a corporation.

Those with existing licenses shall, within four (4) years from effectivity hereof, increase their capitalization or paid-up capital, as the case may be, to Five Million Pesos (PhP5,000,000.00) at the rate of Seven Hundred Fifty Thousand Pesos (PhP750,000.00) every year.

SECTION 3. Who are Disqualified. — The following persons and entities are disqualified to participate or engage in the recruitment and placement of seafarers for overseas employment:

    a. Travel agencies and sales agencies of airline companies;

    b. Officers or members of the Board of any corporation or partners in a partnership engaged in the business of a travel agency;

    c. The applicant is presently an incorporator, director or key officer of at least five (5) licensed manning agencies;

    d. Corporations and partnerships, where any of its officers, members of the board or partners is also an officer, member of the board or partner of a corporation or partnership engaged in the business of a travel agency;

    e. Individuals, partners, officers or directors of an insurance company who make, propose or provide an insurance contract under the compulsory insurance coverage for seafarers.

    f. Sole proprietors, partners or officers and members of the board with derogatory records, such as, but not limited to the following:

        1. Those convicted, or against whom probable cause or *prima facie* finding of guilt is determined by a competent authority, for illegal recruitment, or for other related crimes or offenses committed in the course of, related to, or resulting from, illegal recruitment, or for crimes involving moral turpitude;

        2. Those agencies whose licenses have been revoked for violation of RA 8042 (Migrant Workers and Overseas Filipinos Act of 1995), as amended, PD 442 (Labor Code of the Philippines), as amended, and RA 9208 (Trafficking in Persons Act of 2003), as amended, and their implementing rules and regulations;

        3. Those agencies whose licenses have been cancelled, or those who, pursuant to the Order of the Administrator, were included in the list of persons with derogatory record for violation of recruitment laws; and

    g. Any official or employee of the DOLE, POEA, OWWA, DFA, DOJ, DOH, BI, IC, NLRC, TESDA, CFO, NBI, PNP, Civil Aviation Authority of the Philippines (CAAP), MARINA, international airport authorities, and other government agencies directly involved in the implementation of RA 8042, as amended, and/or any of his/her relatives within the fourth civil degree of consanguinity or affinity.

7

**RULE II**
**Issuance of License**

**A. APPLICATION**

SECTION 4.   Pre-Qualification Requirements. — Any person applying for a license to operate a manning agency shall file a written application with the Administration, together with the following requirements:

A.  Business Name Certificate issued by the Department of Trade and Industry (DTI), in the case of a single proprietorship; or a certified copy of the Articles of Partnership or Articles of Incorporation duly registered with the SEC, in the case of a partnership or corporation;

B.  Proof of financial capacity:

  i.  Bank certificate showing a deposit of at least Five Million Pesos (PhP5,000,000.00), with authority to examine the bank account;

  ii.  Duly filed Income Tax Returns (ITR) for the last two (2) years of the proprietor, partners, members of the Board of Directors and major stockholders of a corporation and official receipts showing payment of income tax; and

  iii.  Proof of sources of investment.

C. Proof of existence of new principal:

  i.  POLO verified and/or consulate authenticated Manning Agreement concluded by the manning agency and the new principal.

  ii.  Principal's profile to include:

    a.  Valid business license or commercial registration of the principal with English translation;
    b.  Information on business activities;
    c.  Number of years in operation; and
    d.  Number of seafarers;

D.  Proof of possession by the sole proprietor, managing partner, president or chief executive officer, as the case may be, of a bachelor's degree, or at least four (4) years experience in shipping-related or human resource management or experience in heading or managing a shipping or manpower business.

E.  Valid clearances from the NBI and the Anti-Illegal Recruitment Branch of the Administration for the proprietor, partners, and all members of the board of directors of the applicant agency.

8

If a member of the board is a foreign national, the following shall be required: a duly authenticated police clearance from his/her country of origin, and an affidavit declaring no criminal conviction or no pending criminal case for illegal recruitment or a crime involving moral turpitude.

F.  A duly notarized undertaking by the sole proprietor, the managing partner, or the president of the corporation, stating that the applicant shall:

1.  Select and deploy only medically fit and technically qualified recruits;

2.  Assume full and complete responsibility for all claims and liabilities which may arise in connection with the use of the license;

3.  Assume joint and several liability with the employer/shipowner/principal for all claims and liabilities which may arise in connection with the implementation of the contract, including but not limited to unpaid wages, death and disability compensation and repatriation;

4.  Guarantee compliance with existing labor and social legislation of the Philippines and applicable regulations of the Flag State and international organizations such as the International Maritime Organization (IMO) and International Labour Organization (ILO);

5.  Assume full and complete responsibility for all valid, legal and authorized acts of its officers, employees and representatives done in connection with recruitment and placement;

6.  Negotiate for the best terms and conditions of employment for its seafarers;

7.  Inform the seafarers of their rights and duties and disclose the full terms and conditions of employment under their contracts of employment and articles of agreement prior to and in the process of engagement;

8.  Provide orientation to the seafarers on recruitment procedures, terms and conditions and other relevant information to its seafarers, and provide the necessary facilities for the purpose;

9.  Act on complaints or problems brought to its attention or submit reports on the status or condition of seafarers;

10.  Ensure that the ship and the crew are adequately insured by the Protection and Indemnity Club or similar insurance, inclusive of the compulsory insurance required under RA 8042, as amended, through the submission of a Certificate of Cover;

11. Ensure that the contracts of employment are in accordance with the standard employment contract and other applicable laws, regulations and collective bargaining agreements;

12. Guarantee that there is no officer or employee of the licensed manning agency related within the fourth civil degree of consanguinity or affinity to any official or employee of any government agency engaged, directly or indirectly, in the implementation of RA 8042, as amended;

13. Adhere to ethical standards as prescribed in the Code of Conduct for Ethical Recruitment, as endorsed by the recruitment industry associations and the Administration;

14. Repatriate deployed seafarers and their personal belongings when the need arises or reimburse expenses of repatriation advanced by OWWA; and

15. Deploy at least fifty (50) seafarers to a new principal and its ship/s within two (2) years from the issuance of its license.

G. In case of a corporation or partnership, a duly notarized undertaking by the corporate officers and directors, or partners, that they shall be jointly and severally liable with the corporation or partnership for claims and/or damages that may be awarded to the seafarers;

H. List of all officials and personnel involved in recruitment and placement, together with their appointment, signed bio-data and two (2) copies of their passport-size pictures, as well as their clearances from the NBI and their individual affidavits declaring that they have no conviction or pending criminal case for illegal recruitment or case involving moral turpitude;

I. Certificate of attendance of the sole proprietor, managing partner, president, chief executive officer and/or operations manager in the Pre-Licensing Orientation Seminar (PLOS);

J. Flowchart detailing the step-by-step recruitment procedures, documentary requirements, briefings and orientations required, authorized fees and costs, deployment timeframes, and the responsible officer/s and process cycle time for every phase of the process; and

K. Four-year business plan detailing financial, market and operational viability, including projected income and a risk management plan.

SECTION 5. Payment of Filing Fee. — Upon receipt of the complete requirements for application, the Administration shall require payment of a non-refundable filing fee of Twenty-Five Thousand Pesos (PhP25,000.00) and submission of proof of payment thereof.

SECTION 6. Panel Interview. — The proprietor, partners and members of the Board of Directors, including the major stockholders, shall undergo a panel interview to ascertain their qualifications and fulfillment of the requirements under Rules I and II, Part II of these Rules.

SECTION 7. Decision on the Application. — The Administration shall notify the applicant in writing of the decision on the application within three (3) working days after the panel interview.

SECTION 8. Grounds for Denial of Application. — An application for license shall be denied when the applicant fails to satisfy any of the requirements or gives any false information or documents.

SECTION 9. Submission of Post-Qualification Requirements. — Upon receipt of the notification, the applicant shall submit the following post-qualification requirements prior to the issuance of the provisional license:

a. A lease contract for an office space measuring at least one hundred (100) square meters, or proof of building ownership that will be used as an office or an identified portion thereof measuring at least 100 square meters;

b. An office layout providing and clearly delineating adequate spaces that will serve as a receiving area, interview room, administrative and finance area, conference/training room, and an executive office;

c. An inventory of office equipment and facilities, which at the minimum, shall include the following:

    i. Office furniture such as tables and chairs for the president, other officers and employees, as well as similar furniture for the receiving area, interview room and conference/training room;

    ii. Secured filing cabinets; and

    iii. Office equipment, which at the minimum, shall include two (2) computers, computer printer and scanner, photocopying machine, fax machine, landline telephone,  internet connection, and multi-media equipment (i.e. LCD projector, and other similar audio-visual equipment).

d. Organizational chart indicating the duties and responsibilities and names of officers and staff, which at the minimum, shall consist of the President, Chief Executive Officer, Recruitment and/or Documentation Officer, Accountant or Bookkeeper, Cashier, and Liaison Officer;

e. Payment of license fee of One Hundred Thousand Pesos (PhP100,000.00); and

    f.   An escrow agreement with a bank authorized by the *Bangko Sentral ng Pilipinas* to handle trust accounts, with deposit in the amount of One Million Pesos (PhP1,000,000.00).

       The escrow deposit shall answer for all valid and legal claims arising from contracts of employment and violations of the conditions for the grant and use of the license, including fines imposed by the Administration. The escrow shall likewise guarantee compliance with prescribed recruitment procedures, rules and regulations, appropriate terms and conditions of employment, and relevant issuances of the DOLE.

The escrow deposit shall not be sourced from the capitalization requirement.

SECTION 10. Assessment Prior to Issuance of License. — The Administration shall assess the applicant's compliance with paragraphs (a), (b) and (c) of the preceding section. The Labor Laws Compliance Officer (LLCO) shall determine the size of the office space and the existence of the facilities and equipment as shown in the applicant's floor plan and inventory of equipment.

The assessment shall be conducted in accordance with the provisions of Rule III of these Rules.

## B. PROVISIONAL LICENSE

SECTION 11. Issuance and Validity of a Provisional License. — Within five (5) working days from satisfaction of the post-qualification requirements, the Administration shall issue a provisional license which shall be valid within a non-extendible period of two (2) years from date of issuance.

Section 12. Prohibition. — The agency granted with a provisional license will not be allowed to accredit an old principal/employer and/or enroll an old ship during the validity of the provisional license.

Section. 13. Deployment per Position. — In the counting of the required deployment of fifty (50) seafarers to new ship/s during the provisional license, only the initial number of deployed seafarer per position in the new ship/s shall be considered.

## C.     REGULAR LICENSE

SECTION 14. Application for Upgrading of Provisional License to a Regular License. — Upon application, a provisional license may be upgraded to a regular license at any time during its validity upon compliance with the condition of minimum deployment of fifty (50) seafarers to its new principal/s and new ship/s, and upon submission of the following:

    a.   Valid certification of a Quality Management System (QMS);

12

b. Updated bank certificate stating an escrow deposit of One Million Pesos (PhP1,000,000.00);

c. Certificate of no pending case or any substantiated adverse report during the validity of the provisional license;

d. Certificate of attendance to the Continuing Agency Education Program (CAEP) of all its officers and operations staff involved in the recruitment and placement of seafarers, and Heads of Administration or Accounting Department; and

e. Latest audited financial statement.

SECTION 15. Validity of a regular license. — The regular license shall be valid up to the full term of four (4) years from the date of issuance of the provisional license.

The application for upgrading of the license shall be filed within three (3) months before the expiration of its provisional license.

**D. RENEWAL OF LICENSE**

SECTION 16. Renewal of License. — A licensed manning agency should submit an application for the renewal of its license within three (3) months before the expiration of its license. The application shall be supported by the following documents:

a. Updated DTI registration in case of a sole proprietorship, or General Information Sheet in case of a partnership and corporation;

b. Renewed/new escrow agreement with a commercial bank authorized to handle trust accounts by the *Bangko Sentral ng Pilipinas*, supported by a bank certification;

Provided, that, if during the renewal, the applicant has pending recruitment violation case/s before the Administration, an additional escrow deposit shall be required in accordance with the following schedule:

| NO. OF PENDING CASE/S | ADDITIONAL ESCROW DEPOSIT |
|---|---|
| 1 to 5 | PhP50,000.00 per case |
| 6 to 10 | PhP75,000.00 per case |
| 11 or more | PhP100,000.00 per case |

In no case shall the total escrow deposit exceed Two Million Pesos (PhP2,000,000.00).

13

Provided, further, that, if in the succeeding renewal, the licensed manning agency has no pending case, the Administration shall allow the withdrawal of the additional escrow deposit.

c. Duly filed latest audited financial statements and income tax returns of the licensed manning agency.  In case the equity of the licensed manning agency is below the minimum capitalization requirement, it shall be given thirty (30) days from release of the renewed license to submit a SEC certification on capital infusion; otherwise, the license shall be suspended until it has complied with such a requirement;

d. Clearances from the NBI and the Anti-Illegal Recruitment Branch for sole proprietor, partners, members of the board of directors, officers, and personnel; and

e. Valid Certificate of Compliance or an undertaking of compliance with general labor standards and valid Certificate of Compliance with occupational safety and health standards based on the schedule of inspection by the DOLE Bureau of Working Conditions.

The Administration shall only accept applications together with the complete documentary requirements for evaluation. Within three days from receipt of such letter of application, the Administration shall inform in writing any deficiency or lack of requirements for compliance by the licensed manning agency based on the checklist for renewal of license. No application shall be accepted after the date of expiration of the license.

SECTION 17. Action on Renewal of License. — The Administration shall evaluate the application within five (5) working days from receipt of such application. The license remains valid until the application shall have been finally acted upon.

### E. ESCROW DEPOSIT

SECTION 18. Maintenance of Escrow Deposit. — A licensed manning agency shall maintain at all times its escrow deposit of no less than One Million Pesos (PhP1,000,000.00). In case the licensed manning agency is required an additional escrow pursuant to Section 16, it shall maintain the escrow deposit of One Million Pesos (PhP1,000,000.00) plus the additional escrow.

In case the escrow deposit has been garnished, the Administration shall serve the licensed manning agency a Notice to Replenish its Escrow Deposit within fifteen (15) days from receipt thereof. Failure to comply with such notice will result in the suspension of the license of the manning agency. Within the same fifteen (15) day period, the licensed manning agency shall explain why it should not be suspended for such failure to comply.

SECTION 19. Monitoring Compliance with Conditions for the Issuance of the License. — The Administration shall monitor the compliance of licensed manning agencies with the conditions for the issuance of license, recruitment laws, rules and regulations on the use of

license, and general labor standards and occupational safety and health standards in coordination with the DOLE Regional Office.

The Administration shall suspend or revoke the license of a manning agency for failure to maintain the required qualifications or conditions for the issuance of a license as provided in this Rule.

SECTION 20. Release of Deposit in Escrow. — The deposit in escrow of a licensed manning agency that voluntarily surrenders its license or has not renewed its license shall be released upon submission of the following:

a. Copy of the duly executed/signed escrow agreement;
b. Bank certification of the status of escrow deposit;
c. Certificate of No Pending Case from the NLRC;
d. Clearance from the POEA Adjudication Office;
e. Decision to withdraw the escrow deposit through written notice of the Single Proprietor duly received by the DTI or notarized Partnership or Board Resolution duly received by the SEC, indicating the name of the person to process and receive the check representing the escrow deposit; and
f. Surety bond equivalent to the amount of the escrow deposit valid for four (4) years from expiration of the license, if applicable.

## F. COMMON PROVISIONS

SECTION 21. Derogatory Record after Issuance/Renewal of License. — The license of a single proprietorship, partnership, or corporation shall be suspended, until cleared by the Administration, should any derogatory record as provided in Section 3 herein be found to exist against the single proprietor or any or all of the partners, as the case may be.

The appointment of any officer or employee of a single proprietorship, partnership, or corporation of any licensed manning agency may be cancelled or revoked by the Administration at any time, with due notice to the licensed manning agency concerned, whenever said officer or employee is found to have any derogatory record.

SECTION 22. Non-Transferability of License. — No license shall be used directly or indirectly by any person other than the one in whose favor it was issued, nor at any place other than that stated in the license, nor may such license be transferred, conveyed or assigned to any other person or entity.

SECTION 23. Revocation of License of Sole Proprietorship. — The license of the sole proprietorship shall automatically be revoked upon the death of the sole proprietor.  The next-in-rank officer of the agency shall, within ten (10) days, report such death to the Administration. Failure to report shall automatically include such next-in-rank officer in the list of persons with derogatory record.

SECTION 24. Revocation of License of a Partnership Due to Death or Withdrawal of Partner. — The license of a partnership shall be automatically revoked upon the death or withdrawal of a partner which materially interrupts the course of business or results in the actual dissolution of the partnership.  The surviving partner/s shall, within ten (10) days, report such death or withdrawal to the Administration. Failure to report shall automatically include the surviving partner/s in the list of persons with derogatory record.

