UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR CAGARA ORTIGUERRA, ET AL.                    CIVIL ACTION

VERSUS                                                              NO. 22-309

GRAND ISLE SHIPYARD, LLC., ET AL.                     SECTION: "J"(4)

## ORDER & REASONS

Before the Court is a *Renewed Motion to Dismiss and Compel Arbitration* **(Rec. Doc. 26)** filed by Defendants, Grand Isle Shipyard, LLC and GIS, LLC ("Defendants"); an opposition (Rec. Doc. 35) filed by Plaintiffs; and a reply (Rec. Doc. 41) filed by Defendants. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are welders and fitters from the Philippines who came to the United States to work on oil rigs. Plaintiffs sued their employers, Grand Isle Shipyard, LLC and GIS, LLC, in this Court, alleging that they were not paid minimum wage nor overtime in violation of the Fair Labor Standards Act ("FLSA").

On June 8, 2022, Defendants moved to dismiss the matter, arguing that this Court is not the proper venue to hear these claims. They contended that Plaintiffs should be compelled to submit their claims to an arbitration tribunal in the

Philippines pursuant to the employment contracts they signed, Philippine labor laws that require standardized employment contracts, and The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") which governs the arbitration provisions of Plaintiffs' employment contracts.

On June 28, 2022, Plaintiffs amended their complaint to add four new plaintiffs, additional factual allegations, and two additional claims for violations of the Trafficking Victims Protection Act ("TVPA"); 18 U.S.C. § 1589; and of the Fair Housing Act ("FHA"); 42 U.S.C. § 3613. Specifically, the Plaintiffs claim that Defendants subjected them to forced labor because Defendants threatened termination and deportation if the Plaintiffs left the employer-provided housing or communicated with family members. Plaintiffs claim that Defendants segregated and isolated the Filipino workers when assigning housing and COVID-19 quarantine accommodations. Plaintiffs also allege that, during and after Hurricane Ida in 2021, Defendants refused to allow them and other Filipino workers to evacuate, so they had to remain in a bunkhouse with a damaged roof without clean water and electricity for weeks. Plaintiffs allege that Non-Filipino workers were not required to remain in the bunkhouse and evacuated. The Plaintiffs assert these claims on behalf of others similarly situated as a putative collective action under the FLSA and a putative class action pursuant to Fed. R. Civ. P. 23(b).

This Court dismissed the Defendants' first Motion to Dismiss as moot in light of the amended complaint. On August 1, 2022, Defendants subsequently filed the instant motion to dismiss the Amended Complaint for improper venue and compel

arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). On August 23, 2022, Plaintiffs filed their opposition to the motion, and on September 13, 2022, Defendants filed their reply.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). The Fifth Circuit has held that a motion to dismiss based on an arbitration or forum selection clause is proper under Fed. R. Civ. P. 12(b)(3). *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005). Under Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply the facts alleged in the complaint and its attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). The court "must accept as true all allegations in the complaint and resolve all conflicts in favor of plaintiff." *Sinners and Saints, L.L.C. v. Noire Blanc Films, L.L.C.*, 937 F. Supp. 2d 835, 845 (E.D. La. 2013) (*quoting Brasperto Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. App'x 612, 615 (5th Cir. 2007)).

## PARTIES' ARGUMENTS

In the Motion to Dismiss and Compel Arbitration, Defendants argue that Plaintiffs' employment contract incorporated standard terms, including an agreement to arbitrate in the Philippines all claims arising from their employment. (Rec. Doc. 26-1, at 9-13). Defendants next contend that, along with Plaintiffs' FLSA

claims, Plaintiffs' newly added TVPA and FHA claims should also be subject to the arbitration agreement because the claims arise out of the Plaintiffs' employment. (Rec. Doc. 26-1, at 13-16). Finally, Defendants oppose Plaintiffs' request for a declaratory judgment on arbitrability on the grounds that the Philippines is an available and adequate forum. (Rec. Doc. 26-1, at 16-19).

