UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VICTOR ORTIGUERRA, ET AL. | CIVIL ACTION |
| VERSUS | NO. 22-309 |
| GRAND ISLE SHIPYARD, LLC, ET AL. | DISTRICT JUDGE BARBIER<br>MAGISTRATE JUDGE DOSSIER |

**ORDER AND REASONS**

Defendants, Grand Isle Shipyard, LLC and GIS, LLC, filed a Motion to Compel Production of T or U Visa Applications and Related Documentation.[1] The Plaintiffs, Victor Ortiguerra, et al., filed an opposition,[2] and Defendants replied.[3] Based on the parties' submissions, the record, and the law, and for the reasons below, the motion is granted in part and denied in part.

**I.   Introduction**

The Plaintiffs allege that their employment by the Defendants involved violations of federal law, including the Trafficking Victims Protection Act ("TVPA"). As summarized by the U.S. District Court, the Honorable Carl J. Barbier presiding:

> Plaintiffs are welders and fitters from the Philippines who came to the United States to work on oil rigs. Plaintiffs sued their employers, Grand Isle Shipyard, LLC and GIS, LLC, in this Court, alleging that they were not paid minimum wage nor overtime in violation of the Fair Labor Standards Act ("FLSA").
> ***
> On June 28, 2022, Plaintiffs amended their complaint to add four new plaintiffs, additional factual allegations, and two additional claims for

---

[1] Doc. 87.
[2] Doc. 88.
[3] Doc. 89.

1

> violations of the Trafficking Victims Protection Act ("TVPA"); 18 U.S.C. § 1589; and of the Fair Housing Act ("FHA"); 42 U.S.C. § 3613. Specifically, the Plaintiffs claim that Defendants subjected them to forced labor because Defendants threatened termination and deportation if the Plaintiffs left the employer-provided housing or communicated with family members. Plaintiffs claim that Defendants segregated and isolated the Filipino workers when assigning housing and COVID-19 quarantine accommodations. Plaintiffs also allege that, during and after Hurricane Ida in 2021, Defendants refused to allow them and other Filipino workers to evacuate, so they had to remain in a bunkhouse with a damaged roof without clean water and electricity for weeks. Plaintiffs allege that Non-Filipino workers were not required to remain in the bunkhouse and evacuated. The Plaintiffs assert these claims on behalf of others similarly situated as a putative collective action under the FLSA and a putative class action pursuant to Fed. R. Civ. P. 23(b).

*Ortiguerra v. Grand Isle Shipyard, LLC*, 630 F. Supp. 3d 793, 796 (E.D. La. 2022). The parties dispute whether the Plaintiffs must produce documents related to applications for visas available to victims of human trafficking ("T visas").

## II.   LAW AND ANALYSIS

### A.  T and U Visas.

The Defendants initially sought discovery of documents related to T or U visa applications. The Plaintiffs have stated that they do not have any U visa applications, so that portion of the request is moot. The distinction between the two types of visas, however, is relevant to the parties' interpretation of Fifth Circuit precedent.

T and U visas are available to victims of trafficking and certain crimes. There is some potential overlap in their availability.

> T and U visas were created with the passage of the Victims of Trafficking and Violence Prevention Act ("VTVPA"). *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, §§ 107, 1513, 114

2

Stat. 1464, 1477–79, 1534–37. The T visa is available to unauthorized immigrants who have been victims of human trafficking, whereas a U visa is available to victims of "qualifying criminal activity." *See* 8 C.F.R. §§ 214.11 (T visa); 214.14 (U visa). The Code of Federal Regulations contains a laundry list of "qualifying criminal activity," which includes such crimes as trafficking, involuntary servitude, and slave trade. *Id.* § 214.14(a)(9).

*Samuel v. Signal Int'l LLC*, No. 1:13-CV-323, 2014 WL 12597395, at *4 (E.D. Tex. Oct. 15, 2014). Although both types of visas require cooperation with law enforcement, a certificate from law enforcement is mandatory only for U visa applications. *See id.*; *see also* U visa, Form I-918, Supplement B, U Nonimmigrant Status Certification. Law enforcement declarations for T visa applicants are optional. *See also* T visa, Form I-914, Supplement B, Declaration of Law Enforcement Officer for Victim in Trafficking of Persons.