SECTION 25. Upgrading, Merger or Consolidation of Licensed Manning Agencies. — The upgrading, merger or consolidation of licensed manning agencies shall be undertaken in accordance with the regulations of the SEC, without prejudice to the determination by the Administration of the qualifications of the new partners or directors.

The upgraded licensed manning agencies, the surviving corporation, or the new corporation, as the case may be, shall inform the Administration of such changes within thirty (30) days from confirmation by SEC of such upgrading, merger or consolidation.

SECTION 26. Change in the Composition of Partners/Board of Directors. — The licensed manning agency shall notify the Administration of every change in the composition of the partnership or board of directors within thirty (30) calendar days from the date of such change, and submit the following supporting documents:

a. In case of change of partners, the amended articles of partnership, and bio-data, pictures, NBI clearances, AIRB clearances and income tax returns for the last two (2) years of the new partners, with proof of payment; and

b. In case of election of new members of the Board of Directors, the amended General Information Sheet and the bio-data, pictures, NBI clearances, AIRB clearances and income tax returns for the last two (2) years of the new directors, with proof of payment of the stock purchased.

In case of change in the controlling shares or composition of the board of directors/partnership or any transfer of control in the operations of a licensed manning agency, the new member/s of the board of directors/partners shall be subject to a panel interview to ascertain their qualifications as provided in these Rules.

SECTION 27. Transfer of Shares of Stocks. — A licensed manning agency operating as a corporation shall notify the Administration of any transfer of shares of stocks of the corporation within thirty (30) calendar days from approval of such transfer by SEC, together with the updated General Information Sheet reflecting such transfer, and a certified true copy of the Stock and Transfer Book.

SECTION 28. Appointment, Termination, or Resignation of Officers and Personnel. — The licensed manning agency shall notify the Administration of the appointment, termination or resignation of any officer and personnel of the agency within thirty (30) days from such appointment, termination or resignation. In case of appointment, the notification shall include the following documents:

a. Letter of appointment containing duties and responsibilities duly accepted by the appointee;
b. NBI and AIRB clearances; and
c. Bio-data and two (2) recent passport size pictures.

SECTION 29. Transfer of Business Address. — A licensed manning agency may transfer its business address upon submission of the following:

a. Letter of Intent to transfer office in the case of sole proprietorship, or a partnership or Board Resolution or Secretary's Certificate approving the transfer of office in case of a corporation; and

b. Copy of lease contract or proof of building ownership.

The Administration shall acknowledge such transfer after an assessment of compliance with space, office layout and equipment requirements has been conducted.

The licensed manning agency shall publish a notice to the public of the new business address in a newspaper of general circulation within thirty (30) days from such transfer. The proof of publication shall be provided to the Administration within five (5) days from publication.

SECTION 30. Establishment of a Branch. — A licensed manning agency may request for an authority to establish a branch, specifying the location, area and personnel of the branch. In case of a corporation, a board resolution or Secretary's Certificate authorizing the establishment of a branch shall be submitted.  The request shall be subject to evaluation, taking into account the track record of the agency.

SECTION 31. Additional Office Space. — A licensed manning agency shall report to the Administration the acquisition of additional office space. The additional office space shall be adjacent to the registered main office or within the same building, provided, that, it is properly identified and covered by a duly notarized lease contract.

**RULE III**
**Overseas Employment and Labor Laws Compliance System**

SECTION 32. Assessment of Agencies and Labor Laws Compliance. — The Administration, in coordination with DOLE, shall assess, validate and monitor compliance of licensed manning agencies with these Rules and applicable labor laws and social legislation.

An Assessment shall refer to the process of evaluating compliance with these Rules, labor laws and social legislation, undertaken by qualified Labor Laws Compliance Officers (LLCOs) using a prescribed checklist in accordance with the pertinent provisions of the Rules on Labor Laws Compliance System (LLCS) issued by the Secretary of Labor and Employment through Department Order No. 131-13. The Assessment shall include matters relating to the

maintenance of requirements on capitalization/equity, office space, equipment, facilities, and postings.

The Assessment shall be conducted prior to the following: issuance of a license (post qualification assessment), upgrading of provisional license to a regular license, issuance of branch authority, renewal of license and branch authority, and transfer of office. The Assessment shall also be conducted once every two (2) years after renewal of license.

## A. ASSESSMENT PRIOR TO THE ISSUANCE OF A LICENSE
### (POST QUALIFICATION ASSESSMENT)

SECTION 33. Scope of Assessment. — The post-qualification assessment shall cover compliance with minimum office space, facilities and equipment under Section 9 hereof by applicants whose license applications have been approved. The Assessment shall be conducted prior to the issuance of the provisional license.

SECTION 34. Issuance of Authority to Assess. — The Licensing and Regulations Office (LRO) Director or his/her authorized representative shall issue the Authority to Assess, indicating the names of the LLCO or POEA personnel, the applicant and its registered address, the purpose of the assessment and the validity period of the authority.

SECTION 35. Conduct and Report of Assessment. — The LLCO/POEA personnel shall proceed to the establishment and present the authority to the applicant agency. A responsible representative of the applicant shall receive and sign a copy of the authority. The assessment shall be conducted in the presence of such a representative.

The assessment report shall be forwarded to the Licensing Branch of the Administration.

## B. REGULAR ASSESSMENT

SECTION 36. Scope of Regular Assessment. — The Assessment shall be undertaken as a requirement for upgrading of the provisional license to a regular license, renewal of license and branch authority, transfer of office, and once every two (2) years after renewal of license. The Assessment shall cover the following:

a. Maintenance of the minimum office space, facilities and equipment;

b. Maintenance of the required signages and postings, such as POEA door sticker, agency license, organizational chart, "*Kaukulang Bayad*" poster and anti-illegal recruitment campaign posters;

c. Examination of books of accounts, official receipts, and financial statements; and

d. Compliance with general labor standards and occupational safety and health standards.

18

SECTION 37. Issuance of Authority to Assess. — The LRO Director or his/her duly authorized representative shall issue the authority to assess to its duly authorized LLCOs, indicating the names of the LLCOs, the licensed manning agency to be assessed, the purpose of the assessment and the validity period of the authority.

The LRO Director or his/her duly authorized representative may also request the DOLE Regional Director for the conduct of assessment of licensed manning agencies, including their branches.

SECTION 38. Conduct and Report of Assessment. — The LLCO shall proceed to the establishment and present the authority to the licensed manning agency. A responsible representative of the manning agency shall receive and sign a copy of the authority. The assessment shall be conducted in his/her presence, including a representative designated by the rank-and-file employees at the time of assessment.

The assessment shall proceed based on the Assessment Checklist contained in Annex "A" hereof.

SECTION 39. Issuance of Notice of Results. — The LLCO shall issue the Notice of Results indicating compliance or deficiencies with POEA rules, labor laws and social legislation. The licensed manning agency representative shall acknowledge such results.

SECTION 40. Report of Assessment. — The LLCO shall endorse the results of assessment relating to overseas employment to the LRO Director, or to the DOLE Regional Director for general labor standards and occupational safety and health standards.

SECTION 41. Issuance of Certificate of Compliance. — Licensed manning agencies that have complied with overseas employment rules and regulations shall, within five (5) days from such compliance, be issued a Certificate of Compliance with a validity period of two (2) years by the POEA Administrator.

Certificate of Compliance with general labor standards and occupational safety and health standards shall be issued by the DOLE Regional Director that has territorial jurisdiction over the establishment.

The Certificate of Compliance issued to a licensed manning agency shall cover branch offices that have been included in the renewal of license.

SECTION 42. Compliance with Deficiencies. — In case of non-compliance, the LLCO shall issue a Notice of Results, together with the accomplished assessment checklist indicating the deficiencies. The agency shall comply with the deficiencies or findings in accordance with the following:

    a.  In case of deficiencies on office facilities, equipment, postings and signages, the licensed manning agency shall, within five (5) working days from the date of assessment, correct the deficiencies and submit proof of

compliance for verification. Failure to comply shall cause the imposition of suspension of documentary processing, until compliance.

b. For failure to maintain the required minimum office space, the licensed manning agency shall submit proof of compliance within thirty (30) days from assessment. Failure to comply shall cause the imposition of suspension of documentary processing, until compliance.

c. In case the audited financial statement indicates an amount lower than the required capitalization, the licensed manning agency shall, within thirty (30) days from the date of assessment, infuse additional capital up to the required minimum level and submit the certificate of corporate filing/information on the present paid-up capital issued by the SEC, or infusion through cash advances from the shareholders. Failure to comply shall cause the suspension of license, until compliance.

d. In case of non-presentation of the books of accounts and official receipts during assessment, the licensed manning agency shall be given ten (10) days to present such books and receipts; otherwise, a suspension of documentary processing shall be imposed.

e. If an unauthorized personnel is present in the agency's premises, the LLCO shall report such findings for review and endorsement to the Adjudication Office for administrative proceedings.

In case of deficiencies on general labor standards and occupation safety and health standards, the DOLE shall have jurisdiction over the agency's compliance in accordance with the Rules on LLCS.

### C. SALVO/SPOT INSPECTION

SECTION 43. Scope of Salvo/Spot Inspection. — The Administration shall undertake inspection in response to a complaint or report of illegal recruitment activities and recruitment violations. Such inspection shall be conducted in accordance with the POEA labor laws compliance manual.

### RULE IV
### Licensing of Philippine Overseas Shipping Enterprise

Section 44. Philippine Overseas Shipping Enterprises. — Philippine Overseas Shipping Enterprises (POSE) which own/manage/operate Philippine flag ship trading overseas may apply for a special license subject to the submission of the following requirements:

a. Articles of Incorporation;
b. Certificate of Accreditation by the MARINA;
c. Certified true copy of certificate of ship registry issued by MARINA; and

    d. Proof of payment of a non-refundable filing fee of Ten Thousand Pesos (PhP10,000.00).

SECTION 45. Payment of Fees. — Upon approval of the application, the Philippine Overseas Shipping Enterprise shall:

    a. Pay a license fee of Fifty Thousand Pesos (PhP50,000.00); and
    b. Post a surety bond in the amount of Fifty Thousand Pesos (PhP50,000.00) and escrow deposit of Two Hundred Thousand Pesos (PhP200,000.00) with a commercial bank  authorized to handle trust accounts by the *Bangko Sentral Ng Pilipinas.*

SECTION 46. Action Upon the Application. — The Administration shall issue a special license to the Philippine Overseas Shipping Enterprise within twenty-four (24) hours from receipt of application, provided, all the requirements are met by the applicant. Only applications with complete supporting documents shall be deemed filed.

SECTION 47. Validity Period of Special License. — The special license shall be valid for four (4) years from date of issuance; Provided, there is a valid MARINA certificate of accreditation, unless the special license is terminated, suspended, cancelled or revoked by the Secretary or his/her duly authorized representative.

SECTION 48. Requisites for Renewal. — Upon expiration of the license, the Philippine Overseas Shipping Enterprise shall submit a written application together with the following requirements:

    a. Certified copy of the Certificate of Accreditation by MARINA;
    b. Proof of renewed surety bond in the amount of Fifty Thousand Pesos (PhP50,000.00);
    c. Certificate from the bank that the escrow deposit of Two Hundred Thousand Pesos (PhP200,000.00) is still intact; and
    d. Payment of License fee of Fifty Thousand Pesos (PhP50,000.00).

SECTION 49. Prohibition on Collection of Placement Fees from Seafarers. — The POSE shall not collect any fee from their hired seafarers, unless otherwise provided by law.

**RULE V**
**Fees and Contributions and Other Cost**

SECTION 50. Chargeable Fees and Costs

    a. Fees Chargeable to Principal/Employer:

        1. Manning Fees - Licensed manning agencies shall charge from their principal/employer a manning fee to cover services rendered in the recruitment and deployment of seafarers.

21

2. Processing Fees - All processing fees required for deployment such as pre-employment medical examination in the principal's/employer's designated clinic, POEA and OWWA fees, visas, principal's/employer's flag State ship requirements, principal's/employer's required trainings and other requirements.

However, in case of seafarer's failure or unjustified refusal to join ship after all processing fees have been incurred by the principal/employer, the said fees shall be refunded by the seafarer within thirty (30) days from demand.

b. Costs Chargeable to the Seafarer. Documentation costs of all statutory requirements such as, but not limited to, passport, seafarer's identification and record book (SIRB), NBI/police/barangay clearance, Seafarer's Registration Certificate (SRC) and birth certificate.

SECTION 51. Utilization and Accounting of Maritime Welfare Fund. — Contributions to the OWWA Welfare Fund by the seafarers shall be used to address welfare concerns of contributing seafarers and must be accounted for separately from the General Fund of OWWA. A report of receipts and disbursements shall be published annually in a newspaper of general circulation and be made available to contributing seafarers, licensed manning agencies and shipowners.

SECTION 52. Prohibition on Charging and Collecting of Other Fees. — No other charges in whatever form, manner or purpose, shall be imposed on and be paid by the seafarer, unless otherwise provided by law.

**RULE VI**
**Recruitment Outside Registered Office**

SECTION 53. Special Recruitment Activity. — A licensed manning agency may conduct recruitment activities outside its registered address by securing a Special Recruitment Authority prior to the conduct of the recruitment.

SECTION 54. Requirements for the Issuance of Special Recruitment Authority. — A Special Recruitment Authority (SRA) may be issued upon submission of the following requirements:

a. Letter request from the licensed manning agency stating the exact date and venue of the special recruitment activity, as well as the name/s of the designated representative/s;
b. List of accredited principal/employer;
c. Proof of notice to the local government unit through the Public Employment Service Office (PESO); and
d. An undertaking that the agency shall take full responsibility for the acts of its representative officers and employees, and/or the employer or his/her authorized representative.

SECTION 55. Filing of Application. — An application for issuance of SRA shall be filed at least three (3) days prior to the date of the activity with any of the following POEA offices:

    a. POEA Central Office;
    b. POEA Regional Center or Regional Extension Unit (REU) under whose area of jurisdiction the licensed manning agency is located; or
    c. POEA Regional Center or REU under whose area of jurisdiction the special recruitment activity will be conducted.

SECTION 56. Validity of SRA. — The SRA shall be valid for the date and venue as indicated, unless extended, modified or revoked by the Administration for violation of the conditions for its issuance.

SECTION 57. Letter of Authority (LOA). — The licensed manning agency shall notify the Administration of the participation of an accredited principal/employer or its registered/authorized representative in a recruitment activity within its registered office within three (3) days prior to the activity. If the accredited principal/employer or its registered authorized representative shall participate in a recruitment activity outside its registered office, the application for LOA shall be filed at least three (3) days prior to the date of the activity.

SECTION 58. Venue and Supervision of Special Recruitment Activities. — Recruitment activities outside the registered office of the licensed manning agency shall be conducted only at the venues indicated in the authority, and shall be supervised by the Administration in coordination with the DOLE or PESO.

SECTION 59. Terminal Reports. — A terminal report shall be submitted to the POEA office which issued the SRA within ten (10) days, and a Progress Deployment Report within ninety (90) days after the activity. No subsequent SRA shall be issued until the licensed manning agency has submitted the required reports.

SECTION 60. Participation in Jobs Fair. — A licensed manning agency may participate in a jobs fair and conduct recruitment activities based on POEA-accredited principal/employer and enrolled ships, provided, that, a corresponding DOLE permit has been issued to the organizer of the jobs fair. Prior written notification which includes a list of authorized representatives who will be participating in the jobs fair, including the venue, date, and list of principal/employer, shall be submitted to the Administration for monitoring and supervision.

If the jobs fair is being organized by the PESO, no such permit shall be required, except for the prior notification requirement as mentioned above.

SECTION 61. Cancellation of SRA/LOA. — The Administration reserves the right to cancel the SRA/LOA for violation of the conditions set therein.

**RULE VII**
**Advertisement for Overseas Job Vacancies**

SECTION 62. Advertisement for Overseas Employment. — Advertisement for overseas employment shall include the publication of job vacancies in any form of communication, such as press releases, printed materials, or advertisements in radio, television, cinemas, internet, social media and other electronic forms, billboards, moving and human advertisements, and ad boards.

SECTION 63. Advertisement of Job Vacancies. — Licensed manning agencies may advertise job vacancies of accredited principal/employer without prior approval from the Administration and within the validity of its accreditation. The advertisement shall indicate the following information:

   a. Name, address and POEA license number of the agency;
   b. Type of ship;
   c. Rank or Position; and
   d. Number of available positions.

SECTION 64. Advertisement for Manpower Pooling. — Licensed manning agencies may advertise for manpower pooling, subject to prior approval of the Administration and compliance with the following conditions:

   a. The advertisement shall indicate the phrases "For Manpower Pooling Only", "No fees in any form and/or purpose will be collected from the applicants", and "Beware of illegal recruiters and human traffickers", using large font in the advertisement; and
   b. The advertisement shall specify the name, address and POEA license number of the agency, name and worksite of the prospective or accredited principal/employer, and the skill categories and qualification standards.