In their opposition to the motion, Plaintiffs main argument is that there is no valid and enforceable agreement to arbitrate at all, and even if there were a valid agreement, not all three of their claims are subject to mandatory arbitration. (Rec. Doc. 35, at 1). Plaintiffs seek a declaratory judgment that the arbitration clause in their employment contracts should not be enforced because (1) they were not seafarers, and the arbitration clause only applies to seafarers; (2) they were employed during periods outside the term of the employment contracts; (3) Plaintiffs did not understand the complicated English contained in the provisions they signed; and (4) due process and public interest factors weigh against arbitration (Rec. Doc. 35, at 22, 34-36). Plaintiffs argue in the alternative that, even if the parties agreed to arbitrate disputes arising from their employment, their FHA and TVPA claims do not arise out of their employment and thus fall outside the scope of any arbitration agreement between the parties. (Rec. Doc. 35, at 2). Finally, Plaintiffs argue that the Philippines is an inadequate and unavailable forum because they cannot afford to travel to or hire a lawyer in the Philippines and because corruption and bias is pervasive in Philippine legal proceedings. (Rec. Doc. 35, at 36-39).

## DISCUSSION

The Court agrees at the outset that the arbitration clause incorporated into the employment contract requires arbitration of Plaintiffs' FLSA wage and overtime claims. However, the Court is not convinced that Plaintiffs should be compelled to arbitrate their TVPA and FHA claims.

For commercial arbitration agreements made in signatory nations, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") governs the recognition and enforcement of the arbitration agreements. 9 U.S.C. §§ 201 et seq. The Convention "contemplates a very limited inquiry" for courts deciding whether to compel arbitration. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil (Pemex)*, 767 F.2d 1140, 1144 (5th Cir.1985). Specifically, the Convention requires courts to stay an action and compel arbitration if four requirements are met: (1) there is an agreement in writing to arbitrate the dispute (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate arises out of a commercial legal relationship; (4) a party to the agreement not an American citizen. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1144–45 (5th Cir. 1985) (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185–86 (1st Cir.1982). If all four requirements are met, the court must order arbitration unless the agreement is "null and void, inoperative or incapable of being performed." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing *Sedco*, 767 F.2d at 1146).

The parties here do not disagree that the arbitration clause at issue provides for arbitration in a territory of a Convention signatory, i.e. the Philippines; the agreement arises out of a commercial legal relationship, i.e. Plaintiffs' employment; and each Plaintiff alleged to be a party to the agreement is not an American citizen. The parties disagree only on the first Convention requirement to compel arbitration: whether there is a valid written arbitration agreement that would require the Court to compel arbitration of the parties' disputes.

Thus, the main questions before the court are (1) whether the parties formed a valid agreement to arbitrate, and (2) if an enforceable arbitration agreement was formed, whether this court should compel arbitration of all three of the Plaintiffs' claims.

## I.      The Arbitration Agreement

The Plaintiffs offer three arguments that the parties did not form a valid arbitration agreement: (1) the arbitration clause at issue only applied to seafarers, and they were not seafarers; (2) the alleged arbitration agreement did not cover the entire length of time Plaintiffs were employed; and (3) Defendants defrauded them in the inducement to sign the documents because Plaintiffs understand only very limited English. (Rec. Doc. 35, at 15, 27, 33).

Enforcement of an arbitration agreement first requires determining whether a contract was formed and second requires determining whether the claims fall within the scope of the arbitration clause. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d

6

199, 201 (5th Cir. 2016). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). Although the federal policy favoring arbitration applies to the determination of which claims fall within the scope of an arbitration agreement, this policy does not apply to the initial determination of whether an agreement was formed; instead, this Court determines whether there is a valid agreement to arbitrate and who is bound by it based on "ordinary contract principles." *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-38 (5th Cir. 2003). (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073–74 (5th Cir. 2002)). In forming a contract, "one who reads a written document, or signs it (even without reading it) is bound by its terms.*" St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971).

The contracts at issue in this case are form contracts required by Philippine labor laws, which obligate foreign employers to hire Filipino seamen through Philippine Overseas Employment Administration (POEA) accredited manning agencies and use POEA-approved employment contracts for Filipino workers. (Rec. Doc. 26-1, at 5). In this case, each Plaintiff signed a POEA Contract of Employment every few months for a term of three or four months, on a line reading "Seafarer." (Rec. Doc. 26-9; Rec. Doc. 41-8). Each Plaintiff's name is printed on the first page of the contract in the blank labelled "Name of Seafarer." *Id.* Each Plaintiff also signed every page of a document entitled Standard Terms and Conditions Governing the

Overseas Employment of Filipino Seafarers On-Board Ocean Going Ships ("Standard Terms"). (Rec. Doc. 26-9).