### B. Document Request

The Defendants have requested copies of all T visa applications, including any supporting affidavits or declarations and any documents reflecting the disposition of the applications.[4] The Defendants maintain that: (1) these documents are relevant to the Plaintiffs' motive for filing their lawsuit and to the defense that the lawsuit rests on fabricated allegations, and (2) an appropriate protective order can mitigate any potential *in terrorem* effects.[5] The Plaintiffs disagree both as to the discoverability of these documents and the mitigating effects of a protective order.

---

[4] Doc. 87. This request was discussed at a prior status conference with the Court. The Court granted the parties permission to brief the dispute without need for any further meet and confers.

[5] Doc. 87-1 at 3. Plaintiffs affirmatively state that they will not use any T visa applications or their disposition to support their affirmative case in this matter,

3

**C. Scope of Discovery.**

Unless otherwise limited by court order, Rule 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under Rule 26(c)(1), a Court may restrict discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Generally, the burden of demonstrating good cause rests on the party refusing to produce the information. *See Cazoria v. Koch Foods of Mississippi, LLC,* 838 F.3d 540, 549 & n.22 (5th Cir. 2016) (citing cases). There are certain categories of information, however, that are presumptively sensitive such that the party seeking the information must show a particularized need for it. *See id.*

In *Cazoria v. Koch Foods of Misssissippi,* the Fifth Circuit addressed the discoverability of U visas in a case involving plaintiffs who brought harassment and abuse allegations against their employer. 838 F.3d 540. The district court allowed limited discovery relative to "'information regarding efforts to obtain U Visas, or other immigrant benefits, that arose out of the allegations in this civil action against Koch

---

reserving the right to use them as rebuttal evidence if Defendants are permitted to use the materials. The undersigned expresses no opinion on whether the information disclosed under this order is admissible for any purpose and in any form.

4

Foods,' and specifically excused the claimants from revealing prior crimes." *Id.* at 555 n.49. The Fifth Circuit vacated and remanded the discovery orders to allow for furthering narrowing.

The Fifth Circuit concluded that "given the considerable deference we owe the district court in its discovery rulings," the district court did not abuse its discretion in concluding that U visa discovery may include relevant information. *Id. at 559* The Fifth Circuit then set forth several significant considerations that courts must consider under Rule 26.

First, the disposition of a visa application may show that the plaintiffs or their family members are ineligible for lawful employment. *See id.* at 560. This may deter immigrants from pursuing litigation because it could cause them or their family members to lose their jobs. Although "speculative," this risk is "serious." *Id.*

Second, visa applicants may fear that their former employer will report or threaten to report them to immigration authorities. *See id.* at 560-561. And while visa applicants must disclose certain information to USCIS, "[a]n abuse victim might well be willing to disclose sensitive information to a few sympathetic officials, yet nonetheless fear that his or her abuser might obtain that information and spread it far and wide." *Id.* at 561.

Third, "limited written discovery" "would presumably" give an employer the basic information perhaps needed to argue its fraud or impeachment theory. *See id.* at 562. Thus, even the hypothetical existence of potential misstatements or

5

exaggerations by the Plaintiffs in their visa applications should not open the door to discovery of every application-related document.[6]

Fourth, any consideration of U visa discovery must acknowledge the potential *in terrorem* effects and the risk that it will "compromise the U visa program and law enforcement efforts more broadly." *Id*.at 562. The relevant inquiry under Rule 26 extends beyond the plaintiffs to the thousands of other potential visa applicants. The Fifth Circuit emphasized the broad toll of such discovery: "Allowing U visa discovery .from the claimants themselves in this high-profile case will undermine the spirit, if not the letter, of those Congressionally sanctioned assurances and may sow confusion over when hand how U visa information may be disclosed, deterring immigrant victims of abuse—many of whom already mistrust the government—from stepping forward and thereby frustrating Congress's intent in enacting the U visa program. *Id*.at 562-63. Thus, "allowing discovery of U visa information" may "have a chilling effect extending well beyond [one] case, imperiling important public purposes." *See id* at 563.

Fifth, protective orders may not solve the problems set forth above. *Id.* at 563. Nor can assurances that discovery is limited to a particular case. *Id*. Even if a protective order is in place, there is a risk that U visa applicants or their families may lose their jobs or have a legitimate fear of it. *See id. at 560.* Protective orders may not

---

[6] *But see infra*, p. 13 (noting that, while in theory only certain statements need to be produced, the practical effect of a partial production may be that the applicant must provide many more details to give necessary context for those statements during deposition or at trial—defeating the purpose of a limited production and undermining the policies discussed in *Cazoria*).