SECTION 65. Advertisement for Overseas Job Vacancies by Principal/Employer. — An accredited principal/employer may advertise overseas job vacancies only through POEA-licensed manning agencies or through the Administration.

SECTION 66. Monitoring of Advertisements. — The Administration shall monitor all advertisements, and non-compliant advertisements are considered as recruitment violations which shall be penalized in accordance with the schedule of offenses and penalties.

**RULE VIII**
**Medical Examination**

SECTION 67.  Standard of Medical Examination. — The licensed manning agency shall ensure that the medical examination conducted is in accordance with prescribed and acceptable international standards, and the requirements of the principal/employer.

SECTION 68. When to Require Medical/Health Examination. — The licensed manning agency shall require an applicant for overseas employment to undergo medical/health examination with a DOH-accredited medical clinic only after the licensed manning agency has interviewed the seafarer, and that there is a reasonable certainty that the seafarer shall be hired and deployed to a ship of its principal/employer.

**RULE IX**
**Departure and Arrival of Seafarers**

SECTION 69. Departure of Seafarers. — The POEA through the Labor Assistance Center (LAC) shall monitor all departing seafarers at the international airports and other exit points in the country to ensure that they are properly documented before proceeding to their assigned ship.

SECTION 70.  POEA Clearance For Special Cases In Lieu of OEC Issuance. — The POEA shall issue special clearances for travel abroad for Philippine Registered Ship's conduction manned by locally employed seafarers. Likewise it shall cover seafarers who will undergo orientation and such other analogous circumstances, as a requirement prior to their employment. A guideline shall be issued by the Administration for the implementation of this section.

SECTION 71. Arrival of Seafarers. — The LAC shall support OWWA and other government agencies in providing assistance to arriving seafarers, particularly those who are in distress.

**RULE X**
**Legal Assistance and Enforcement Measures**

SECTION 72.  Acts Constituting Illegal Recruitment. — Illegal Recruitment shall mean any act of canvassing, enlisting, contracting, transporting, utilizing, hiring or procuring seafarers and includes referrals, contract services, promising or advertising for employment abroad, whether for profit or not, when undertaken by a non-licensee or non-holder of authority; provided, that any such non-licensee or non-holder who, in any manner, offer or promises for a fee employment abroad to two or more persons shall be deemed so engaged.

It shall likewise include the following prohibited acts committed by any person whether or not a holder of a license or authority:

    a. To charge or accept directly or indirectly any amount of money, goods or services, or any fee or bond for any purpose from an applicant seafarer;

b.  To furnish or publish any false notice or information or document in relation to recruitment or employment;

c.  To give any false notice, testimony, information or document or commit any act of misrepresentation for the purpose of securing a license or authority under the Labor Code;

d.  To give any false notice, testimony, information or document or commit any act of misrepresentation for the purpose of documenting hired seafarers with the POEA, which include the act of reprocessing seafarers through a crew request that pertains to non-existent work, or work with a different ship whether or not accredited with the POEA;

e.  To induce or attempt to induce a seafarer already employed to quit his employment in order to offer him another unless the transfer is designed to liberate a seafarer from oppressive terms and conditions of employment;

f.  To influence or attempt to influence any person or entity not to employ any seafarer who has not applied for employment through his agency or who has formed, joined or supported, or has contacted or is supported by any union or seafarers' organization;

g.  To engage in the recruitment or placement of seafarers in jobs harmful to public health or morality or to the dignity of the Republic of the Philippines as may be prohibited by law or duly constituted authority;

h.  To obstruct or attempt to obstruct inspection by the Secretary or by his/her duly authorized representative;

i.  To fail to submit reports on the status of employment, remittance of foreign exchange earnings, separation from jobs, departures and such other matters or information as may be required by the Secretary under penalty of law;

j.  To substitute or alter to the prejudice of the seafarer, employment contract approved and verified by the Administration from the time of actual signing thereof by the parties up to and including the period of the expiration of the same without the approval of the Administration;

k.  For an officer or agent of a recruitment or placement agency to become an officer or member of the Board of any corporation engaged in travel agency or to be engaged directly or indirectly in the management of a travel agency;

l.  To withhold or deny travel documents from applicant seafarers before departure for monetary or financial considerations, or for any other reasons, other than those authorized under existing laws;

m. To fail to actually deploy a contracted seafarer without valid reason as determined by the Administration;

n. To fail to reimburse expenses incurred by the seafarer in connection with his/her processing for purposes of deployment, in cases where the deployment does not actually take place without the seafarer's fault;

o. To allow a non-Filipino citizen to head or manage a manning agency;

p. To impose a compulsory and exclusive arrangement whereby a seafarer is required to avail of a loan only from specifically designated institutions, entities or persons;

q. To impose a compulsory and exclusive arrangement whereby the Filipino seafarer is required to undergo health examinations only from specifically designated medical clinics, institutions, entities or persons, except in the case of a seafarer whose medical examination cost is shouldered by the principal/employer;

r. To impose compulsory and exclusive arrangement whereby the Filipino seafarer is required to undergo training, seminar, instruction or schooling of any kind only from specifically designated institutions, entities or persons, except for recommendatory trainings mandated by principal/employer where the latter shoulder the cost of such trainings;

s. For a suspended manning agency to engage in any kind of recruitment activity including the processing of pending seafarers' applications;

t. For a licensed manning agency or a principal/employer to pass-on to the Filipino seafarer or deduct from his/her salary the payment of the cost of insurance fees, premium or other insurance related charges, as provided under the compulsory seafarer's insurance coverage;

SECTION 73.  Independent Administrative Action. — The institution of criminal action is without prejudice to any administrative action against the licensee or holder of authority cognizable by the Administration, which could proceed independently of the criminal action.

SECTION 74. Anti-Illegal Recruitment Programs. — The Administration shall adopt policies and procedures, prepare and implement programs toward the eradication of illegal recruitment activities such as, but not limited to the following:

a. Providing legal assistance to victims of illegal recruitment and related cases which are administrative or criminal in nature, such as but not limited to documentation and counselling;

b. Prosecution of illegal recruiters, during preliminary investigation and during trial in collaboration with the prosecutors of the Department of Justice;

27

    c.  Special operations such as surveillance of persons and entities suspected to be engaged in illegal recruitment; and

    d.  Information and education campaign.

Whenever necessary, the Administration shall coordinate with other appropriate entities in the implementation of said programs.

SECTION 75.  Legal Assistance. — The Administration shall provide free legal assistance to victims of illegal recruitment, trafficking in persons committed by means of, or in the guise of recruitment for overseas employment and related cases including but not limited to, legal advice, assistance in the preparation of complaints and supporting documents, institution of criminal actions and whenever necessary, provide counseling during preliminary investigations and hearings.

SECTION 76. Receiving Complaints for Illegal Recruitment. — Victims of illegal recruitment, trafficking in persons committed by means of, or in the guise of recruitment for overseas employment and related cases may file with the Administration a report or complaint in writing and under oath for assistance purposes.

In regions outside the National Capital Region, complaints and reports involving illegal recruitment and trafficking in persons committed by means of, or in the guise of recruitment for overseas employment may be filed with the appropriate Regional Office of the Administration or the Department. The complaints and reports received by the Department shall be endorsed to the POEA for proper evaluation.

SECTION 77. Action on the Complaint/Report. — Where the complaint/report alleges that illegal recruitment activities and trafficking in persons committed by means of, or in the guise of recruitment for overseas employment are on-going, and such activities are confirmed in the preliminary examination of the complainants and the witnesses or through the conduct of surveillance, the Director of the Licensing and Regulation Office (Director-LRO) shall recommend to the Administrator the issuance of a Closure Order.

The Administration, after evaluation and proper determination that sufficient evidence exists for illegal recruitment, trafficking in persons committed by means of, or in the guise of recruitment for overseas employment and other related cases, shall endorse the case to the proper Prosecution Office for the conduct of preliminary investigation.

SECTION 78. Surveillance. — The Administrator and/or the designated official in the DOLE Regional Offices may, on his own initiative, conduct surveillance on the alleged illegal recruitment activities and trafficking in persons committed by means of, or in the guise of recruitment for overseas employment.

Within two (2) days from the termination of surveillance, a report supported by an affidavit, shall be submitted to the Director-LRO or the DOLE Regional Director concerned, as the case may be.

SECTION 79. Issuance of Closure Order. — The Secretary or the Administrator or the DOLE Regional Director of the appropriate Regional Office outside the National Capital Region, or their duly authorized representatives, may conduct an ex-parte preliminary examination to determine whether the activities of a non-licensee constitute a danger to national security and public order or will lead to further exploitation of job seekers. For this purpose, they may examine personally the complainants and/or their witnesses in the form of searching questions and answers and shall take their testimony under oath. The testimony of the complainants and/or witnesses shall be reduced in writing and signed by them.

If upon the preliminary examination or surveillance, the Secretary, the Administrator or DOLE Regional Director is satisfied that such danger or exploitation exists, a written order may be issued for the closure of the establishment being used for illegal recruitment activities and trafficking in persons committed by means of, or in the guise of recruitment for overseas employment.

SECTION 80.   Implementation of Closure Order. — Closure order shall be served upon the offender or the person in charge of the establishment subject thereof. The closure shall be effected by sealing and padlocking the establishment and posting a notice of such closure in bold letters in a conspicuous place in the premises of the establishment. Whenever necessary, the assistance and support of the appropriate law enforcement agencies may be requested for this purpose.

The Secretary, the Administrator or the DOLE Regional Director concerned shall recommend the immediate cancellation/ revocation of the business license or permit to the local government unit where such establishment operates.

Section 81. Effect of Closure Order. — All officers and responsible employees of the entity responsible for the illegal recruitment activity shall be ordered included in the list of persons with derogatory records as provided in Section 3, and will be disqualified from participating in the overseas employment program of the government.

SECTION 82.  Report on Implementation. — A report on the implementation of the closure order executed under oath shall be submitted to the LRO Director or the DOLE Regional Director concerned, as the case may be, within two (2) days from the date of implementation.

SECTION 83.  Institution of Criminal Action. — The Secretary, the Administrator or the DOLE Regional Director concerned, or their duly authorized representatives or any aggrieved person, may initiate the corresponding criminal action with the appropriate office.

Where a complaint is filed with the Administration and the same is proper for preliminary investigation, it shall endorse the corresponding complaint and supporting documents to the proper Prosecution Office.

SECTION 84. Who May File a Motion to Re-open Establishment. — The motion to re-open may be filed only by the following:

a. The owner of the building or his/her duly authorized representative;
b. The building administrator or his/her duly authorized representative;
c. The person or entity against whom the closure order was issued and implemented or the duly authorized representative; or
d. Any other person or entity legitimately operating within the premises closed/padlocked and whose operations/activities are distinct from the recruitment activities of the person/entity subject of the closure order.

SECTION 85. Grounds For Re-Opening The Establishment. — An establishment which has been closed may be re-opened on the following grounds:

a. That the office is not the subject of the Closure Order;
b. That the contract of lease with the owner of the building or the building administrator has already been cancelled or terminated. The request to re-open shall be duly supported by an affidavit of undertaking either of the owner of the building or the building administrator that the same will not be leased/rented to any other person/entity for recruitment purposes without the necessary license from the POEA;
c. That the office is shared by a person/entity not involved in illegal recruitment activities, whether directly or indirectly; or
d. Any other ground that the Administration may consider as valid and meritorious.

SECTION 86. Motion to Lift A Closure Order. — A Motion to Lift a Closure Order which has already been implemented may be entertained only when it is verified and filed by the person or entity against whom the closure order was issued or its duly authorized representatives, with the LRO or the DOLE Regional Director within ten (10) calendar days from the date of implementation thereof.

The Motion shall clearly state the grounds upon which it is based, attaching thereto the documents in support thereof. A Motion to Lift which does not comply with the requirements herein set forth shall be denied.

SECTION 87. Grounds For Lifting A Closure Order. — The lifting of the Closure Order may be granted when the person/entity has proven that it is not involved in the illegal recruitment activities, whether directly or indirectly.

The lifting of the Closure Order shall include the removal of the entity and the names of the persons from the list of persons with derogatory record. The lifting of the Closure Order is, however, without prejudice to filing of criminal action with the appropriate office against any other person alleged to have conducted illegal recruitment activities that led to the issuance of the Closure Order.

SECTION 88. Appeal. — The Order of the Administrator denying the Motion to Lift a Closure Order or Motion to Re-open may be appealed to the Secretary within ten (10) days from the service or receipt thereof.

Any motion filed on the denial of a Motion to Lift shall be treated as an appeal.

SECTION 89. Re-padlocking of Office. — The Administration shall monitor establishments that had been subject of Closure Orders subsequently lifted and re-opened. Where a re-opened office is subsequently confirmed as still being used for illegal recruitment activities, a new Closure Order shall be issued which shall no longer be subject to a Motion to Lift.

SECTION 90. Prohibition on the Use and Establishment or Space Subject of a Closure Order. — The establishment or space subject of an existing Closure Order shall not be used for any purpose. Violation of this Section shall be dealt with accordingly.

**PART III**
**PLACEMENT BY THE PRIVATE SECTOR**

**RULE I**
**Authentication/Verification/Attestation of Documents and Accreditation of Principal/Employer and Enrollment of Ship**

SECTION 91. Verification of Documents of the Principal/Employer. — In case there is a POLO in the principal place of business of the principal/employer, the documents shall be subject for verification to determine the existence of the employing person or company and its capability to hire seafarers, prior to accreditation with the Administration.

SECTION 92. Authentication of Documents of the Principal/Employer. — In case there is no POLO in the country where the principal's/employer's principal place of business is located, the employer shall submit the documents required for verification to the POLO which has concurrent jurisdiction over the place or to the nearest Philippine Embassy/Consulate for authentication.

SECTION 93. Attestation by the Administration. — The manning agreement and special power attorney may be signed by the authorized officials of both the hiring company and its local manning agency in the presence of any official authorized by the Administration for attestation, in lieu of verification or authentication of employment documents.

SECTION 94. Documentary Requirements for Verification, Authentication and Attestation. — The following documents shall be submitted to the POLO for verification or to the Embassy for authentication or to the POEA for attestation:

a. Special Power of Attorney (SPA) or any other equivalent document issued by the principal or employer, specifically authorizing the licensed manning agency to recruit for and in its behalf;

b. Manning agreement containing among others, the responsibilities of both principal/employer and manning agency with respect to the employment of seafarers;

    c.    Valid business license or registration certificate indicating the line of business of the principal/employer or equivalent document or proof of existence of business validated or certified by the issuing authority in the host country; and

    d.    Board Resolution or Secretary's Certificate authorizing an official of the principal/employer to sign the manning agreement and SPA in behalf of the company.

SECTION 95.   Application for Accreditation of Principal/Employer and Enrollment of Ship. — Only duly licensed manning agencies may file an application for accreditation of the principal/employer and enrollment of the ship.

Parties to the manning agreement are the duly authorized representative of the manning agency and the direct principal/employer of the seafarers to be recruited.

Principal/employer shall enroll at least one (1) ship through their licensed manning agencies during the process of accreditation.

SECTION 96. Documentary Requirements for Accreditation of Principal/Employer. — The following verified/authenticated/attested documentary requirements shall be submitted to the Administration, through the Philippine licensed manning agent for accreditation of the principal/employer:

    a.    SPA or any other equivalent document issued by the principal/employer, specifically authorizing the licensed manning agency to recruit for and in its behalf;

    b.    Manning agreement containing, among others, the responsibilities of both principal/employer and manning agency with respect to the recruitment and employment of seafarers;

    c.    List of ships together with the individual certificates of vessel registry (CVR) or an equivalent document.

        In case of a new building ship, a certificate from the ship builder/owner certificate that the ship is under construction, and an affidavit of undertaking of the licensed manning agency to submit the CVR.

    d.    Crew complement and their corresponding wage scale;

    e.    Valid business license or registration certificate of the principal/employer or equivalent document or proof of existence of business validated or certified by the issuing authority in the host country; and

    f.    The principal/employer shall be required to put up and maintain an escrow account with a bank authorized by the *Bangko Sentral ng Pilipinas* to handle trust accounts, with a minimum deposit in the amount of Ten Thousand United States

Dollars (US$10,000.00). The escrow deposit shall primarily answer for the settlement of all valid and legal claims and satisfaction of all judgment awards arising from violations of contracts of employment.

If the principal/employer has a pending case during the renewal of its accreditation, the principal/employer shall be required to put up an additional escrow deposit which shall not exceed a total of Fifty Thousand United States Dollars (US$50,000.00) and shall be subject to the following schedule of payment:

| NO. OF PENDING CASE/S | AMOUNT OF ESCROW DEPOSIT REQUIRED |
|---|---|
| 1 to 5 | US$3,000.00 per case |
| 6 to 10 | US$4,000.00 per case |
| 11 or more | US$5,000.00 per case |

If the principal/employer is accredited or to be accredited to more than one (1) licensed manning agency, it shall put up only one (1) escrow deposit.