Clause 2 of the Plaintiffs' employment contracts states that the "terms and conditions in accordance with Governing Board Resolution No. 9, and Memorandum Circular No. 10. . .shall be strictly and faithfully observed." (Rec. Doc. 26-9, at 1, 15, 22, 43, 50, 57, 64).[1] The Memorandum Circular No. 10 Standard Terms and Conditions are the same Standard Terms on which each Plaintiff signed every page. (Rec. Doc. 26-9). Section 29 of the Standard Terms states that:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

---

[1] However, Plaintiffs Donato Manalili Agustin, Arvin Banzon San Pedro, and Wilfredo Batong Saturos signed employment agreements that differ from the "identical POEA standardized and approved" (Rec. Doc. 26-1, at 8) contract signed by the other plaintiffs in this case. Specifically, clause 2 of Donato Manalili Agustin's contract states that "the *herein* terms and conditions in accordance with Governing Board Resolution No. 9, and Memorandum Circular No. 10. . . shall be strictly and faithfully enforced." (Rec Doc 26-9, at 8, 29, 36). In *Baricuatro v. Industrial Personnel and Management Services, Inc.*, the Court found that the use of "herein" in this clause in a POEA contract referred to the terms and conditions enumerated in the preceding paragraph, rather than the terms of the Board Resolution and Memorandum Circular, so that the arbitration clause was not incorporated by reference into the Plaintiffs' contracts. 927 F. Supp. 2d 348, 361 (E.D. La. 2013). Unlike the plaintiff employees in *Baricuatro*, all Plaintiffs in this case signed each page of the Standard Terms of the Memorandum Circular No. 10, including the page that enumerated the arbitration clause, in addition to the employment contract.

> The Philippine Overseas Employment Administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners, and Filipino seafarers.

(Rec. Doc. 26-9, at 4, 11, 18, 25, 32, 39, 46, 53, 60, 67). All ten named Plaintiffs signed each page of the Standard Terms as well as the final page, on a line labelled "Seafarer." (Rec. Doc. 26-9).

In *Lim v. Offshore Specialty Fabricators, Inc.*, the Fifth Circuit compelled arbitration when a Filipino worker signed a POEA contract subject to the same Standard Terms at issue in the present case. *Lim*, 404 F.3d at 900. The worker sued his employer under the Fair Labor Standards Act, alleging overtime violations under the FLSA. *Id.* The employer moved to dismiss and compel arbitration, claiming that the Convention and the Standard Terms governing the plaintiff's employment required arbitration in the Philippines. *Id.* The Fifth Circuit enforced the arbitration provisions, reasoning that the overall balance of public policy concerns favored enforcing the agreement because of the strong federal policy in favor of international arbitration and the application of the Convention to seamen's wage and overtime claims. *Id.* at 906.

More recently, the District Court for the Western District of Louisiana enforced the same arbitration clause in the Standard Terms in this case, despite the plaintiff's contention that he was not a seafarer. *Calicdan v. MD Nigeria LLC*, No. 6:21-CV-03283, 2022 WL 2165638, at *4-5 (W.D. La. May 17, 2022), report and recommendation adopted sub nom. *Calicdan v. M D Nigeria LLC*, No. 6:21-CV-03283,

2022 WL 2162645 (W.D. La. June 15, 2022). Specifically, the plaintiff argued he was not a seafarer because the vessel upon which he worked was not actually at sea or a "ship." *Id.* at *4. However, the strong federal policy in favor of arbitration of foreign labor disputes and the fact that the plaintiff "signed on to work as a seafarer and was therefore bound by the rules governing seafarers" dictated that the Standard Terms requiring arbitration of disputes applied to the plaintiff. *Id.* at *6.