6

"necessarily quell claimants' fear of suffering" from acts such as retaliation, regardless of an employer's subjective intent to comply with the order. *See id.*[7] Indeed, "virtually every immigrant-abuse case" likely contains the possibility that the hope of a visa is driving the litigation, that evidence of abuse is debatable, and that a protective order could be entered. *See id.* at 563. The Fifth Circuit concluded that the case should be remanded so that the district court could "craft flexible and nuanced terms of discovery" consistent with this analysis. *Id.* at 564.

**D. Analysis**

*Cazoria* makes clear that lower courts must proceed with caution with respect to U visa discovery. This principle applies with at least equal force to T visas. To begin, the Defendants' argument for relevance is weaker given that this case involves only T visas. The Fifth Circuit's conclusion that the district court in *Cazoria* did not abuse its discretion in finding U visa discovery relevant rested primarily on a comparison to testifying informants in criminal trials and the broad deference provided to lower courts in discovery rulings. *See id.* at 559. The Fifth Circuit noted that, in the context of testifying informants, "special immigration treatment" by law enforcement is "highly relevant impeachment material." *Id.* at 559 (quotation omitted). That analogy fits more comfortably within the realm of U visas, which necessarily involve a law enforcement certification. Moreover, the Plaintiffs

---

[7] Some authority from other jurisdictions allows broad discovery with respect to humanitarian visas applications, but this authority generally assumes that protective orders can ameliorate any *in terrorem* effect and avoid interference with legislative purpose. *Cazoria* rebuts that assumption. 838 F.3d at 560-61.

"affirmatively state they have not received any law enforcement endorsement" such that the analogy is even more attenuated.[8] Finally, the Plaintiffs note that, unlike in *Cazoria,* no law enforcement agency is a party in this case. Even so, given the liberal policies favoring discovery and the ability to tailor and limit discovery to remain consistent with *Cazoria*, the Court concludes that certain information related to the T visa applications is relevant to the Defendants' defenses. The scope of discoverable information, however, is a thornier question.

The Defendants' discovery request (as revised) seeks "all applicable documents relating to applications for T visas, declarations or affidavits in support of such, and documentation of the disposition of such applications."[9] The topical scope of this request is as broad as or broader than the U visa discovery in *Cazoria*, [10] which the Fifth Circuit concluded "would impose an undue burden and must be refined." *Id.* at 564. Moreover, and although it does not affect the result here the Defendants must present a particularized need for the documents at issue give the compelling need for confidentiality underlying the administration of the T visa system. *See Cazoria,* 838

---

[8] *See* Doc. 88 at 2.

[9] Doc. 89 at 1 n.1.

[10] The district court in that case allowed limited discovery relative to "'information regarding efforts to obtain U Visas, or other immigrant benefits, that arose out of the allegations in this civil action against Koch Foods,' and specifically excused the claimants from revealing prior crimes." *Id.*at 549 n.49.  Although the district court in that case contemplated potential discovery beyond "the written discovery it specifically discussed," *id.* at 562, Fifth Circuit's primary focus was on the topical scope of discovery, whether written or otherwise.

F.3d at 549 & n.22 (noting that the argument is persuasive but declining to reach it because it was not raised in the lower court).

An analysis of the catalogue of documents comprising a T visa application confirms that very few contain relevant material discoverable under *Cazoria*. The information that may be discoverable under the Rule 26 balancing test is narrower still. Each category of document will be addressed in turn.

**Form G-28:** Notice of Entry of Appearance as Attorney/Accredited Representative.[11] This document is signed by the applicant and his attorney or representative. It does not contain relevant information such that no further analysis is needed.

**Cover Letter.**[12] This is an optional summary of the evidence or arguments supporting the application. The Plaintiffs' briefing indicates that any cover letters they submitted were signed by the attorney or representative.[13] These documents may hypothetically contain information relevant to claims and defenses in this case—e.g., a discussion of the trafficking allegations against the Defendants. But the documents are not discoverable under the Rule 26 balancing test. A plaintiff's characterization, through counsel, of his or her own evidence has minimal probative value. The strong policies that favor the confidentiality of T visa submissions, and the potential availability of these facts elsewhere, confirms that requiring the production

---

[11] Doc. 88-2.
[12] Doc. 88-3.
[13] Doc. 88-3.

of this evidence would present an undue burden and unnecessarily chill participation in the T visa program.