If in the succeeding renewal of accreditation, the principal/employer has no pending DAE case, the Administration shall allow the withdrawal of the additional escrow deposit required that is in excess of the Ten Thousand United States Dollars (US$10,000.00). Provided, that, in case the principal/employer voluntarily surrenders its accreditation or allows its accreditation to expire without renewing the same, then the provision of Section 19, on Release of Deposit in Escrow, of these Rules shall apply.

SECTION 97. Enrollment of Ship under the Principal/Employer. — The licensed manning agency of an accredited principal shall enroll the ship. The following shall be submitted:

1. CVR indicating the ship's particulars such as: present and former names, if any, flag registry, date built, place built, IMO number, gross/net tonnage and deadweight, engine type and horsepower, ship's dimension;

   For a new building ship still under construction: a Builder's/Owner's Certificate and affidavit of undertaking of the licensed manning agency to submit the CVR;

2. Crew order/Ship's complement for Filipino seafarers;

3. Wage scale; and

4. Ship's Certificate of Cover for existing/operating ships.

SECTION 98. Validity of Accreditation of Principal/Employer. — Upon compliance with the documentary requirements, the principal/employer shall be accredited by the Administration for a period agreed upon by the parties in the manning agreement but not

more than four (4) years, unless sooner revoked or cancelled by the Administration on any of the following grounds:

1. Expiration of the principal's/employer's business license;
2. Upon written notice of either party to pre-terminate the Agreement;
3. False documentation or misrepresentation in connection with the application for accreditation; and
4. Final judgment in a disciplinary action against the principal/employer.

Subject to substantial compliance with the above requirements, the Administration may issue a provisional accreditation for a period of ninety (90) days.

The expiration of the licensed manning agency's license shall not cause the automatic expiration or cancellation of the accreditation until the renewal of the license. In case the license is not renewed after sixty (60) days from expiration, the accreditation of its principal/employer shall be automatically cancelled.

SECTION 99. Assignment of Accredited Principal's/Employer's Representative in the Licensed Manning Agency. — Subject to the guidelines to be issued by the Administration, a principal's/employer's representative may be assigned in the office of the licensed manning agency.

SECTION 100. Documentary Requirements for the Renewal of Accreditation. — The accreditation shall be renewed upon request by the licensed manning agency, provided, that the following documents are submitted:

1. Renewed Manning Agreement and Special Power of Attorney or confirmation from the principal/employer that the agreement is still valid;

2. Valid business license or registration of the principal/employer;

3. List of active ships;

4. Confirmation from principal/employer that the current salary scale shall be retained, or a new salary scale, in case of adjustment; and

5. List of delisted ships using the "inactive ships report form".

Non-renewal of the accreditation after a period of one (1) year from expiration shall cause delisting from the roster of accredited principals/employers.

SECTION 101. Multiple Accreditations of Principal/Employer. — A principal/employer may be accredited to a maximum of three (3) licensed manning agencies, provided, that a uniform wage and compensation package shall be adopted by the principal/employer for all seafarers employed through the agencies. The wage and compensation may vary if the ship for enrollment by the principal/employer is owned by a different entity, the ship is covered

by a collective bargaining agreement (CBA) and in any other situations as may allowed by the Administration.

SECTION 102. Enrollment of Ship. — A ship shall be enrolled to only one (1) principal/employer and licensed manning agency except in cases involving special types/operations of ship.

SECTION 103. Transfer of Accreditation of Principal/Employer and Enrollment of Ship. — The accreditation of a principal/employer and enrollment of ship may be transferred to another licensed manning agency; provided, that such transfer shall not involve diminution of wages and benefits of the seafarer hired through the previous agency; and provided, further, that the transferee agency shall execute an Affidavit of Assumption of Responsibility over contractual obligations arising from the transfer of the ship and transfer of accreditation of principal/employer. Prior to the transfer of accreditation of principal/employer and enrollment of ship, the Administration shall notify the previous agency of such an application for transfer.

A succeeding licensed manning agency which seeks the accreditation of the principal/employer from the date of cancellation of the accreditation of the principal/employer with the previous licensed manning agency shall be deemed a transferee agency.

For this purpose, any accreditation within six (6) months immediately following its cancellation by the principal/employer shall be deemed a transfer of accreditation, in which case, an assumption of responsibility of the principal/employer shall be required.

SECTION 104. Action on Application for Transfer of Accreditation of Principal/Employer and/or Enrollment of a Ship with Outstanding Obligations. — The pendency of the claims for money or enforcement of obligations arising out of business relations between principal/employer and their existing licensed manning agency shall not prevent the Administration from acting on the request for transfer of accreditation of the principal/employer and enrollment of a ship, if public interest so requires. The said claims may, however, be referred for conciliation by the Administration.

In case of failure of conciliation, the aggrieved party may file a complaint with the Adjudication Office in accordance with the procedures prescribed by these Rules.

SECTION 105. Transfer of Ship Due to Sale or Change of Management. — In case of sale of ship or change of management necessarily involving a change in principal/employer, the licensed manning agency of the new principal automatically assumes full and complete responsibility over the seafarer originally recruited and deployed by the previous licensed manning agency, if the seafarer opts to sign an employment contract with the new principal. Otherwise, the licensed manning agency which originally recruited and deployed the seafarer shall retain full and complete responsibility over the contractual obligations of the original principal.

35

**RULE II**
**Accreditation of Philippine Overseas Shipping Enterprise with Philippine Flagship**

SECTION 106. Requirements for Accreditation of POSE with Philippine Flagship. — The Philippine Overseas Shipping Enterprise with Philippine flagship shall submit the following documents for accreditation:

A. Owned tonnage:

    1. Letter request of the ship owner with the inclusion of the following information:

        i. That the company is the owner of the ship for enrollment;
        ii. Former name of the enterprise (if any); and
        iii. Ex-name of the ship (if any).

    2. Valid certificate of accreditation issued by MARINA that the company is an accredited maritime enterprise;

    3. Valid special permit granted to the ship to engage in the overseas trade;

    4. Valid certificate of Philippine registry of ship with IMO number; and

    5. Accomplished salary scale forms.

B. Under bareboat charter:

    1. Letter request of the charterer with the inclusion of the following information:

        i. That the company is the bareboat charterer of the ship for enrollment;
        ii. Former name of the enterprise (if any);
        iii. Ex-name of the ship (if any).

    2. Valid certificate of accreditation issued by MARINA that the company is an accredited maritime enterprise;
    3. MARINA approval of the bareboat charter of the ship;
    4. Valid certificate of Philippines registry of ship with IMO number; and
    5. Accomplished salary scale forms.

C. With manning agency tie-up:

    1. Letter request of the manning agency with the inclusion of the following information:

        i. That the enlisted shipping enterprise is the owner/bareboat charterer of the ship for enrollment;
        ii. Former name of the shipping enterprise (if any); and
        iii. Ex-name of the ship (if any).

2. Notarized manning agreement and special power of attorney between the enlisted shipping enterprise and licensed manning agency;

3. Valid certificate of accreditation issued by MARINA that the company is an accredited maritime enterprise;

4. Crew request from the shipping enterprise addressed to the manning agency;

5. Valid certificate of Philippine registry of the ship with IMO number;

6. Accomplished salary scale forms; and

7. Additional requirements:

   i. Owned tonnage:
      - Valid special permit granted to the ship to engage in the overseas trade

   ii. Bareboat charterer:
      - MARINA approval of the bareboat charter of the ship

SECTION 107. Renewal of Accreditation of Philippine Overseas Shipping Enterprise with Philippine Flagship. — The following documents shall be submitted for renewal of the accreditation of Philippine Overseas Shipping Enterprise with Philippine flagship:

1. Letter request of the shipowner/bareboat charterer/manning agency;
2. Valid/renewed documents submitted during accreditation (manning agreement/SPA, MARINA accreditation as maritime/shipping enterprise, MARINA special permit of ship, MARINA approval of the bareboat charter of the ship, certificate of ship registry), as may be applicable; and
3. Accomplished salary scale forms.

**RULE III**
**Documentation of Seafarer**

SECTION 108. Documentary Requirements for Processing. — The following documents shall be submitted for processing and documentation of seafarer:

a. Request for processing using the prescribed form of the Administration indicating the name, position and salary of seafarer, contract duration and the name of the principal/employer and ship;

b. Four (4) copies of the standard employment contract for seafarer, one (1) copy for POEA, one (1) copy for the seafarer, one (1) copy for the manning agency, one (1) copy for the principal/employer to be kept on-board during the employment period;

37

c.   Seafarer Information Sheet;

d.   Valid Seafarer Identification and Record Book;

e.   Certificate of cover/entry or other proof of coverage for compulsory insurance, at no cost to the seafarer.

The licensed manning agency shall provide a copy of the duly processed POEA-approved standard employment contract to its hired seafarer unless otherwise provided by law or regulations.

SECTION 109. Payment of Processing Fees. — The required processing fees shall be paid to the Administration by the license manning agency upon approval of the request for processing.

SECTION 110. Issuance of OEC. — An OEC shall be issued only upon compliance with the documentary requirements for processing, and payment of processing and other government-prescribed fees.

SECTION 111. Validity of OEC and Period to Deploy. — An OEC shall be valid for sixty (60) days from date of issuance, within which period the licensed manning agency shall deploy its contracted seafarer.

SECTION 112. Cancellation of the Seafarer's Documents. — If the deployment of the seafarer does not materialize, the licensed manning agency shall immediately report the reasons for the non-deployment and request to the Administration the cancellation of the seafarer's processed documents.

If the deployment of the seafarer does not materialize due to his/her fault, the licensed manning agency may initiate a disciplinary action against the seafarer. In no case shall the licensed manning agency withhold or deny the return of the seafarer's documents upon request.

SECTION 113. In-House Processing Facility. — The Administration shall require all licensed manning agencies to have an in-house processing facility for the issuance of travel exit clearance of their contracted seafarer scheduled for deployment.  The licensed manning agencies shall comply with the documentary and reportorial requirements.

It shall be the responsibility of licensed manning agencies to ensure that they will not deploy a watchlisted seafarer nor will they deploy the seafarer to a watchlisted principal/employer. In the same manner, the licensed manning agencies shall ensure that the seafarer has no valid and existing contract with another licensed manning agency.

The licensed manning agencies shall be subject to regular audit and/or inspection by the Administration to ensure compliance with the prescribed guidelines on the in-house processing facility and shall be required to submit to the Administration a monthly report on OEC utilization.

The Administration reserves the right to suspend in-house processing by a licensed manning agency, should there be an established case of violation of this section.

## RULE IV
## Deployment of Seafarer

SECTION 114. Deployment of Seafarer. — The Administration shall allow the deployment of seafarers only to the following: ships navigating the foreign seas, or installations located offshore or on high-seas, whose owners/employers are compliant with international laws and standards that protect the rights of seafarers.

## PART IV
## EMPLOYMENT STANDARDS

## RULE I
## Formulation of Standard Employment Contracts

SECTION 115. Standard Employment Contracts. — The Administration, through tripartite consultation involving the seafarers and the private sector, shall determine, formulate and establish minimum, separate and distinct standard employment contracts for seafarers, in accordance with accepted international standards and maritime practices. These standard employment contracts, which shall be reviewed periodically to keep them attuned to international requirements and demands, shall be the minimum requirement in every individual contract approved by the Administration.

SECTION 116. Freedom to Stipulate. — Parties to the individual employment contract are allowed to stipulate and mutually agree to other terms and conditions over and above the minimum standards; provided, that the stipulations are mutually beneficial to both parties and are not contrary to law, public policy and morals.

SECTION 117. Disclosure of Terms and Conditions of Employment. — The licensed manning agency and the seafarer shall fully disclose all relevant information in relation to the recruitment and employment of the seafarer.

## PART V
## RECRUITMENT VIOLATIONS AND
## DISCIPLINARY ACTION CASES

## RULE I
## Jurisdiction and Venue

SECTION 118. Jurisdiction. — The Administration shall exercise original and exclusive jurisdiction to hear and decide all cases which are administrative in character, involving or arising out of violations of recruitment rules and regulations, including refund of fees

collected from the seafarer and violations of the conditions for the issuance of the license to recruit the seafarer.

The Administration shall likewise exercise original and exclusive jurisdiction to hear and decide disciplinary action cases against the seafarer and the principal/employer that are administrative in character, excluding money claims.

## RULE II
## Conciliation of Complaints

SECTION 119. Mandatory Conciliation of Complaints. — Before docketing, the Administration or the POLO, shall mandatorily conciliate any administrative complaint involving a seafarer, licensed manning agency, or principal/employer relating to overseas employment.

In case of money claims, the same will also be conciliated in accordance with the Single Entry Approach (SEnA). The failure to arrive at a settlement shall cause the endorsement of the complaint to the appropriate office. In cases falling under Section 123 (A), (9) and (10) herein, the settlement shall be for the return of the full amount excessively/illegally collected.

However, the following cases are not subject to SEnA:

   a. Cases referred by the POLO or another government agency;

   b. Cases initiated by the Administration; and

   c. Cases engaging in acts of misrepresentation for the purpose of securing a license.

SECTION 120. Conciliation Proceedings. — Within five (5) days upon receipt of the complaint, the Administration shall notify the respondent and schedule a conference between the parties to discuss the possibility of arriving at an amicable settlement.

Where an amicable settlement is reached, the Administration shall approve the same and the settlement shall be final and binding upon the parties.

Where efforts for amicable settlement fail, the conciliation proceedings shall be terminated and the complaint shall be referred to the appropriate office immediately.

SECTION 121. Administrative Sanction. — In case of unjustified failure by the licensed manning agencies, principal/employer or a seafarer to abide by the terms of the approved settlement, the Administration, upon motion of the aggrieved party or on its own initiative, shall issue a Writ of Execution for the enforcement of the settlement agreement.

Failure of any party to comply with the terms of the approved settlement despite the lapse of thirty (30) days from the issuance of the Writ shall warrant suspension of the non-

complying party and participation in the overseas employment program, until compliance with or satisfaction of the approved settlement.

SECTION 122. Confidentiality of the Conciliation Proceeding. — The proceeding for conciliation is confidential in nature. No evidence or testimony introduced therein shall be admissible as evidence in any proceeding.

**RULE III**
**Classification of Offenses and Schedule of Penalties**

SECTION 123. Classification of Offenses. — Administrative offenses are classified into serious, less serious and light, depending on their gravity. The Administration shall impose the appropriate administrative penalties for every recruitment violation.

A. The following are serious offenses with their corresponding penalties:

1. Attempting to deploy or deploying a seafarer who is below 18 years old or below the minimum age requirement for overseas employment.

   Penalty:     Cancellation/revocation of license plus a fine of not less than Five Hundred Thousand Pesos (PhP500,000.00) but not more than One Million Pesos (PhP1,000,000.00)

2. Engaging in acts of misrepresentation for the purpose of securing a license or renewal thereof, such as giving false information or documents.

   Penalty:     Cancellation of License

3. Engaging in the recruitment or placement of workers in jobs harmful to public health or morality or to the dignity of the Republic of the Philippines.

   Penalty:     Cancellation of License

4. Engaging in acts of misrepresentation for the purpose of processing workers through a job order that pertains to non-existent work, work different from the actual overseas work, or work with a different employer whether accredited or not with the POEA.

   Penalty:     Cancellation of License

5. Engaging in any acts of misrepresentation in connection with recruitment and placement of workers, such as furnishing or publishing any false notice, information or document in relation to recruitment or employment.

   Penalty:     Cancellation of License

6. Transfer or change of ownership, directly or indirectly, of a single proprietorship licensed to engage in overseas employment.

   Penalty:      Cancellation of License

7. Charging or accepting directly or indirectly any amount of money, goods or services, or any fee or bond for any purpose from an applicant seafarer.

   Penalty:      Cancellation of License plus refund of fee or bond collected

8. Allowing a non-Filipino citizen to head or manage a licensed manning agency.

   Penalty:      Cancellation of License

9. Charging, imposing or accepting, directly or indirectly, under any guise whatsoever, any amount of money as payment for the insurance premium for compulsory insurance coverage.

   Penalty:      Cancellation of license

10. Collecting any amount as payment for processing, or documentation costs not prescribed by the rules, or an amount greater than the actual documentation costs, as covered by official receipts issued by entities where payments were made.

    Penalty:      Cancellation of license plus refund of excess processing or documentation costs

11. Falsifying or altering travel documents of an applicant seafarer in relation to recruitment and deployment.

    Penalty:      Cancellation of license

B.  The following are less serious offenses with their corresponding penalties:

1. Obstructing or attempting to obstruct inspection by the Secretary, the Administrator or their duly authorized representatives.