Similarly, in *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, a group of Filipino workers who signed POEA seafarer's employment contracts argued that arbitration was not required because the employer failed to prove the existence of a written arbitration agreement. No. CIV.A. 11-2777, 2013 WL 3097270, at *1 (E.D. La. June 18, 2013). Although the Court noted the contract terms were unclear, the fact that each plaintiff dated and signed a copy of the Standard Terms was sufficient to establish a written arbitration agreement between the parties. *Id.*

For the same reasons, the Court is not persuaded by Plaintiffs' threshold argument that they are not seafarers. Plaintiffs contend that, because they worked on non-mobile platforms and spars permanently moored to or built on the seabed, they are not in fact seafarers. However, like the plaintiffs in *Baricuatro* and *Calicdan*, each Plaintiff signed on lines designating them as a seafarers on the Standard Terms and Conditions Governing the Overseas Employment of Filipino Seafarers On-Board Ocean Going Ships. These documents, along with the fact that Plaintiffs seek to recover unpaid wages as a result of their employment contracts, are sufficient to

establish that Plaintiffs signed on to work as seafarers and are therefore similarly bound by the rules governing seafarers.

Plaintiffs' second reason for the invalidity of the arbitration agreement is that the arbitration clauses did not bind the parties at all times when the Defendants' alleged violations occurred. Specifically, Plaintiffs allege that their FLSA collective action claims extend back to February 9, 2019 when Defendants failed to pay them required wages (Rec. Doc. 19, at 17), and that, in moving to compel arbitration, the Defendants did not show the existence of a written arbitration agreement for the entirety of that time period during which Plaintiffs worked for GIS. (Rec. Doc. 35, at 35). In their exhibits to the reply memorandum, Defendants provided multiple three- or four-month-term contracts signed by each Plaintiff, extending back to 2019 and earlier. (Rec. Doc. 41-8). Because of the existence of these written agreements and the "limited inquiry" this Court may take at this stage of the litigation, the Court finds that the parties should resolve in arbitration the factual dispute of whether Defendants violated the FLSA during each specific time period Plaintiffs were employed under the contract terms.

Plaintiffs' third reason that they cannot be bound to arbitrate is that, as native Tagalog speakers, they did not sufficiently understand the complicated English in the contract terms that they signed, and Defendants rushed them to sign the contracts. (Rec. Doc. 35, at 40). Defendants dispute that Plaintiffs did not understand sufficient English to comprehend the contract, providing attestations of understanding of the contracts signed by each Plaintiff as well as English Language Test results for each

Plaintiff indicating at least 70% proficiency in the English Language. (Rec. Docs. 41-6, 41-7). Considering the evidence in the record as well as the established contracts rule that a signatory to a contract is bound by its terms, the Court is not persuaded by Plaintiffs' assertions that the arbitration clause does not apply to them.

Finally, because the written agreement to arbitrate employment disputes is valid and enforceable, it is not necessary to declare whether the Philippines is an adequate or available forum for arbitration. Because Plaintiffs signed employment contracts mandating arbitration of employment disputes, the Court concludes that the Plaintiff cannot overcome compelled arbitration only of their FLSA wage and overtime claims, for reasons explained more fully below.

## II.   The Plaintiffs' TVPA and FHA claims

For the reasons stated above, the Court agrees that Plaintiffs are required to arbitrate their FLSA claims under the arbitration clause in the terms of their employment contracts. However, Plaintiffs also claim violations of the Trafficking Victims Protection Act (TVPA) and Fair Housing Act (FHA), and it is less clear whether those claims fall in the scope of the arbitration provision at issue here.

Having found that the arbitration clause is valid, the second analytical step in a motion to compel arbitration "involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). When construing the scope of an arbitration agreement, courts bear in mind the strong federal policy favoring arbitration. *See*

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). Therefore, a party opposing enforcement of an international arbitration clause must bear the heavy burden of proof of its invalidity. *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 906 (5th Cir. 2005) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)). The Fifth Circuit has held that a "valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (internal quotations omitted)). Thus, the remaining issue is whether Plaintiffs proved that the arbitration clause does not cover their housing discrimination and human trafficking claims.