**Form I-914:** Application for T Nonimmigrant Status.[14] This document provides information about the applicant and his or her family, cooperation with law enforcement, and potential bases for inadmissibility (including, e.g., illicit drug use, prior crimes, or immigration violations). The document does not inquire into the substance of the underlying trafficking. It is signed by the applicant under penalty of perjury. While there may be some tenuous argument for relevance, the *Cazoria* considerations outweigh the Defendants' hypothetical need for this information under Rule 26.

**Form I-914 Supplement B:** Declaration of Law Enforcement Officer for Victim of Trafficking in Persons.[15] This document is provided by law enforcement and describes the applicant's victimization and the relationship to any criminal investigation or prosecution. The Plaintiffs have confirmed that no such document exists relative to any of their cases.

**Form I-192:** Application for Advance Permission to Enter as Nonimmigrant.[16] This document addresses potential grounds for inadmissibility to the United States, not accounting for potential T visa eligibility. It includes potential immigration violations and family and employment history. It is not signed by the applicant, although the preparer must certify that the applicant reviewed the responses. The

---

[14] Doc. 88-4.
[15] Doc. 88-5.
[16] Doc. 88-6.

analysis of this document overlaps with that of Form I-914. Rule 26 does not support disclosure of this document.

**Other Evidence.** Applicants may attach additional evidence. It is unclear whether any such evidence was provided by any of the plaintiffs here. Thus, the Plaintiffs are to identify any such documents contain applicants' statements as to the allegations in this case, provide opposing counsel with a general description of those documents, and specify any objection to production. If the evidence contains, for example, sworn statements relative to the Defendants' actions, it may be discoverable, but the Court will not reach that issue unless the parties have engaged in the meet and confer process.

**Personal Statement.**[17] This is a sworn statement signed by the applicant that addresses the circumstances of entry into the United States, details relative to the trafficking victimization, how the applicant became separated, how the presence in the United States relates to trafficking, the harm or mistreatment feared by the applicant if removed, and any compliance with law enforcement efforts. Averments about the Defendants' alleged trafficking actions are relevant to the claims and defenses in this case. And the fact that this statement comes directly from the applicant, rather than being rephrased through an argument, checked box in a form, or cover letter, increases its potential evidentiary value. Yet it appears the personal statement may be rife with intimate details of the applicant's circumstances that have no bearing on the case and for which *Cazoria* counsels against disclosure. Thus,

---

[17] Doc. 88-7.

11

while plainly the entire statement need not be produced, a question remains as to whether specific statements in the personal statement about the Defendants' actions are discoverable in this case.

The Fifth Circuit's observation that "[a]n abuse victim might well be willing to disclose sensitive information to a few sympathetic officials, yet nonetheless fear that his or her abuser might obtain that information and spread it far and wide," 838 F.3d at 559, applies with special force given the circumstances in which an applicant submits a personal statement. USCIS guidance documents encourage agency officials to be relatively tolerant of factual inconsistencies. The USCIS Policy Manual states:

> *Factual Inconsistencies*
>
> In determining the credibility of an applicant's personal statement and other evidence and evaluating the sufficiency of evidence submitted, officers must consider the impact of trauma and victimization. Officers should also be mindful of the complex ways in which trauma may present for survivors of trafficking, including cognitive, emotional, sensory, and physical impacts.
>
> Because trauma impacts every person differently, what is traumatizing to one person may not be traumatizing to another. In some cases, trauma may result in the applicant being unable to recollect or express all details of the victimization in a linear fashion. Officers must review inconsistencies in the applicant's story over the course of the applicant's immigration journey in light of this fact, particularly if the applicant has established that the applicant is a victim of a severe form of trafficking in persons.
>
> A person's recollection of traumatic experiences may shift over time. As such, inconsistencies in the applicant's account of victimization may not necessarily be indicators of fraud or lack of credibility but may instead be the result of a fragmented recollection due to trauma.[18]

---

[18] *See* USCIS Policy Manual, vol. 3, Humanitarian Protection and Parole, Part B, Victims of Trafficking, chapter 3, Documentation and Evidence for Principal