   Penalty:
   1st Offense   —   Suspension of License (Two Months to Six Months)
   2nd Offense   —   Suspension of License (Six Months and One day to One year)
   3rd Offense   —   Suspension of License (One year and One day to Two years)
   4th Offense   —   Cancellation of License

2. Substituting or altering to the prejudice of the seafarer, employment contracts approved and verified by the Administration, from the time of actual signing thereof by the parties up to and including the period of expiration of the same, without the approval of the Administration.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

3. Withholding or denying travel or other pertinent documents from an applicant seafarer for monetary or financial considerations, or for any other reasons, other than those authorized under the Labor Code and its implementing Rules and Regulations.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

4. Engaging in recruitment activities in places other than that specified in the license without previous authorization from the Administration.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

5. Appointing or designating agents, representatives or employees without notice to the Administration within the period prescribed under the Rules.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

6. Withholding of seafarer's salaries or remittances, SSS contributions and loan amortization or shortchanging/reduction thereof without justifiable reasons.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

The penalty shall include the release of the salaries or remittances being claimed.

7. Allowing persons who are otherwise disqualified from participating in the overseas employment program under existing laws, rules and regulations to participate in the management and operation of the agency.

   Penalty:
   1st Offense       —       Suspension of License (Two Months to Six Months)
   2nd Offense      —       Suspension of License (Six Months and One day to One year)
   3rd Offense      —       Suspension of License (One year and One day to Two years)
   4th Offense      —       Cancellation of License

8. Failure to reimburse expenses incurred by the seafarer in connection with his documentation and processing for purposes of deployment, where deployment does not take place without the seafarer's fault.

   Penalty:
   1st Offense       —       Suspension of License (Two Months to Six Months)
   2nd Offense      —       Suspension of License (Six Months and One day to One year)
   3rd Offense      —       Suspension of License (One year and One day to Two years)
   4th Offense      —       Cancellation of License

   The penalty shall include the carry the accessory penalty of immediate refund of expenses incurred by the seafarer.

9. Failure to comply with any of the undertakings submitted to the Administration.

   Penalty:
   1st Offense       —       Suspension of License (Two Months to Six Months)
   2nd Offense      —       Suspension of License (Six Months and One day to One year)
   3rd Offense      —       Suspension of License (One year and One day to Two years)
   4th Offense      —       Cancellation of License

10. Impose a compulsory and exclusive arrangement whereby a seafarer is required to undergo health examinations (PEME), training, seminar, instruction or schooling of any kind only from specifically designated institutions, entities, or clinics, as the case may be, unless the cost is shouldered by the principal/employer or licensed manning agency.

    Penalty:
    1st Offense       —       Suspension of License (Two Months to Six Months)
    2nd Offense      —       Suspension of License (Six Months and One day to One year)
    3rd Offense      —       Suspension of License (One year and One day to Two years)
    4th Offense      —       Cancellation of License

11. Impose a compulsory and exclusive arrangement whereby a seafarer is required to avail of a loan from a specifically designated institution, entity, or person.

    Penalty:
| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

12. Granting a loan to a seafarer with interest exceeding eight percent (8%) per annum which will be used for payment of legal and allowable fees and making the seafarer issue, either personally or through a guarantor or accommodation party, post-dated checks in relation to the said loan.

    Penalty:
| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

13. Refuse to condone or renegotiate a loan incurred by the seafarer after the latter's employment contract has been prematurely terminated through no fault of his/her own.

    Penalty:
| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

14. Default on contractual obligations to the principal/employer.

    Penalty:
| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

15. Failure to submit reports on serious incidents involving piracy, death, missing seafarer, serious illness and injury requiring repatriation.

    Penalty:
| | | |
|---|---|---|
| 1st Offense | — | Suspension of License (Two Months to Six Months) |
| 2nd Offense | — | Suspension of License (Six Months and One day to One year) |
| 3rd Offense | — | Suspension of License (One year and One day to Two years) |
| 4th Offense | — | Cancellation of License |

C.   The following are light offenses with their corresponding penalties:

1.  For the owner, partner, or officer/s of any licensed manning agency to become an officer or member of the Board of any corporation or partnership engaged directly or indirectly in the management of a travel agency.

Penalty:
1st Offense         —         Reprimand
2nd Offense        —         Fine of PhP20,000.00
3rd Offense         —         Suspension of License (One month to Three months)
4th Offense onwards   —         Suspension of License (Three months to Six months)

2.  Inducing or attempting to induce an already contracted seafarer to transfer from or leave his/her employment for another unless the transfer is designed to liberate a seafarer from oppressive terms and conditions of employment.

Penalty:
1st Offense         —         Reprimand
2nd Offense        —         Fine of PhP20,000.00
3rd Offense         —         Suspension of License (One month to Three months)
4th Offense onwards   —         Suspension of License (Three months to Six months)

3.  Influencing or attempting to influence any person or entity not to employ any seafarer who has not applied for employment through his agency or who has formed, joined or supported, or has contacted or is supported by any union or seafarer's organization.

Penalty:
1st Offense         —         Reprimand
2nd Offense        —         Fine of PhP20,000.00
3rd Offense         —         Suspension of License (One month to Three months)
4th Offense onwards   —         Suspension of License (Three months to Six months)

4.  Failure to actually deploy a contracted seafarer within the prescribed period without valid reason.

Penalty:
1st Offense         —         Reprimand
2nd Offense        —         Fine of PhP20,000.00
3rd Offense         —         Suspension of License (One month to Three months)
4th Offense onwards   —         Suspension of License (Three months to Six months)

5.  Coercing a seafarer to accept prejudicial arrangements in exchange for certain benefits that rightfully belong to them.

Penalty:
1st Offense         —         Reprimand

2nd Offense     —     Fine of PhP20,000.00
3rd Offense     —     Suspension of License (One month to Three months)
4th Offense onwards     —     Suspension of License (Three months to Six months)

6. Disregard of orders, notices and other legal processes issued by the Administration.

Penalty:
1st Offense     —     Reprimand
2nd Offense     —     Fine of PhP20,000.00
3rd Offense     —     Suspension of License (One month to Three months)
4th Offense onwards     —     Suspension of License (Three months to Six months)

7. Failure to submit reports on the status of the employment of seafarers, placement vacancies, remittance of foreign exchange earnings, departures, and such other matters or information as may be required by the Secretary or the Administration, such as resignation and separation from jobs of office staff members.

Penalty:
1st Offense     —     Reprimand
2nd Offense     —     Fine of PhP20,000.00
3rd Offense     —     Suspension of License (One month to Three months)
4th Offense onwards     —     Suspension of License (Three months to Six months)

8. Violation of other pertinent provisions of the Code and other relevant laws, rules and regulations, guidelines and other issuances on recruitment and placement of seafarer for overseas employment and the protection of their welfare.

Penalty:
1st Offense     —     Reprimand
2nd Offense     —     Fine of PhP20,000.00
3rd Offense     —     Suspension of License (One month to Three months)
4th Offense onwards     —     Suspension of License (Three months to Six months)

Money claims arising from recruitment violation may be awarded in addition to the administrative penalties imposed.

SECTION 124. Imposition of Fines. — In lieu of the penalty of suspension of license, the Administration may impose the penalty of fine which shall be computed at Fifty Thousand Pesos (P50,000.00) for every month of suspension.

SECTION 125. Penalty for Cases Involving Five or More Workers. — The penalty of cancellation of license shall be imposed upon a respondent found liable for committing an offense, regardless of the number or nature of charges, against five (5) or more workers in a single case. This provision shall not apply to consolidated cases unless there are five (5) or more complainants in any of the consolidated cases.

SECTION 126. Motion for Reconsideration. — A motion for reconsideration shall be treated as an appeal.

### RULE IV
### Disciplinary Action against Principal/Employer

SECTION 127. Grounds for Disciplinary Action Against Principal/Employer. — Commission by a principal/employer of any of the offenses below shall be a ground for disciplinary action, for which the corresponding penalties shall be imposed:

A. SERIOUS OFFENSES:

1. Gross violation of laws, rules and regulations on overseas employment.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

2. Gross negligence leading to serious injury or illness or death of the worker.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

3. Grave misconduct against the seafarer.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

4. Conviction for an offense involving moral turpitude.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

5. Compelling a seafarer to work for another employer or perform another work.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

6. Passing on or deducting from a seafarer's salary the payment of the cost of insurance fees, premium, or other insurance related charges as provided under the compulsory insurance coverage.

   Penalty:     Permanent Disqualification and delisting from the roster of accredited principals/employers

B. LESS SERIOUS OFFENSES:

1. Default on its contractual obligations to the seafarer and/or to its manning agent.

   Penalty:
   1st Offense — Fine of Php50,000.00
   2nd Offense — Fine of Php100,000.00
   3rd Offense — Suspension from participation in the overseas employment program (Six months to One year)
   4th Offense — Permanent Disqualification and delisting from the roster of accredited principals/employers

2. Substitution of the POEA-approved contract.

   Penalty:
   1st Offense — Fine of Php50,000.00
   2nd Offense — Fine of Php100,000.00
   3rd Offense — Suspension from participation in the overseas employment program (Six months to One year)
   4th Offense — Permanent Disqualification and delisting from the roster of accredited principals/employers

3. Withholding of the seafarer's travel and other pertinent documents.

   Penalty:
   1st Offense — Fine of Php50,000.00
   2nd Offense — Fine of Php100,000.00
   3rd Offense — Suspension from participation in the overseas employment program (Six months to One year)
   4th Offense — Permanent Disqualification and delisting from the roster of accredited principals/employers

4. Violation of other laws, rules and regulations on recruitment and placement.

   Penalty:
   1st Offense — Fine of Php50,000.00
   2nd Offense — Fine of Php100,000.00
   3rd Offense — Suspension from participation in the overseas employment program (Six months to One year)
   4th Offense — Permanent Disqualification and delisting from the roster of accredited principals/employers

## RULE V
## DISCIPLINARY ACTION AGAINST SEAFARER

SECTION 128. Grounds for Disciplinary Action and their Penalties. — Commission by a seafarer of any of the offenses enumerated below or of similar offenses shall be a ground for disciplinary action for which the corresponding penalty shall be imposed:

A.    PRE-EMPLOYMENT OFFENSES:

1.  Submitting, furnishing or using false information or documents or any form of misrepresentation for the purpose of job application or employment.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment Program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment Program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

2.  Unjustified refusal to join ship after all employment and travel documents have been duly approved by the appropriate government agencies.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

B.    OFFENSES DURING EMPLOYMENT:

1.  Smuggling or violation of any customs rules and regulations of the Philippines and of foreign ports.

a.  Smuggling any taxable item.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

b.  Possession or use of prohibited drugs, narcotics and other contraband.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

c.  Gun-running or possession of explosives and the like.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

d.  Abetting or conniving with others to commit smuggling.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

e.  Misdeclaration of or failing to declare articles leading to their seizure and fine to the ship.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program(Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program(One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

f.  Misdeclaration of or failing to declare articles leading to their seizure but the ship is not implicated.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

g.  Possession of pornographic materials leading to their confiscation and fine to the ship.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

h.  Possession of child pornography materials leading to their confiscation and fine to the ship.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

i.  Any other violation which does not implicate the ship.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

52

      j.    Any other violation which implicates the ship.

         Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

2.   Desertion

      a.    Deserting or attempting to desert.

         Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Permanent Disqualification from participation in the Overseas employment program |

      b.    Advising, assisting or persuading another to desert.

         Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas Employment program (Two years to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the Overseas employment program |

3.   Abandoning or leaving one's post or duty without being properly relieved.

      Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

4.   Leaving the ship without permission from responsible officers during or outside working hours.

      Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

5.  Entrusting to others assigned duties without authority of department head.

    Penalty:

    | | | |
    |---|---|---|
    | 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
    | 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
    | 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

6.  Sleeping on post while on duty.

    Penalty:

    | | | |
    |---|---|---|
    | 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
    | 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
    | 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

7.  Insubordination

    a.  Any act of disobedience to lawful orders of a superior officer.

        Penalty:

        | | | |
        |---|---|---|
        | 1st Offense | — | Suspension from participation in the overseas Employment program (One year to Two years) |
        | 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
        | 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

    b.  Attempting to assault a superior officer.

        Penalty:

        | | | |
        |---|---|---|
        | 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
        | 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Three years) |
        | 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

    c.  Assaulting a superior officer/other persons on business with the ship without the use of deadly weapon.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

d.  Assaulting a superior officer/other persons on business with the ship with the use of deadly weapon.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Permanent Disqualification from participation in the overseas employment program |

e.  Behaving with disrespect towards a superior officer.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program(Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program(One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

f.  Insulting a superior officer by words or deed.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program(Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program(One year and one day to Two years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

g.  Inciting another to commit insubordination.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Two years) |

      3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

8. Drunkenness

   a. Drunk while on duty.

      Penalty:
      1st Offense     —     Suspension from participation in the overseas employment program (One year to Two years)
      2nd Offense    —     Suspension from participation in the overseas employment program (Two years and one day to Three years)
      3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

   b. Creating trouble on board due to intoxication.

      Penalty:
      1st Offense     —     Suspension from participation in the overseas employment program (One year to Two years)
      2nd Offense    —     Suspension from participation in the overseas employment program (Two years and one day to Three years)
      3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

   c. Failure to perform assigned jobs due to intoxication.

      Penalty:
      1st Offense     —     Suspension from participation in the overseas employment program (One year to Two years)
      2nd Offense    —     Suspension from participation in the overseas employment program (Two years and one day to Three years)
      3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

9. Creating trouble outside the ship's premises that would unjustly implicate the ship.

   Penalty:
   1st Offense   —   Suspension from participation in the overseas employment program (One year to Two years)
   2nd Offense   —   Suspension from participation in the overseas employment program (Two years and one day to Three years)
   3rd Offense   —   Permanent Disqualification from participation in the overseas employment program

10. Gambling

    a. That results in fighting or any incident as to upset the harmonious relationship on board the ship.

        Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

    b. Any other form of gambling which is not purely recreational.

        Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

11. Violation of company policies and regulations for:

    a. Pilferage or theft of ship's store or cargo.

        Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

    b. Pilferage or theft of ship's property, of crew or passengers or other persons with business at the ship.

        Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

    c. Embezzlement of company funds.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

d.  Unauthorized disposal of company ship's properties for personal gain.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

e.  Any act of dishonesty with intention to defraud the company.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

f.  Gross negligence and failure to observe proper storage and cargo handling procedures resulting in delay of ships and/or damage to cargo.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

g.  Failure to observe and comply with the regulation on non-baggage shipment and acceptance of parcels on board.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

h.  Failure to observe regulations on expiration of shore liberty.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program(Six months to One year) |
| 2nd Offense | — | Suspension from participation in the overseas |

| | | employment program(One year and one day to Two years) |
|---|---|---|
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

i.   Being left behind by the ship in a foreign port without justifiable reason.

Penalty:

| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
|---|---|---|
| 2nd Offense | — | Permanent Disqualification from participation in the overseas employment program |

j.   Disorderly conduct and/or disrespect towards passengers or other persons.

Penalty:

| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two years) |
|---|---|---|
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

k.   Immorality so as to cast aspersion on the good name of the ship and the company.

Penalty:

| 1st Offense | — | Suspension from participation in the overseas employment program (Six months to One year) |
|---|---|---|
| 2nd Offense | — | Suspension from participation in the overseas employment program (One year and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

l.   Inflicting harm or injury to others.

Penalty:

| 1st Offense | — | Suspension from participation in the overseas Employment program (One year to Two Years) |
|---|---|---|
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

12. Incompetence and inefficiency of a seafarer.

Penalty:
1st Offense     —     Suspension from participation in the overseas employment program (Six months to One year)
2nd Offense     —     Suspension from participation in the overseas employment program (One year and one day to Three years)
3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

13. Inciting mutiny or malicious destruction of ship's property or any activity which will hamper the efficient operation of the ship.

Penalty:
1st Offense     —     Suspension from participation in the overseas employment program (One year to Three years)
2ndOffense     —     Permanent Disqualification from participation in the overseas employment program

14. Concerted action to breach approved contracts.

Penalty:
1st Offense     —     Suspension from participation in the overseas employment program (One year to Two years)
2nd Offense     —     Suspension from participation in the overseas employment program (Two years and one day to Three years)
3rdOffense     —     Permanent Disqualification from participation in the overseas employment program

15. Any activity which tends to destroy the harmonious relationship of the company.

Penalty:
1st Offense     —     Suspension from participation in the overseas employment program (One year to Two years)
2nd Offense     —     Suspension from participation in the overseas employment program (Two years and one day to Three years)
3rd Offense     —     Permanent Disqualification from participation in the overseas employment program

16. Grave abuse of authority.

   a. Grave abuse of authority (with the use of deadly weapon) resulting in harm or injury to subordinate.