Plaintiffs allege that the Defendant employers violated the TVPA when they forced the Plaintiffs to live in a bunkhouse where they were not allowed to leave after their employment ended and forced COVID-positive Plaintiffs to live in "overcrowded, dangerous and isolated" quarantine accommodations. (Rec. Doc. 19, at 25; Rec. Doc. 35, at 27-34). Plaintiffs further allege that Defendants threatened Plaintiffs with "deportation, blacklisting, civil action and criminal prosecution" to prevent Plaintiffs from leaving their positions. (Rec. Doc. 19, at 26). Plaintiffs claim Defendants violated the FHA by discriminating against the Filipino plaintiffs, but not other similarly situated workers of different races and national origins, when Defendants provided bunkhouse and COVID-19 quarantine vessels. (Rec. Doc 19, at 27). Plaintiffs argue

13

that, even if this Court finds the Standard Terms to be a binding arbitration agreement, their FHA and TVPA claims are not subject to arbitration because those claims do not arise from their employment. (Rec. Doc. 35, at 27).

Defendants move the court to compel arbitration of all of Plaintiffs' claims, including their TVPA and FHA claims. They argue that that Plaintiffs' TVPA claims in this matter are so "rooted in the employer-employee relationship" that the trafficking claims should be subject to mandatory arbitration. (Rec. Doc. 26-1, at 15-16 (citing *Calicdan v. MD Nigeria LLC*, No. 6:21-CV-03283, 2022 WL 2165638 (W.D. La. May 17, 2022), report and recommendation *adopted sub nom. Calicdan v. M D Nigeria LLC*, No. 6:21-CV-03283, 2022 WL 2162645 (W.D. La. June 15, 2022)). Movants also contend that, because federal courts generally uphold arbitration agreements for FHA claims, Plaintiffs' FHA claims in the instant matter should also be subject to arbitration. (Rec. Doc. 26-1, at 16).

However, the arbitration clause at issue only reaches disputes "arising from" the Plaintiffs' employment, rather than all claims related to or connected with the employment. (Rec. Doc. 26-9). The Fifth Circuit distinguishes between "broad" arbitration clauses, which cover all claims "relating to" or "connected with" the employment contract, from "narrow" arbitration clauses that only require arbitration of disputes "arising" out of the contract or its subject matter. *See, e.g., Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *see also Texaco, Inc. v. American Trading Transportation Co., Inc.*, 644 F.2d 1152, 1154 (5th Cir.1981) (holding that a claim for damage to a dock was not within the scope of the

14

arbitration clause when the clause provided for the arbitration of disputes "arising out of this Charter"); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 408–09 (5th Cir. 1990) (holding clause directing the arbitration of disputes "arising out of the interpretation of ... this agreement" only covered disputes about contract interpretation); *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 278 (5th Cir. 2002) (compelling arbitration of personal injury claims when injuries were sustained in the course and scope of a Filipino seafarer's employment because the injuries arose from their employment).

The Fifth Circuit has provided guidance for interpreting whether a claim is covered by an arbitration clause. For "narrow" clauses, arbitration should not be compelled unless the court determines that the dispute falls within the clause. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985); *see also Beckham v. William Bayley Co.*, 655 F.Supp. 288, 291 (N.D.Tex.1987) (holding that a claim regarding performance under the contract did not fall within the scope of the narrow arbitration clause which only required the arbitration of disputes if the parties disagreed "as to the intent of this contract"). To determine whether a claim falls within the scope of an arbitration clause, the court should consider specific words or phrases, as well as the tone of the clause as a whole. *Sedco*, 767 F.2d at 1145; *see also Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009) (interpreting arbitration clause narrowly using language preceding and following the arbitration clause). "When deciding whether a claim falls within the scope of an arbitration agreement, courts focus on

15

factual allegations in the complaint rather than the legal causes of action asserted." *Jones*, 583 F.3d at 240 (citing *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,* 372 F.3d 339, 344 (5th Cir.2004) (internal quotation marks omitted)). For statutory claims, if the claim could be maintained independently of the contract containing a narrow arbitration clause, the claim does not fall within the scope of the clause. *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 193 (5th Cir. 2009) (citing *Coffman v. Provost * Umphrey L. Firm, L.L.P.*, 161 F. Supp. 2d 720, 732 (E.D. Tex. 2001), aff'd sub nom. *Coffman v. Provost Umphrey LLP*, 33 F. App'x 705 (5th Cir. 2002)) (declining to compel arbitration of the plaintiff's USERRA claims because the arbitration clause in a contract section on severability only applied to the enforceability of a portion of an employment contract).