Thus, the government encourages sensitive and specific disclosure through assurances that the recipient will be mindful of the "complex ways in which trauma may present" and recollections shift. *See id.*

The Defendants, however, seek to use this same information as impeachment evidence in civil litigation. The possibility that an applicant may disclose to USCIS certain details, while taking a more cautious approach in building a case in litigation, is readily apparent. This is not an endorsement of perjury. A trafficking victim should not intentionally provide false information in any proceeding. But a trafficking victim assured of a sympathetic administrative audience may be more willing to include details that, for example, may seem inconsistent or unclear. The same victim may choose to rely on a narrower set of facts in litigation given the varying procedural posture and factfinders. But if victims must explain in litigation why a personal statement contains certain different or additional details, it may inevitably require them to recount the entire visa application process. That likely result would, in effect, allow the same broad discovery that the Fifth Circuit counseled against in *Cazoria*.

Moreover, the value of potential impeachment evidence arising in a T visa proceeding in which law enforcement is not involved is less certain than in *Cazoria*. There is an acute risk that court-compelled disclosure of these statements will compromise the T visa program and "imperil[] important public purposes" underlying Congress's unique legislative scheme is this arena. *Cazoria*, 838 F3d at 564. And the

---

Applicants, Section C(1), available at https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-3 (last accessed June 7, 2024).

Fifth Circuit has recognized that protective orders may not mitigate this risk. *Id.* Regardless of an employer's subjective intent to comply, the chilling effect may remain and extend even beyond a single case. This case, however, involves particularly heightened concerns given the allegations of retaliation by the Defendants. *See, e.g.*, *Ortiguerra v. Grand Isle Shipyard, LLC*, 674 F. Supp. 3d 349, 356 (E.D. La. 2023).

The undersigned need not reach today whether Rule 26 may bar disclosure of all T visa-related statements—including those relating to the Defendants' conduct—in this case. For purposes of compromise, the Plaintiffs have offered to disclose such statements on a limited basis. They have agreed to produce "the factual portions of any sworn statements they have made regarding the facts underlying this case," including any sworn statements in T visa applications (if any), "with non-relevant information and the purpose of the sworn statement redacted."[19] The Court concludes that this proposed compromise easily satisfies the Defendants' potential need for facts relevant to their claims or defenses while following the balancing test under Rule 26 as analyzed in *Cazoria*. To maintain the confidentiality of these statements, they are to be produced subject to a jointly agreed upon protective order[20] and on an attorney's-eyes-only basis.

---

[19] Doc. 88 at 1-2, 12.
[20] The proposed protective order attached to the Plaintiffs' brief can be adjusted to fit this ruling. The Court suggests that, insofar as documents are to be subject to attorney's-eyes-only review, the confidentiality designation on those documents should make that clear to avoid any inadvertent disclosure. Any proposed protective order should make clear that the burden of persuasion on confidentiality remains on

## IV. Conclusion

For these reasons,

**IT IS ORDERED** that the Motion to Compel Production of T or U Visa Applications and Related Documentation (Doc. 87) is **GRANTED IN PART.** After entry of a protective order, the Plaintiffs are to produce the factual portions of sworn statements (if any) by them regarding the facts underlying this case with non-relevant information and the purpose of the sworn statement redacted.

**IT IS FURTHER ORDERED** that the parties are to work together to prepare a proposed protective order. To the extent there is any disagreement as to terms, the parties should schedule a status conference with the Court.

**IT IS FURTHER ORDERED** that, with respect to any other documents comprising "Other Evidence" for purposes of a humanitarian visa application that include statements by the Plaintiffs relative to their allegations in this case, the Plaintiffs must provide the Defendants with a general description of such documents (if any) and objections to production. After the meet and confer process, if necessary, the Defendants may schedule a status conference or file a separate motion to compel relative to any such documents.

---

the party designating the document as confidential and that the Local Rules apply with full force, including as to the procedure for filing a document under seal.

**IT IS FURTHER ORDERED** that the Motion is Denied in all other respects, including with respect to the Form G-28 (Notice of Entry of Appearance), Cover Letter, Form I-914, Form I-192, and any other visa-related documents.

New Orleans, Louisiana, this 7th day of June, 2024.

                                      EVA J. DOSSIER
                                      UNITED STATES MAGISTRATE JUDGE