   Penalty:
   1st Offense     —     Permanent Disqualification from participation in the overseas employment program

60

b. Grave abuse of authority (without the use of deadly weapon) resulting in harm or injury to subordinate.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two Years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

c. Any other case of abuse of authority.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two Years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

17. For gross misbehavior prejudicial to good order and discipline.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two Years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

18. Gross negligence resulting in damage, loss, spoilage or deterioration of the ship's stocks and property.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Two Years) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Two years and one day to Three years) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program |

19. Connivance with or coddling of a stowaway.

   Penalty:
   1st Offense — Suspension from participation in the overseas employment program (One year to Two Years)
   2nd Offense — Suspension from participation in the overseas employment program (Two years and one day to Three years)
   3rd Offense — Permanent Disqualification from participation in the overseas employment program

20. Wilfully making a false statement, report, certification or document for personal gain or with intent to mislead or defraud the company or the authorities.

   Penalty:
   1st Offense — Suspension from participation in the overseas employment program (One year to Three years)
   2nd Offense — Permanent Disqualification from participation in the overseas employment program

21. Any other case as to cast aspersion on the good name of the company and the ship.

   Penalty:
   1st Offense — Suspension from participation in the overseas employment program (One year to Three years)
   2nd Offense — Permanent Disqualification from participation in the overseas employment program

22. Violation to observe safety and environmental rules/ regulations.

   Penalty:
   1st Offense — Suspension from participation in the overseas employment program (One year to Three years)
   2nd Offense — Permanent Disqualification from participation in the overseas employment program

23. Failure to observe the drug and alcohol policy of the company.

   Penalty:
   1st Offense — Suspension from participation in the overseas employment program (One year to Three years)
   2nd Offense — Permanent Disqualification from participation in the overseas employment program

24. Embezzlement of monies and/or properties of a fellow worker entrusted for delivery to kin or relatives in the Philippines.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program(One year to Three years) |
| 2ndOffense | — | Permanent Disqualification from participation in the overseas employment program |

25. Failure to refund the cost of his/her repatriation advanced by the principal/employer or licensed manning agency where termination of employment was due to his/her own fault as determined by a Labor Arbiter.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (One year to Three years) |
| 2ndOffense | — | Permanent Disqualification from participation in the overseas employment program |

26. Violation of the Code of Discipline for Seafarers.

Penalty:

| | | |
|---|---|---|
| 1st Offense | — | Suspension from participation in the overseas employment program (Two months to Six months) |
| 2nd Offense | — | Suspension from participation in the overseas employment program (Six months and One day to One year) |
| 3rd Offense | — | Permanent Disqualification from participation in the overseas employment program. |

**RULE VI**
**Filing of Complaints and Venue Of Action**

SECTION 129. Who May File. — An aggrieved person may file a complaint in writing and under oath for violation of laws, rules and regulations or other issuances relating to overseas employment.

For this purpose, an aggrieved person is one who is prejudiced by the commission of a violation as enumerated in the immediately preceding Rule.

The Administration may, on its own initiative, conduct proceedings based on reports of violation of these Rules and other issuances on overseas employment, subject to preliminary evaluation. The report should state clearly the facts constituting the offense, attaching all available evidence relative thereto.  The report shall be investigated by the Adjudication Office or the POEA regional center/extension units.

SECTION 130.On-Site Complaints for Violation of the POEA Rules and Regulations. —The procedures under Department Order No. 87-08 and/or Manual of Operations of the POLO shall be observed for on-site complaints on violation/s of the POEA rules and regulations.

The complaint shall be in affidavit form and subscribed and sworn before a consular official of the Philippine Embassy. It shall be accompanied by available supporting documents and a Certification of Non-Forum Shopping and Certificate of Failure to Conciliate.

The verified complaint shall be filed with the POLO that has jurisdiction over the worksite of the complainant. The POLO shall endorse to the Administration the complaint filed on-site, together with the available supporting documents, for investigation.

SECTION 131.  Contents of the Complaint. — All complaints must contain the following:

a. The complete name and complete address of the complainant;
b. The complete name and complete address of the respondent;
c. Specific complaint referred to in the classification of offenses;
d. The substance, cause/grounds of the complaint;
e. When and where the action complained of happened;
f. The amount of claim, if any; and
g. The relief/s sought.

The complaint shall be under oath and must be accompanied by the following:

a. Supporting documents;
b. Certificate of failure to conciliate; and
c. Certificate of non-forum shopping.

SECTION 132. Docket and Assignment of Cases. — Complaints duly received and cases initiated by the Administration shall be docketed and raffled for investigation and hearing.

SECTION 133. Venue. — Any complaint against a licensed manning agency arising out of a recruitment violation or violation of the conditions of the license, or complaint against a seafarer or a principal/employer for disciplinary action may be filed with the Adjudication Office, or with the POEA Regional Centers/Extension Units having jurisdiction over the place where the complainant was recruited or resides, at the option of the complainant. The Office where the complaint was first filed shall take cognizance of the case.

SECTION 134. Change of Venue. — A complaint filed before the Adjudication Office may be transferred to the POEA Regional Center/Extension Unit before the respondent files the Answer, upon motion/request of either party and on meritorious grounds, subject to the approval by the Administration.

SECTION 135. Referral to the POEA Regional Center/Extension Unit for Reception of Documentary Evidence. — The Adjudication Office may, upon request of the parties, refer to the POEA Regional Center/Extension Unit the reception of documentary evidence. The Regional Center/Extension Unit shall endorse the received evidence to the Adjudication Office for inclusion in the case record.

**RULE VII**
**Action Upon Complaint/Report**

SECTION 136. Issuance and Service of Show Cause Order/Summons and Filing of Answer. — Upon receipt of the duly docketed complaint/report, the Administration shall issue a Show Cause Order/Summons directing the respondent to file a verified Answer and not a motion to dismiss within ten (10) calendar days from receipt, attaching proof that a copy was sent to the complainant. The Show Cause Order/Summons including a copy of the complaint/report and its supporting documents shall be served upon the respondent.

SECTION 137. Failure to File Answer. — In case the respondent licensed manning agency fails to file an Answer, the assigned Overseas Employment Adjudicator (OEA) shall proceed with the investigation/hearing of the case.

An Answer filed out of time shall not be admitted except on meritorious grounds and upon motion.

In case the respondent principal/employer or the seafarer fails to file the required Answer, the case shall be archived and the respondent shall be temporarily disqualified from participating in the overseas employment program until the respondent files an Answer.

SECTION 138.  Motion for Extension. — Only one motion for extension of time to file Answer shall be allowed. The OEA, upon receipt of such motion may, upon meritorious grounds, grant a non-extendible period of ten (10) calendar days. However, if the allegations in the complaint/report refer to facts or circumstances which occurred abroad, thereby making it necessary to verify with the concerned principal/employer, a longer period not exceeding fifteen (15) days may be granted. A ruling on the motion made by the OEA shall be entered into the minutes, or sent by personal service or by registered mail.

SECTION 139. Proof and Completeness of Service. — The contents of the return shall be proof of the facts stated therein. Service by registered mail or through courier is complete upon receipt by the addressee or agent, but if the addressee fails to claim the mail from the postmaster, service shall take effect a day after the date of the last notice. Service made at the last known address shall be sufficient in case the office of the licensed manning agency is closed and no notice of change of address or cessation of operation has been filed.

Personal service made in any registered office or officer or personnel of the licensed manning agency shall likewise be sufficient. For this purpose, in case the office of the licensed manning agency is closed and no notice of change of address or cessation of operation has been filed, service to the last known address shall be deemed completed.

SECTION 140. Nature of Proceedings. — The proceedings shall comply with the requirements of due process without strictly adhering to the technical rules of procedure and evidence applicable to judicial proceedings. The OEA may avail himself of all reasonable means to ascertain the facts of the case.

SECTION 141. Preliminary Hearing. — The OEA may conduct a preliminary hearing with due notice to the parties, for the purpose of:

a. The possibility of an amicable settlement;
b. The simplification of the issues;
c. The possibility of obtaining stipulations or admissions of facts and of documents to avoid unnecessary proof;
d. The names and number of witnesses to be presented;
e. The propriety of rendering judgment on the pleadings, or summary judgment, or of dismissing the action should a valid ground exist; and
f. Such other matters that may aid in the prompt disposition of the action.

SECTION 142. Non-Appearance of Parties. — The OEA shall schedule a maximum of two (2) hearings. If the complainant fails to appear in all of the scheduled hearings despite notice, the complaint shall be dismissed without prejudice to the re-filing of the complaint within the prescriptive period.

If the respondent fails to appear in all of the scheduled hearings despite notice, the complaint shall be resolved based on the evidence on record.

Non-appearance of both parties in all scheduled hearings will result in outright dismissal of the complaint without prejudice. If the case is re-filed and dismissed again due to non-appearance of the complainant, the dismissal shall already be with prejudice.

SECTION 143. Clarificatory Questions. — At any stage of the proceedings and before the case is submitted for resolution, the OEA may ask clarificatory questions to the parties or their witnesses to further elicit relevant facts or information.

The OEA may set a hearing where the parties shall be given an opportunity to be present but without right to examine or cross-examine. If the parties so desire, they may submit questions to the OEA who may ask the parties or witnesses concerned.

SECTION 144. Service of Order to Appear/to Produce Documents. — The Administration may issue an Order to appear/to produce documents specified in the Order.

The process server who personally served the Order to appear/produce documents, notice of order, resolution or decision shall submit his/her return within five (5) calendar days from the date of his/her service thereof, stating legibly in the return his/her name, the mode of service, the name of the other person to whom it was served and the date of receipt. If no service was effected, the serving officer shall state the reason. The return shall form part of the records of the case.

SECTION 145. Failure or Refusal to Obey Order to Appear/to Produce Documents. — The failure of the officers or employers of the licensed manning agency to comply with an Order to appear/to produce documents without justifiable reason shall be deemed a waiver of

their right to present evidence, and the case shall be decided in accordance with available evidence and without prejudice to the filing of a case for non-compliance.

SECTION 146. Summary Judgment. — Should the OEA, on its own, may render a summary judgment if the pleadings, and supporting affidavits show that there is no genuine issue as to any material fact and that a party is entitled to a judgment under this Rules and as a matter of law. Any party may also, at any time after the answer has been served, move with supporting affidavits for a summary judgment in his favor upon all or any part thereof.

SECTION 147. Judgment on the Pleadings.—Where an answer fails to tender an issue or otherwise admits the material allegations of the adverse party's pleading, the OEA may, on motion of that party, direct judgment on such pleading.

SECTION 148. Effects of Withdrawal of Complaint/Desistance. — The withdrawal of complaint/desistance shall not bar the Administration from proceeding with the investigation of the recruitment violation. The Administration shall resolve the case on the merits, if there is evidence warranting the imposition of appropriate penalties.

SECTION 149. Resolution of the Case. — The OEA shall submit his/her findings and recommendations in the form of a draft Order within six (6) months from the date of filing of the complaint. The Administrator shall render a decision within two (2) months from receipt of the findings and recommendations.

SECTION 150. Contents of Order/Resolution. — The Order/Resolution issued by the Administration shall be clear and concise and shall include the following:

    a. facts of the case;
    b. issue/s involved;
    c. applicable laws or rules;
    d. conclusions and reasons therefor; and
    e. the specific sanction, remedy or relief granted.

SECTION 151. Issuance of Order of Preventive Suspension. — Pending investigation of the recruitment violation or a disciplinary action case, the license of the respondent licensed manning agency or the accreditation of the principal/employer, or the processing of documents of the seafarer, may be suspended for a period not exceeding the imposable penalties under the schedule of penalties.

SECTION 152. Grounds for the Issuance of Order of Preventive Suspension.—

(1) For the Licensed Manning Agency:

    a. There exist reasonable grounds to believe that the continued operation of the licensed manning agency will lead to further violation or exploitation of seafarer being recruited or will adversely affect friendly relations with any country or will prejudice national interest; and

67

      b. The evidence of guilt is strong that there is a case for violation of the pertinent provisions of the Labor Code, its implementing rules and regulations, and POEA Rules and Regulations pertaining to serious or less serious offenses as described in these Rules or any issuance of the Administration.

(2) For a Principal/Employer:

      a. When the evidence of guilt is strong; and
      b. There is reasonable ground to believe that the continued deployment to the principal/employer will result in further violation or exploitation of the seafarer.

(3) For a Seafarer:

      a. When the evidence of guilt is strong; and
      b. The charge involves a serious offense.

SECTION 153. Imposition of Preventive Suspension. —

A) After submission of the Answer in accordance with Section 136 or after the lapse of the period within which to file an Answer and after the conduct of a hearing, the Administrator may issue an Order of Preventive Suspension in accordance with Section 151.

B) The Administration may, upon docketing of a recruitment violation case and without prior notice and hearing, issue an Order of Preventive Suspension when the seafarer is a minor at the time of deployment.

C) The Administration may likewise issue an Order of Preventive Suspension upon recommendation of the embassy/POLO, or when recommended by any government agencies who are members of the Inter-Agency Council Against Trafficking (IACAT) or the Presidential Task Force Against Illegal Recruitment (PTFAIR), supported by a detailed report, sworn statement/s of seafarer, and other evidence; Provided that, the concerned party shall be given a period of five (5) days from receipt of the Show Cause Order within which to file an Answer/Explanation. Failure to file such Answer/Explanation within the prescribed period may result in the imposition of Order of Preventive Suspension on the agency concerned. No Motion for Extension to file an Answer/Explanation shall be allowed.

On the other hand, the Administration may, upon docketing of the case against a principal/employer, issue an Order of Preventive Suspension in the following instances:

      a. When there are five (5) or more complainants and the nature of the offense involves serious or less serious offense;
      b. When the worker involved is an underage seafarer;
      c. When the seafarer dies or suffers severe physical/psychological maltreatment or sexual abuse in the course of the employment; or

    d.  When recommended by the embassy/POLO supported by a detailed report and sworn statement of the seafarer.

The Administrator shall render a decision within ninety (90) days from the date of receipt of the Order of Preventive Suspension. Otherwise, the suspension shall be deemed lifted without prejudice to the outcome of the investigation.

SECTION 154.  Effects of Orders of Preventive Suspension and Suspension or Cancellation of License. — An Order of Preventive Suspension, Suspension or Cancellation of License shall have the effect of suspending or terminating all activities of the licensed manning agency which fall under the definition of recruitment and placement, including the processing of pending contracts of applicant seafarer.  The suspension or cancellation shall not, however, affect the transfer of accreditation of the principal/employer to another licensed manning agency.

SECTION 155. Imposition of Fines. — In lieu of the penalty of suspension of license of the manning agency, the Administration may impose the penalty of fine which shall be computed at Fifty Thousand Pesos (PhP50,000.00) for every month of suspension.

SECTION 156. Mitigating, Aggravating or Alternative Circumstances. — In the determination of the penalties to be imposed against a licensed manning agency and seafarer, the following mitigating, aggravating and alternative circumstances attendant to the commission of the offense shall be considered:

    a.  First offender;
    b.  Admission of guilt and voluntary restitution, where applicable;
    c.  Good faith;
    d.  Exemplary performance;
    e.  Habitual offender;
    f.  Prejudice to the seafarer;
    g.  Gross negligence; or
    h.  Other analogous circumstances.

The party must invoke in the complaint or Answer/Explanation the existence of any of the above enumerated circumstances. However, when the imposable penalty is cancellation of license, the attendant circumstances shall not be applied.

SECTION 157.  Imposition of Penalty. — When applicable, the imposition of the penalty may be made in accordance with the following:

    a.  The minimum of the penalty shall be imposed where only mitigating and no aggravating circumstances are present.
    b.  The medium of the penalty shall be imposed where no mitigating and aggravating circumstances are present.
    c.  The maximum of the penalty shall be imposed where only aggravating and no mitigating circumstances are present.

d.  Where aggravating and mitigating circumstances are present, paragraph (a) shall be applied where there are more mitigating circumstances present; paragraph (b) shall be applied when the circumstances equally offset each other; and paragraph (c) shall be applied where there are more aggravating circumstances.

SECTION 158. Penalty When a Case Involves Five or More Seafarers.  — The penalty of cancellation of license shall be imposed upon a respondent licensed manning agency found liable for committing a less serious or light offense against five (5) or more seafarers in a single case.

SECTION 159. Exempting Circumstances. — The following are considered as legitimate reasons for a seafarer not to depart for the worksite, or to abandon or withdraw from employment:

a.  Exposure to hazardous or demeaning working and living conditions;
b.  Refusal of the principal/employer to grant, release or remit wages and other benefits due to the seafarer;
c.  War, plague or other calamities or other dangerous situations at the worksite as determined by the POEA Governing Board; and
d.  Violation by the principal/employer of labor laws of the Philippines, the host country or international labor laws.

SECTION 160. Motion for Reconsideration. — A motion for reconsideration shall be treated as an appeal.

## RULE VIII
### Disqualification of Principal/Employer and Seafarer

SECTION 161. Failure To File The Required Answer. — In accordance with Section 137, a respondent principal/employer or a seafarer subject of a pending complaint for disciplinary action who fails to submit to the jurisdiction of the POEA shall be disqualified from participating in the overseas employment program until the respondent files an Answer.