Here, the arbitration clause in Section 28 of the Standard Terms appended to Plaintiffs' employment contracts requires the arbitration of "claims and disputes arising from this employment." (Rec. Doc. 26-9). The terms could have provided for arbitration of any and all disputes between the parties connected to or having a significant relationship to the employment. Instead, the parties limited arbitration to only those disputes arising out of Plaintiffs' employment. Thus, the Section 28 language is a "narrow" arbitration clause, so this Court should not compel arbitration unless the dispute falls within the clause, which in this case means that the dispute arises from the Plaintiffs' employment.

Because the Court has found the arbitration clause to be a narrow one, we now turn to the question of whether Plaintiffs' remaining claims fall within the scope of

16

the clause, by considering the arbitration clause's specific words, phrases and tone as a whole, as well as the facts underlying the human trafficking and housing discrimination claims as they relate to Plaintiffs' employment. Relying on *Jones v. Haliburton*, 583 F.3d 228 (5th Cir. 2009); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011); and *Maglana v. Celebrity Cruises, Inc.*, No. 21-14206, 2022 WL 3134373 (11th Cir. Aug. 5, 2022); Plaintiffs argue that their housing discrimination and human trafficking claims do not arise from their employment. Both *Jones* and *Doe* involved claims for civil damages as the result of the rape of an off-duty employee by off-duty co-workers following an after-hours social gathering in employer-provided housing. The *Jones* court found that the broad arbitration clause in the plaintiffs' contract, which required arbitration of claims "related to [her] employment" or "arising in the workplace," did not cover the plaintiff's claims because "sexual assault is independent of an employment relationship." *Jones*, 583 F.3d at 236. The *Doe* court expanded on the Fifth Circuit's reasoning, explaining that, because the plaintiffs' false imprisonment and related claims were not a foreseeable result of the performance of the parties' contractual duties or the plaintiffs' services as an employee, then the claims did not fall within the scope of the broad language requiring arbitration of any and all disputes arising out of or connected with her employment. *Doe*, 657 F.3d at 1219.

The *Maglana* court applied the same reasoning to claims of cruise ship workers alleging they were falsely imprisoned aboard the ship for 58 days during the early months of the COVID-19 pandemic, even after their employment was terminated and

17

other crewmembers were permitted to disembark. *Maglana*, 2022 WL 3134373, at \*1. The Eleventh Circuit reversed the district court's order compelling arbitration under the exact Standard Terms at issue in the present case, finding that the cruise line's alleged treatment of the plaintiffs— "keeping them onboard for weeks under miserable conditions and draconian rules— was unconnected to the plaintiffs' duties as beverage handlers. . . There were no passengers to serve, and the cruise line was not operating any cruises." *Id.* at \*5. The court distinguished between arbitrable claims for back wages under an employment agreement with tort damage claims for mental anguish, which the court held were not arbitrable. *Id.*

Defendants argue that the *Maglana* court's reasoning should not apply to the forced labor and housing discrimination claims in this case because the alleged violations in this case took place during Plaintiffs' employment, whereas the alleged torts in *Maglana* took place after the plaintiffs' employment was terminated. Defendants do not cite any authority for their argument that, because some of Plaintiffs' complaints about housing took place while they were employed, then the claims "plainly arise out of" their employment with Defendants. (Rec. Doc. 41, at 15). However, the Eleventh Circuit in *Maglana* specifically notes that the tort claims were independently distinct from the arbitrable wage claims even without considering the timing of the violations, and the fact that the torts took place after their duties ceased "makes [Plaintiffs'] argument against contractually obligated arbitration even stronger." *Maglana*, 2022 WL 3134373, at \*5 n.5.

18

In *Jones*, the arbitration clause at issue was a "broad" clause, requiring arbitration of any and all claims related to the plaintiff's employment. *Id.* at 235. In determining that the plaintiff was not acting in any way related to her employment by being the alleged victim of sexual assault, the Fifth Circuit noted the location (in employer-provided housing), timing (after work hours), and distance from the job site ("some distance from where she worked") of the alleged sexual assault. *Id.* at 240. Because the plaintiffs' allegations did not "touch matters related to her employment, let alone have a significant relationship to her employment contract," the court held that the claims tested the outer limits of the "related to" language in the broad arbitration clause, ultimately affirming the denial of the motion to compel arbitration. *Id.* at 241.