SECTION 162. Automatic Disqualification of Principal/Employer. — The name of the principal/employer shall be automatically included in the list of disqualified principal/employer without further proceedings, in case a final and executory judgment issued by the NLRC against the principal/employer shall not have been satisfied. An Order to this effect shall be issued by the Administrator.

For this purpose, any party shall furnish the Administration certified true copies of the Order stating the judgment award and the sheriff's return indicating the failure of the principal/employer to fully satisfy the final and executory judgment against it.

SECTION 163. Lifting of the Automatic Disqualification. — The automatic disqualification referred to in the preceding section shall be lifted upon full satisfaction of the judgment award, as evidenced by certified true copies of the sheriff's return indicating full compliance/satisfaction of the judgment award by the principal/employer.

SECTION 164. Temporary Disqualification of Principal/Employer and Seafarer. — A principal/employer who refused to honor the medical result of a DOH-accredited medical clinic shall be temporarily disqualified to participate in the overseas employment program.

A seafarer against whom a Warrant of Arrest or a Hold Departure Order was issued by a competent authority shall be disqualified to participate in the overseas employment program, unless cleared by the Administration.

SECTION 165. Effect of Disqualification of Principal/Employer. — The principal/employer against whom the penalty of disqualification had been imposed through an Order, Decision or Resolution shall be disqualified from participating in the overseas employment program, unless cleared by the Administration or the penalty imposed is lifted.

An Order of permanent disqualification and delisting from the roster of accredited principals/employers is immediately executory pending appeal.

SECTION 166. Grant of Clemency to a Principal/Employer. — The Administration may, upon motion by the principal/employer, grant clemency to a principal/employer who is penalized with the penalty of disqualification from participation in the overseas employment program, provided, that the following conditions exist:

    a. the respondent is a first time offender;
    b. the respondent did not commit a serious offense;
    c. the claims against respondent have been settled; and
    d. the offended party has pardoned the respondent.

The respondent may file a Motion for Clemency in lieu of an appeal. The filing of a Motion for Clemency shall be deemed a waiver of the right to appeal, or the automatic withdrawal of a pending appeal.

SECTION 167. Grant of Clemency to a Seafarer. — The Administration may, upon motion, grant clemency to a seafarer who is penalized with the penalty of disqualification from participation in the overseas employment program, provided, that any of the following conditions exists:

    a. the respondent is a first time offender;
    b. the offense committed does not involve a serious offense, or crime involving moral turpitude, misrepresentation or theft; or
    c. the respondent should have served at least seventy-five percent (75%) of the period of the penalty imposed; and
    d. the case has been settled/resolved with the offended party.

SECTION 168. Grant of Clemency to a Partner, Officer, or Director, of a Cancelled Licensed Manning Agency. — The Administration, upon motion, may grant clemency to a partner, officer or a director of a manning agency whose license has been cancelled and whose name

has been included in the list of persons with derogatory record, provided, that the following conditions are met:

    a. the manning agency has only one (1) case involving not more than ten (10) seafarers  for which the license has been cancelled as certified by the Adjudication Office;

    b. the Officer or Director must prove that he/she did not participate in the commission of the charged violation;

    c. proof of the full satisfaction of the awards on the case, if any;

    d. the  complainant/s had condoned the acts of the manning agency;

    e. the  partner, officer, or director has not participated in the overseas employment program for at least four (4) years from the time of cancellation of license;

    f. submission of NBI clearance; and

    g. proof of publication in a newspaper of general circulation of the movant's intent to apply for re-admission to the overseas employment program.

The grant of clemency under this section may be availed of only once.

**RULE IX**
**Appeal**

SECTION 169.   Jurisdiction. — The Office of the DOLE Secretary shall have exclusive jurisdiction to act on appeals from the Orders of the Administration.

SECTION 170.   Period to Appeal. — The party aggrieved by a decision of the Administration may appeal the same to the office of the DOLE Secretary within fifteen (15) calendar days from receipt of a copy of the decision. Failure of the aggrieved party to perfect the appeal within the reglementary period shall render the decision of the Administration final and executory.

The Docket and Enforcement Division shall not accept an appeal that is filed beyond the reglementary period of appeal.

SECTION 171. Entry of Judgment. — The Administration shall issue an entry of judgment upon failure to file an appeal within the reglementary period.

SECTION 172.   Requirements for Appeal. — The appealing party shall file a Notice of Appeal and an Appeal Memorandum with the Docket and Enforcement Division of the Administration.

It shall clearly point out the errors of law and/or fact in the decision appealed from and shall be verified.

In case a fine and/or monetary award is imposed against the appealing party, the appealing party shall also file with the Administration a *supersedeas* bond in the amount of such fine and/or monetary award. The *supersedeas* bond shall be in cash, or in a surety bond acceptable to the Administration, and shall be valid until the case is finally resolved.

To be acceptable, the following documents shall be attached to the surety bond submitted:

 a. certified copy of a valid certificate of accreditation and authority issued by the Office of the Court Administrator of the Supreme Court containing the photograph of the authorized agent;
 b. copy of the certificate of compliance with Circular No. 66 of the Insurance Commission duly certified by the Insurance Commission; and
 c. corporate secretary's certificate containing the specimen signatures of the agents authorized to transact business with courts.

In case any of the above requirements is not complied within the period provided above, the appeal shall not be given due course and Entry of Judgment shall be issued by the Administration in accordance with the Rules of Court.

SECTION 173. Transmittal of the Records of the Case on Appeal. — Within five (5) days from receipt of the appeal seasonably filed with the corresponding requirements, the Docket and Enforcement Division of the Administration shall transmit the entire records of the case to the Office of the Secretary.

SECTION 174. Stay of Execution. — The Order of the Administration shall be stayed during the pendency of the appeal except:

 a. when the penalty imposed is suspension of license for twelve (12) months or more;
 b. when the penalty imposed is cancellation of license; or
 c. when the penalty imposed is permanent disqualification against the principal/employer.

SECTION 175. Period to Resolve the Appeal. — An Appeal from the Order of the Administration shall be resolved by the Office of the Secretary within sixty (60) calendar days from receipt of the transmittal of the entire records of the case.

## RULE X
### Execution of Decisions

SECTION 176. Issuance of Writ of Execution. — Unless otherwise provided in these Rules, after the Order has become final and executory, the Administration, upon motion or on its own initiative, shall issue a writ of execution requiring the Enforcement Officer to enforce a monetary award and/or fine imposed in the decision.

SECTION 177. Issuance, Form and Contents of a Writ of Execution. — The writ of execution must be issued in the name of the Republic of the Philippines, requiring the Enforcement Officer to execute the Orders of the Administrator or the Office of the Secretary or his/her duly authorized representative, as the case may be.

The writ of execution must contain the dispositive portion of the Order or decision sought to be executed. It must require the Enforcement Officer to serve the writ upon the losing party or upon any other person required by law to obey the same before proceeding to satisfy the judgment.

Execution shall proceed against the assets of the losing manning agency in the following Order:

    a.  *supersedeas* bond;
    b.  escrow deposit;
    c.  personal property; and
    d.  real property.

A writ of execution shall not be necessary for the enforcement of Orders in the following cases:

    a.  For the return of travel and other related documents. A copy of the Order served upon the losing party or upon any other person required by law to obey such Order is sufficient; and
    b.  Where the agency had earlier posted a cash bond in relation to an appeal. Certified copies of the final and executory Order and official receipt of the cash bond shall be sufficient basis for the preparation of the voucher for the release of the amount to be refunded, or for the confiscation/forfeiture of the amount equivalent to the fine.

The writ of execution shall be valid and effective for a period of sixty (60) calendar days from issuance thereof.

SECTION 178. Motion to Cancel/Quash Writ of Execution. — Within five (5) days from receipt of a copy of Writ of Execution, the judgment debtor may file a Motion to Cancel/Quash the Writ of Execution on meritorious ground. The filing of such motion shall not stay the execution of the writ, unless a cash or surety bond is posted equivalent to the judgment award and/or fine which shall answer for the same in the event that the motion is denied.

An Order denying a Motion to Quash the Writ of Execution is final and no further motions of similar nature shall be entertained.

SECTION 179. Enforcement of Writs. — In executing an Order, the Enforcement Officer shall be guided strictly by the Manual of Instructions for Enforcement Officers of the POEA.

SECTION 180.  Garnishment. — By virtue of the Writ of Execution, the enforcement officer shall issue a notice of garnishment to the person/entity having in possession or control of any property belonging to the licensed manning agency, directing said person/entity not to deliver, transfer or otherwise dispose of such property except to the above-mentioned enforcement officer.

In cases where several writs of execution are issued against the same licensed manning agency, satisfaction of the claims of seafarer against the escrow deposit shall be on a "first come, first serve" basis, irrespective of the date of filing of the case or date of the decision or date of the writ of execution; Provided, that where the Orders of garnishment are served simultaneously, the escrow deposit shall be given pro-rated among the claimants.

For fine imposed against a cancelled/delisted manning agency, its escrow deposit shall be subject to garnishment.

SECTION 181.  Return of Writ of Execution. — The Enforcement Officer implementing the writ of execution shall submit his/her return immediately upon the satisfaction of the judgment award. However, regardless of the outcome of implementation, the enforcement officer shall submit the return not later than sixty (60) calendar days from date of issuance thereof. The return shall state the mode of service, the name of the person served and the date of receipt. The return shall also indicate legibly the full name of the officer who served the writ. The return shall form part of the records of the case.

**RULE XI**
**Miscellaneous Provisions**

SECTION 182.  Records of Proceedings. — The records of all proceedings before the OEA, which must be chronologically arranged and appropriately paginated, shall be summarized in writing by the OEA, including the substance of the evidence presented. The minutes of proceedings shall be signed by the parties and shall form part of the records. In case the parties refuse to sign, the refusal and reason/s given must be indicated by the OEA in the minutes.

Section 183. Appearances. — A party may appear personally in his/her own behalf or through a duly authorized representative.

A lawyer appearing for a party shall indicate in his/her pleadings and motions, attorney's roll number, PTR number, IBP number for the current year, valid Mandatory Continuing Legal Education Compliance and complete address.

Appearances shall be made in writing with proof of authority to represent. The complete name and office address of counsel/representative of either party shall be made part of the record and the adverse party or his/her counsel/representative shall be properly notified.

Any change in the address of counsel/representative shall likewise be put on record with notice served upon the adverse party or counsel/representative.

Any change or withdrawal of counsel/representative shall be made in accordance with the Rules of Court.

SECTION 184. Action on Motions. — Within the period required to file an Answer, the OEA shall have the authority to rule on motions for extension of time to file pleadings, resetting and other similar motions, which may be done in writing or orally during the proceedings/conferences.

SECTION 185. Consolidation of Cases. —Where there are two (2) or more cases pending before different OEA, involving the same respondent/s and issues, the case which was filed last may, upon written motion and with notice to all parties, be consolidated with the first to avoid unnecessary cost or delay. Such cases shall be handled by the OEA to whom the first case was assigned/raffled.

SECTION 186. Discovery of Another Offense. — When in the course of investigation, another offense is discovered, the Administration may issue the necessary supplemental Show Cause Order or Summons or inform the respondent of the additional offense discovered during the investigation and enter the same in the minutes. The Administration shall allow the respondent the requisite period within which to file an Answer to the supplemental show cause Order or summons.

SECTION 187. Discovery of Another Respondent. — When in the course of the investigation, another licensed manning agency, principal/employer or seafarer is found to have committed an offense related to the subject of the investigation, the OEA shall automatically implead said licensed manning agency, principal/employer or seafarer in the pending case. For this purpose, a Show Cause Order or Summons shall be issued to the licensed manning agency, principal/employer or seafarer in accordance with these Rules.

SECTION 188.  Who May Issue Orders. — The Administrator shall issue Orders of suspension of documentary processing, preventive suspension, suspension, cancellation or revocation of license, or dismissal of the case, lifting of penalties, and all other Orders as may be necessary.

Interlocutory Orders may be signed by the Director-Adjudication Office.

SECTION 189. Prescription. — All cases enumerated in these Rules shall be barred if not commenced or filed with the Administration within three (3) years after such cause of action accrued.

SECTION 190. Applicability of the Rules of Court. — The Revised Rules of Court of the Philippines shall, whenever practicable, supplement these Rules in similar or analogous character in proceedings brought before the Administration.

**PART VI**
**ASSISTANCE TO SEAFARER**

**RULE I**
**Assistance to Seafarer**

SECTION 191. Responsibility to Seafarer. — The Administration shall ensure that the seafarer is amply protected, and that his/her interest, well-being and welfare is promoted. Licensed manning agencies shall be responsible for the faithful compliance by their principal/employer of all obligations under the employment contract.

SECTION 192. Request for Assistance. — The Administration may take cognizance of any request for assistance from the seafarer or his/her family on matters relating to overseas employment, or may refer them to the proper government agencies or the licensed manning agencies concerned, for appropriate action.

SECTION 193. Monitoring of Deployed Seafarer and Submission of Reports. — The licensed manning agency shall monitor the status or condition of its deployed seafarer and submit a corresponding quarterly report to the Administration. It shall likewise immediately act on complaints or problems brought to its attention and submit corresponding reports to the Administration.

In case of significant incidents regarding the status and condition of seafarer, the licensed manning agency shall submit a report regarding the same to the Welfare and Employment Office of the Administration within five (5) working days from the occurrence of the incident.

SECTION 194. Reporting of Erring Principal/Employer. — The licensed manning agency shall report to the Administration any information that comes to the knowledge of the agency, with respect to any violation of these Rules by their principal/employer. The matter shall be referred to the Adjudication Office or LRO for appropriate action.

SECTION 195. Administrative Sanctions. — Failure by licensed manning agency and/or principal/employer to submit a report or to act on requests for assistance and/or complaint of seafarer and/or their families shall warrant imposition by the Administration of such sanctions as it may deem appropriate.

SECTION 196. Welfare Programs and Activities. — The Administration shall support and coordinate with other institutions on projects and activities that will enhance the welfare and promote the interests of seafarers and their families, including those that will facilitate the psychosocial and economic reintegration of a seafarer who has decided to return home permanently.

## RULE II
## Repatriation

SECTION 197. Primary Responsibility to Repatriate the Seafarer. — Notwithstanding the provisions on compulsory insurance coverage as required by law, the repatriation of a seafarer or his/her remains, and the transport of his/her personal effects shall be the primary responsibility of the principal/employer and licensed manning agency that recruited and/or deployed him. This entails the obligation to cover repatriation and attendant costs, including airfare and immigration fines/penalties. This obligation shall be without prior determination of the cause of the need to repatriate the seafarer.  After the seafarer has returned to the country, the principal/employer or licensed manning agency may, however, recover the cost of repatriation from the seafarer if the termination of the employment was due solely to the seafarer's fault.

SECTION 198. Repatriation Procedures. —

A) In case a request for repatriation is filed by a seafarer at the POLO, the Labor Attaché and/or Welfare Officer shall evaluate the request. Should there be a need for the immediate repatriation of the seafarer, the Labor Attaché shall notify the principal/employer about the request for repatriation. If the principal/employer fails or refuses to provide for the ticket or costs thereof, the Labor Attaché shall notify the OWWA and the POEA simultaneously of such need to repatriate.

In case the request is received or filed at the POEA, the POEA shall immediately notify the principal/employer, the licensed manning agency, and the POLO, of such request.

B) The POEA shall immediately issue a notice requiring the licensed manning agency to provide, within forty eight (48) hours from such notice, the plane ticket or the prepaid ticket advice (PTA) to the POLO or Philippine Embassy. The licensed manning agency shall notify the POEA of such compliance, which shall then inform OWWA of the action of the licensed manning agency.

If the licensed manning agency fails to provide the ticket or PTA within forty-eight (48) hours from receipt of the notice, the Administration shall suspend the documentary processing of the licensed manning agency or impose such other sanctions as it may deem necessary.

C) In case the repatriation of the seafarer is dependent upon the issuance of an exit visa/clearance, the principal/employer shall have fifteen (15) days from notice to secure such exit visa. The licensed manning agency which recruited and/or deployed said seafarer shall exert earnest efforts in coordinating with the principal/employer to ensure the issuance of said visa.

D) When the repatriation is dependent upon the issuance of an exit visa and the principal/employer fails to secure the exit visa within a period of fifteen (15) days from receipt of the POEA notice, the Administration shall suspend the principal/employer from participating in the overseas employment program. In the same manner, where the licensed manning agency, despite issuing the PTA for the repatriation of the seafarer, does not exert

earnest efforts in coordinating with the principal/employer to ensure the issuance of said visa, the Administration shall suspend the documentary processing of the licensed manning agency.

E) Upon request, the Administrator may issue an Order lifting the suspension of documentary processing only upon compliance with the directive for which the Order of suspension of documentary processing was issued.

F) When those primarily responsible for the repatriation fail to fulfill their obligations, the Administration shall notify OWWA to advance the costs of repatriation with right of reimbursement against the licensed manning agency or principal/employer. The OWWA shall notify the POEA of the arrival of the repatriated seafarer. It shall likewise notify the agency that has the obligation to repatriate the seafarer and demand payment, within fifteen (15) days from notice, of the costs it has advanced for the repatriation of the seafarer, including legal interest in case of default.

In case the licensed manning agency fails to reimburse the OWWA, the latter may recommend to the POEA the imposition of suspension of documentary processing. The POEA will direct the licensed manning agency to settle its obligation with the OWWA within ten (10) days from notice. Non-compliance with the directive of the POEA shall result in the suspension of documentary processing.

The suspension of documentary processing imposed against the licensed manning agency and the principal/employer shall be lifted by the Administration only upon clearance by the OWWA.

SECTION 199. Prohibition Against Performance Bonds And Deposits. — The licensed manning agency shall not require any bond or cash deposit from the seafarer to guarantee performance under the contract or for the seafarer's repatriation.

SECTION 200. Emergency repatriation. — The OWWA, in coordination with DFA, and in appropriate situations, with international agencies, shall undertake the repatriation of seafarers in cases of war, epidemic, disasters or calamities, natural or man-made, and other similar events, without prejudice to reimbursement by the responsible principal/employer or licensed manning agency within sixty (60) days from notice. In such cases, the POEA shall simultaneously identify and give notice to the licensed manning agencies concerned, copy furnished the corresponding insurance companies.

SECTION 201. Mandatory Repatriation of Underage Seafarer. — Upon discovery or upon being informed of the presence of a seafarer whose actual age falls below the minimum age requirement for overseas deployment, the responsible officers in the foreign service shall, without delay, repatriate the said seafarer and advise the DFA through the fastest means of communication available of such discovery and other relevant information.

## RULE III
## High Risk Zones and War Risk Areas

SECTION 202.  Declaration of High Risk Zones and War Risk Areas. — In order to protect seafarers in high risk zones and from the hazards of war or war-like operations, the Administration shall, pursuant to prior declaration by the competent authorities, declare specific areas, territorial waters or portions of the high seas as high risk zones or war risk areas.

SECTION 203.  Premium Pay and Additional Insurance Coverage. — Seafarers sailing through areas declared by the Administration as high risk zones or war-risk areas shall be entitled to premium pay or its equivalent and war risk insurance coverage, the form of which shall be determined by the Administration.

## RULE IV
## Comprehensive and Integrated Public Education Program

SECTION 204. Public Education Program. — The Administration shall undertake a comprehensive and integrated public education program on overseas employment involving workers, licensed manning agencies, principals/employers and government personnel, for the purpose of promoting safe and legal migration and preventing illegal recruitment and trafficking in persons.

SECTION 205. Workers Education Program. — The Administration shall disseminate information on labor and employment conditions and the shipping industry situation, to adequately prepare individuals and empower them to make informed and intelligent decisions about overseas employment.

Toward this end, the Administration shall resort to modes of information and dissemination campaigns, such as the conduct of PEOS in the form of community/mass-based PEOS or PEOS online.  Attendance to the PEOS shall be mandatory for all applicants for maritime employment. The PEOS shall cover all stages of employment.

The Administration shall likewise conduct a nationwide, multi-media campaign to continuously disseminate anti-illegal recruitment laws and regulations, updated lists of licensed manning agencies and entities and other essential information, through information and education materials such as brochures, pamphlets, posters, visual aids and other similar materials.

SECTION 206. Partnerships With Stakeholders. — The Administration shall maintain and strengthen its partnership with local government units, other government agencies, private sector and civil society organizations advocating the rights and welfare of seafarer, for the purpose of dissemination of information on all aspects of overseas employment, including the conduct of information and education campaigns on anti-illegal recruitment and anti-trafficking in persons.

SECTION 207. Agency Education Program. — The Administration shall provide Pre-Licensing Orientation Seminars and a Continuing Agency Education Program for the officers and personnel of licensed manning agencies.

For this purpose, the Administration may charge reasonable fees to defray expenses to be incurred for such programs.

SECTION 208. Orientation of Principal/Employer. — The Administration in coordination with the POLO or concerned entities shall provide effective orientation to the principal/employer on the requirements, standards, laws and regulations in the recruitment and employment of Filipino seafarers.

SECTION 209. Training for POEA Personnel. — In order to be more effective resource persons and educators, the Administration shall endeavor to update POEA personnel on developments on the local and global labor markets, and promote their participation in conferences and missions concerning migration issues.

## RULE V
## Registration of Seafarers

SECTION 210. Registration of Seafarers. — The Administration shall establish and maintain a national seafarer registry in support of the overseas employment program. For this purpose, it shall adopt a system of registration of seafarers according to skills, occupation or such classification as it may deem expedient and effective.

SECTION 211. Issuance of Guidelines. — The Administration shall issue guidelines to facilitate their registration of specialized ship board personnel who possess special qualifications in non-conventional positions such as technicians, machinists, welders, electricians, fishermen and others, categorized subsequently under the C3 registry, who are being engaged on board ship by the principal/employer. For this purpose, the C3 registry refers to a list of applicants who do not meet the minimum requirements for registration as seafarers, but have limited sea-related experience or training and are being hired by a licensed manning agency on-board an ocean-going ship.

SECTION 212. Disqualification. — A seafarer applicant may be disqualified from the registry on account of any of the following:

    a.  Submission of fake or spurious document/s;

    b.  Tampering with or altering documents issued by the Administration, such as the registration card and other forms used in the registration;

    c.  Other grounds provided under Part V, Rule V, disciplinary action against seafarers, of these Rules;

    d.  Being totally and permanently disabled.

**RULE VI**
**Seafarer Research and Development**

SECTION 213.  Research Studies. — The Administration, in coordination with other entities, shall conduct periodic research and studies on labor supply, especially as it relates to the monitoring of the supply of seafarers vis-à-vis the demand for them in international shipping.

SECTION 214.  Manpower Development Program. — The Administration shall establish linkages with government agencies and other concerned sectors in the development and provision of assistance programs for the training of seafarers.

SECTION 215.  Training Programs and Standards. — The Administration shall coordinate with private entities, government agencies and employers concerned in the formulation of training programs and standards.

**RULE VII**
**Code of Discipline For Filipino Seafarers**

SECTION 216. Obligations of Filipino Seafarers. — It is the duty of all seafarers to conduct themselves in the most professional, responsible and ethical manner in the performance of their duties and fulfill the following obligations:

A.    **DUTY TO FAMILY:**

1) To provide ample financial and moral support to his/her family in the Philippines; and
2) To communicate with his/her family as often as he/she can and make his/her presence felt just as if when he/she is around.

B.    **DUTY TO FELLOW SEAFARER:**

1) To assist and cooperate with other contract seafarers working on the same ship; and
2) To refrain from degrading a colleague in order to get a position or rank or from putting a fellow seafarer in a bad light before his/her colleagues or supervisors.

C.    **DUTY TO COUNTRY:**

1) To uphold the ideals of the Republic of the Philippines and to defend it, if warranted;
2) To abide by the rules and regulations aimed at promoting the seafarer's interest and enhancing national gains; and
3) To be the ambassador of goodwill, projecting only the good in the Filipino and restrain from tarnishing the Filipino image abroad.

D.     **DUTY TO MANNING AGENCY AND/OR PRINCIPAL/EMPLOYER:**

1)   To provide the licensed manning agency and/or principal/employer with correct and true statements/certifications regarding his/her skill, experience and other qualifications;

2)   To understand and abide with the terms and conditions of the employment contract;

3)   To maintain a high level of productivity as well as abide by company rules and regulations; and

4)   To refrain from committing acts which are detrimental to the interest of his/her principal/employer, licensed manning agency during his/her documentary processing and/or employment.

E.     **DUTY TO PORT STATE AND FLAG STATE:**

1)   To respect the mores, customs and traditions of the country; and

2)   To respect and obey the laws of the host country.


**PART VII**
**INCENTIVES AND AWARDS**

**RULE I**
**Agency Awards**

SECTION 217. Three-Tiered Award System for Licensed Manning Agencies. — The Administration shall confer awards to licensed manning agencies in recognition of their consistent excellent performance in providing decent and remunerative employment to seafarers, maintaining professionalism and upholding ethical recruitment practices.

The licensed manning agencies qualified for the awards shall be evaluated based on the following criteria:

a.   Compliance with Recruitment Rules and Regulations refers to the absence of a record of an adverse decision, preventive suspension, documentary suspension, and pending recruitment violation cases, and cases before the DOLE and NLRC.

b.   Technical Capability refers to the licensed manning agency's management and recruitment capability in terms of qualification of staff, office facilities/work environment, ISO Certified Quality Management System, automated system of recruitment and deployment, including monitoring of workers onsite.  It also covers the existence of a Human Resource Development Plan for licensed manning agency personnel, as well as compliance with general labor standards and occupational safety and health standards, provision of in-house PEOS and other similar education programs to prepare seafarers for overseas employment.

    c. Industry Leadership (for Award of Excellence/ Presidential Award) refers to the agency's pioneering achievement in the entry to new or emerging markets (entirely new country and new market), expansion of market opportunities for Filipino seafarers, membership in industry associations or occupy position of leadership in industry associations, and participation in the development and formulation of policies on overseas employment program.

    d. Marketing Capability (for Top Performer candidates) refers to the license agency's accomplishment in the generation of a new principal.

    e. Deployment refers to the volume and quality of deployment of a licensed manning agency during the period under review, as well as terms and conditions of employment beyond minimum standards, that ensure a principal's good treatment of its seafarers.

    f. Welfare Programs and Corporate Social Responsibility refers to the provision of responsive welfare and allied services for the seafarers, their dependents/families, exemplary acts of assistance in times of hazardous, dangerous or distressed situation, corporate social responsibility (socio-economic and civic programs and projects) in coordination with government or with private entities/organizations, and a contribution to continuous seafarer training and development, including skills upgrading of seafarers.

The three-tiered award system consists of the following categories:

    a. Top Performer Award, the first level award which is given to a manning agency that has been actively operating for at least four years and has passed the criteria and threshold for the said award, which shall be conferred once every two (2) years;

    b. Award of Excellence, the second level award given to a manning agency which has received the Top Performer Award for three (3) times, which shall be conferred once every two (2) years;

    c. Presidential Award, the highest level award given to a manning agency which has received the Award of Excellence for three (3) times, which shall be conferred once every six (6) years.

SECTION 218. Incentives and System of Recognition. — The recipients of Outstanding Manning Agency Awards shall be entitled to the following package of incentives:

A. Presidential Awardees

    1. Extension of license validity for three (3) full terms, effective upon expiration of license, subject to the corresponding license fee and escrow agreement;

2. Exemption in the submission of requirements for the following applications/ requests upon notice:

   a. Renewal of license, subject to the corresponding license fee and escrow agreement;

   b. Establishment of branch office and additional office;

   c. Transfer of business address; and

   d. Letter of Acknowledgement to principal's representatives.

3. Approval of the following applications/requests upon notice, subject to post submission and evaluation of documentary requirements

   a. Renewal of registration/accreditation of principal/employer;

   b. Change of officers/personnel.

Except for item no. 1, all licensed manning agencies previously conferred with Presidential Award of Excellence shall continue to enjoy the above incentives and privileges.

B.   Awardees of Excellence

1. Extension of license validity for two (2) full terms, effective upon expiration of license, subject to the corresponding license fee and adjustment of bonds;

2. Approval of the following applications/requests upon notice, subject to post submission and evaluation of documentary requirements:

   a. Licensing concerns

      i.   Renewal of license
      ii.  Establishment of branch office and additional office
      iii. Transfer of business address
      iv. Change of officers/personnel
      v.  Letter of authority to principal/employer representatives

   b. Registration/Accreditation concerns

      i.Renewal of registration/accreditation of principal/employer

Except for item no. 1, the previous recipients of the Award of Excellence shall continue to enjoy the above incentives and privileges.

Further, the Presidential Awardees and Awardees of Excellence shall also enjoy the following incentives:

1. Exemption from Philippine Embassy/POLO authentication/verification of employment documents of principal/employer;

2. Open job order system;

3. Waiver in the submission of requirements for special recruitment authority and jobs fair authority;

4. Publication of list of awardees in the POEA website, with links to their respective websites; and

C. Top Performers

1. Extension of license validity for one (1) full term, effective upon expiration of license, subject to the payment of corresponding license fees, adjustment of bonds and post submission of evaluation of documentary requirements; and

2. Publication of list of awardees in the POEA website, with links to their respective websites.

All other incentives shall be valid until a new set of awardees has been selected. Such incentives shall be revoked in case of suspension or cancellation of license of an awardee.

SECTION 219. Other Incentives and System of Recognition. — The Administration shall, other than those mentioned in the preceding paragraph, continue to recognize exemplary performance of licensed manning agencies and develop an incentive scheme to reward those that practice ethical recruitment standards, including the development of a "white list" of agencies and other similar schemes.  It shall also continually review the awards system and its incentives, for the purpose of enhancing the system, taking into consideration developments in migration policies and practices and trends in the global labor market, and affording the participation of various stakeholders in the process.

**RULE II**
**Employers' Awards**

SECTION 220. Two-Level Award System for Principal/Employer. — The Administration shall confer every four (4) years a two-level award to deserving international companies and individuals who have been major providers of decent and quality employment to Filipino seafarers and who have significantly contributed to their development as well as the protection and promotion of their well-being, as follows:

A. MINISTERIAL AWARD OF COMMENDATION – The award shall be conferred once every two (2) years by the Secretary of Labor and Employment to principal/employer who, based on safe, fair and ethical recruitment, have continuously hired Filipino seafarers during the past four (4) years.

B. PRESIDENTIAL AWARD OF DISTINCTION – The award shall be conferred once every six (6) years by the President of the Philippines to principal/employer who, based on safe, fair and ethical recruitment, have continuously hired Filipino seafarers during the past four (4) years and has been a Ministerial Awardee for three (3) consecutive times.

SECTION 221. Criteria for Ministerial Award. — The following shall be the criteria for the Ministerial Award:

1. Demonstrated preference and active hiring of seafarers within the last four (4) years;

2. Provision of superior terms and conditions of work that will enhance the productivity of seafarers;

3. Compliance with Philippine laws, rules and regulations on the recruitment and employment of seafarers;

4. Active participation and contribution to welfare that benefit seafarers' families; and

5. No derogatory record within the last four (4) years.

SECTION 222. Qualification for Presidential Award. — A recipient of the Ministerial Award may qualify for Presidential Award on the basis of the following criteria:

1. Contribution to the continuous seafarer training and development and skills upgrading of seafarers;

2. Implementation of corporate social responsibility programs; and

3. Extraordinary acts of assistance to seafarers in times of hazardous, dangerous or distressed situations.

SECTION 223.  Incentives for the Ministerial Awardees — Ministerial awardees shall have the following incentives:

1. Exemption from POLO Verification of employment documents;

2. Exemption from securing a Letter of Acknowledgment for the conduct of interviews of applicants; and

3. Extension of validity period of accreditation to five (5) years.

Such incentives shall be automatically revoked in case of suspension or disqualification of the awardee.

SECTION 224.  Incentives for the Presidential Awardees — In addition to the incentives provided in immediately preceding section, Presidential Awardees shall enjoy the following incentives:

1.  Exemption from the maximum limit on multiple accreditation; and

2.  Extension of validity period of accreditation to six (6) years.

Such incentives shall be automatically revoked in case of suspension or disqualification of the awardee.

## PART VIII
### General and Miscellaneous Provisions

SECTION 225. Authority to Administer Oaths. — The Administrator, or any person authorized under existing laws, shall have the authority to administer oaths and require the attendance of witnesses or the production of any book, paper, correspondence, memoranda and other documents relevant or material to the case or inquiry.

The Administrator may authorize other POEA personnel to administer oaths.

SECTION 226. Construction. — These Rules shall be liberally construed to carry out the objectives of the Constitution, the Labor Code of the Philippines, as amended, and the laws pertaining to overseas employment, and to assist the parties in obtaining just, expeditious and inexpensive settlement of disputes.

All doubts in the implementation or interpretation of these Rules shall be resolved in favor of labor.

SECTION 227.  Amendments. — Governing Board Resolutions amending any part of these Rules shall be deemed incorporated herein.

SECTION 228. Separability Clause. — The provisions of these Rules and Regulations are declared to be separable and if any provision or the application thereof is held invalid or unconstitutional, the validity of the other provisions shall not be affected.

SECTION 229.  Repealing Clause. — All policies, issuances, rules and regulations inconsistent with these Rules are hereby repealed or modified accordingly.

SECTION 230.  Effectivity. — These Rules shall take effect fifteen (15) days from publication in a newspaper of general circulation and from filing with the Office of the National Administrative Registry of the University of the Philippines Law Center.