Defendants attempt to distinguish *Jones*'s sexual assault claims from Plaintiffs' FHA claims by alleging that housing discrimination is a "quintessentially employment-related allegation [and] a far cry from alleged gang rape." (Rec. Doc. 41, at 14). Defendants also argue that the fact that Plaintiffs submitted similar complaints to the Equal Employment Opportunity Commission means that their housing discrimination and human trafficking claims must be arbitrated. (Rec. Doc. 41, at 14-15). In this case, Plaintiffs worked offshore as welders and fitters, hours from the bunkhouse where Plaintiffs were allegedly confined during COVID and Hurricane Ida and prohibited from leaving after their employment contract ended. Even bearing in mind the strong federal policy favoring arbitration, the fact that Plaintiffs may also reasonably submit administrative complaints regarding the same

violations does not bear on whether their FHA and TVPA claims fall within the scope of the arbitration clause. Further, although wage and overtime claims are related to employment and are thus arbitrable, Plaintiffs' allegations that Defendants segregated them based on their national origin do not "touch matters related to" or have a "significant relationship" to their employment.

To support their view that Plaintiffs' TVPA claims are subject to mandatory arbitration, Defendants cite to the court cases that compelled arbitration of seafarers' TVPA claims against their employers under the same POEA contract. *See Calicdan*, No. 6:21-CV-03283, 2022 WL 2165638; *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 927 F. Supp. 2d 348, 371 (E.D. La. 2013). However, the facts surrounding the forced labor allegations in *Calicdan* and *Baricuatro* are distinguishable from this case. In *Calicdan*, the TVPA claims occurred when the employer allegedly recruited and obtained Plaintiff's labor through physical restraint, threats, abuse of legal process, and financial harm. First Amended Complaint at ¶ 133-146, *Calicdan*, No. 6:21-CV-03283, 2022 WL 2162645. However, the *Calicdan* court does not evaluate whether the forced labor claims actually arose under the plaintiff's employment, as required by the POEA arbitration clause. *See generally Calicdan*, No. 6:21-CV-03283, 2022 WL 2165638.

Further, in *Baricuatro*, the court noted that one "could argue that the false imprisonment claim is based on conduct outside the employment relationship, as it relates to physical restraint in a bunkhouse after work hours. However, this claim is not asserted against the two defendants at issue here." *Baricuatro*, 927 F. Supp. 2d.

at n.52. By contrast in the present case, Plaintiffs actually assert a claim like the one the *Baricuatro* court recommended—forced labor and housing discrimination claims based on conduct outside the employment relationship. Specifically, they allege that, after their contract terms ended, Defendants forced them to stay at a bunkhouse except to continue to go to work and threatened them with deportation, civil action, and criminal prosecution if they attempted to leave. (Rec. Doc. 19, at 25-26). Thus, in this case, Plaintiffs allege that the parties' employment relationship was allegedly over, and yet Defendants continued to force them them to stay in unlivable conditions and continue to work. Again bearing in mind federal policy favoring arbitration, the cases Defendants cited where the employer violations arose during the contracted employment term, are not sufficiently analogous to convince this court to compel the arbitration of Plaintiff's forced labor and housing discrimination claims under the narrow clause in this case.

Finally, Plaintiffs' TVPA and FHA claims could be maintained independently of their employment, so these claims do not fall within the scope of the narrow arbitration clause here. See *Coffman*, 161 F. Supp. 2d at 732 (holding plaintiff's Title VII discrimination claim was not subject to narrow arbitration clause even when the contract itself prohibited conduct similar to that of Title VII because Title VII remains fully independent of a contract); *Ford v. NYLCare Health Plans of Gulf Coast*, 141 F.3d 243, 250–51 (5th Cir. 1998) (courts should look to whether the claim could stand independently from the contract)). Here, as in *Coffman*, portions of employment contracts may be relevant in litigating the statutory claim, but plaintiffs may

21

maintain their TVPA and FHA claims independently of their employment by defendants.

## CONCLUSION

Based on the authorities cited and the reasoning outlined above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS HEREBY ORDERED** that Plaintiffs' claims for violations of the Fair Labor Standards Act are stayed and referred to arbitration.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for violations of the Trafficking Victims Protection Act and Fair Housing Act are not compelled to arbitration and can proceed in this Court.

New Orleans, Louisiana, this 23rd day of September, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE