# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

VICTOR CAGARA ORTIGUERRA,
DONATO MANALILI AGUSTIN,
AMADO TRANATE YUZON,
CHRISTOPHER ESCALANTE RAYOS,
ARVIN BANZON SAN PEDRO,
WILFREDO BATONG SATUROS,
ROSEL NUFABLE HERNANDEZ,
SIEGFRIED TAPIA CARLOS, RENATO
ARBOLIDA DECENA, and ISAIAS
SANTIAGO DINGLASAN,

          *Plaintiffs,*

v.

GRAND ISLE SHIPYARD, LLC., and
GIS, LLC,

          *Defendants.*

CIVIL ACTION NO. 22-cv-00309

SECTION J
**JUDGE CARL J. BARBIER**

**MAG. DIV. (3) MAGISTRATE
EVA J. DOSSIER**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' REPLY TO
## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
## CERTIFICATION OF A CLASS ACTION

## TABLE OF CONTENTS

I.     RELEVANT FACTS ..............................................................................1

II.    ARGUMENT ......................................................................................2

    A.  THE CLASSES SATISFY THE NUMEROSITY REQUIREMENT AND JOINDER IS IMPRACTICABLE ...............................................................2

    B.  COMMONALITY UNDER RULE 23(A)(2) ................................................4

    C.  PLAINTIFFS' CLAIMS ARE TYPICAL UNDER RULE 23(A)(3).................5

    D.  PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES UNDER RULE 23(A)(4)......6

    E.  COMMON QUESTIONS OF FACT AND LAW PREDOMINATE UNDER RULE 23(B)(3) ..6

        a.  TVPA and FHA claims.................................................................7

        b.  Damages claims .........................................................................9

    F.  CLASS TREATMENT IS SUPERIOR TO INDIVIDUAL CASES UNDER RULE 23(B)(3) ...10

    G.  THE CLASSES ARE ADEQUATELY DEFINED ..........................................10

## TABLE OF AUTHORITIES

**CASES**

*Abrams v. Kelsey-Seybold Med. Grp., Inc.,* 178 F.R.D. 116 (S.D. Tex. 1997) .............................. 7

*Allison v. Citgo Petroleum Corp.*, 151 F. 3d 402 (5th Cir. 1998).................................................... 9

*Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012).................................................. 2

*Barasich v. Shell Pipeline Co., LP*, 2008 WL 6468611 (E.D. La. June 19, 2008) ........................ 7

*Calicdan v. MD Nigeria LLC*, 2023 WL 3946400 (5th Cir. June 12, 2023) ................................ 10

*Carroll v. SGS Auto. Servs., Inc.*, 2020 WL 9595897 (M.D. La. Sept. 29, 2020)......................... 4

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)............................................................ 10

*Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347 (S.D. Tex. 2006)........................................................ 9

*Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742 (M.D. Tenn. 2021) ........................................ 2

*David v. Signal Int'l, LLC*, 2012 WL 10759668 (E.D. La. Jan. 4, 2012) ...................................... 8

*Francis v. APEX USA, Inc.*, 2021 WL 4487985 (W.D. Oka. Sept. 30, 2021)........................... 5, 8

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) .......................................................... 5, 9

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 273 F.R.D. 424 (N.D. Ind. 2008).... 6

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997) .................... 7

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)....................................................... 9

*In re Signal Int'l LLC Human Trafficking Litig.*, 38 F. Supp. 3d 1390 (J.P.M.L. Aug. 12, 2014). 8

*Leon v. Diversified Concrete, LLC*, 2016 WL 6247674 (E.D. La. Oct. 26, 2020).................... 4, 9

*Lincoln v. Case*, 340 F.3d 283 (5th Cir. 2003) .............................................................................. 9

*M.D. v. Perry*, No. CIV.A. C-11-84, 2011 WL 7047039 (S.D. Tex. July 21, 2011)...................... 5

*McWaters v. FEMA*, 237 F.R.D. 155 (E.D. La. 2006).................................................................... 6

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018).......................................................... 5

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011).. 8

*Ortiguerra v. Grand Isle Shipyard, LLC*, 347 F.R.D. 71 (E.D. La. 2024) ................................. 4, 6

*Ortiguerra v. Grand Isle Shipyard, LLC*, 630 F.Supp.3d 793 (E.D. La. 2022) ........................... 10

*Owino v. CoreCivic, Inc.,* 2020 WL 1550218 (S.D. Cal. Apr. 1, 2020) ...................................... 8

*Owino v. CoreCivic, Inc.,* 60 F.4th 437 (9th Cir. 2022) .................................................. 5

*Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006) .......................................... 6, 7

*Tyson Foods, Inc. Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ......................................... 7

*U.S. v. SSM Properties, LLC*, 619 F. Supp. 3d 602 (S.D. Miss. 2022) ...................................... 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................... 4

## REGULATIONS

24 C.F.R. § 100.7 ................................................................................................... 10

## RULES

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 3

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 6

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 8, 12

Fed. R. Civ. P. 30(e) ............................................................................................. 4

**RELEVANT FACTS**

During at least approximately 2012 to 2022, Defendants Grand Isle Shipyard, LLC and GIS, LLC ("GIS") had a policy and regular practice of prohibiting Filipino B-1 workers ("Filipinos") from leaving GIS housing, except when under GIS's control, resulting in severe restrictions on the Filipinos' movement. This is starkly seen in lawsuits GIS filed against Plaintiffs Ortiguerra, Rayos, San Pedro, and Yuzon in the Philippines for, in part, "le[aving] the bunkhouse without permission from Complainant GIS..." (Ex. 1, at GIS0008353, GIS0008356, GIS0008359, GIS0008365). ███████████████████████████████████████████████████ ███████████████████████████████████ [Doc. 129-18].

Beyond the everyday operation of the bunkhouse, this class-wide policy manifested itself in GIS's most cruel actions targeting the Filipino workforce: requiring the Filipino workers to quarantine on small, isolated, and crowded vessels, and prohibiting the Filipino workers from evacuating before Category 4 Hurricane Ida made landfall. [Doc. 129-13 at 2-5].

Other former workers support the veracity of Plaintiffs' claims of this class-wide policy. During 2012-2021, when Chester Tarpin worked as a welder, GIS "did not allow Filipino workers to leave the bunkhouse on their own will" [Doc. 129-11, Tarpin Decl. ¶6], and from 2013 to 2015 when Boyito Quiroz worked for GIS as Logistics Personnel in a managerial position, "[w]hen I took Filipino workers away from the bunkhouse in the car to run errands or socialize, GIS staff reprimanded me and told me this was not allowed" [Doc. 126-25, Quiroz Decl. ¶15].[1]

---

[1] In contrast with the Quiroz and Tarpin declarations, the declarations GIS submits were written in the present tense and nearly all signed between October 25, 2023 and February 5, 2025. [Doc. 141 Ex. 8-34]. Therefore, even if uncoerced and true, they do not speak to GIS's past practices, which may have changed since Plaintiffs filed this lawsuit (for example, Plaintiffs consistently denied Defendants' questions about whether they were allowed to have bicycles at the bunkhouse. [*See* Ex. 2, Decena Depo. at 92:7-9; Ex. 3, Hernandez Depo. at 44:24-25; Ex. 4, Ortiguerra Depo. at

When the Filipinos acted contrary to GIS's policy, they were subjected to verbal abuse; reprimands; and constant threats of[2] and actual termination, deportation, and litigation in the Philippines. [Doc. 129-13 at 6-9]. For example, Boyito Quiroz and Mike Daliri were terminated, in part, for helping the Filipinos leave the bunkhouse and with other matters [*Id.* at 8], GIS filed complaints against Plaintiffs in the Philippines for leaving without permission (*see generally* Ex. 1), and GIS even ███████████████████████████████████████████████████████████ ████████████████ [Doc. 129-19].[3] Over time, GIS's policy and the resulting conditions led to the Filipinos' psychological deterioration. [Doc. 129-13 at 5].

## ARGUMENT

### A. The Classes Satisfy the Numerosity Requirement and Joinder is Impracticable

Plaintiffs meet the numerosity requirement of Rule 23(a)(1), which requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, each

---

113:11-13; Ex. 6, Yuzon Depo. at 58:24-59:10]). Further, GIS's references to some Plaintiffs' statements that conditions changed during their period of employment is misleading. Each Plaintiff GIS references started working at GIS well before the time during which they make forced labor-related claims. [*Compare* Doc. 141-43 at 13, fn. 72 (listed Plaintiffs started between 2006 and 2008), *with* Doc. 129-13 (class period from June 28, 2012 to the present)].

[2] "If [the Filipino] workers did not follow the rules at the bunkhouse, GIS staff would threaten that they would fire us and have us deported. This was the case even for any slight, unintended offense." [Doc. 126-26, Tarpin Decl. ¶7].

[3] Considering the degree of control Defendants hold over their employees, their "happy camper" declarations should be viewed skeptically.

> An employee has every incentive to answer "yes" when her employer's attorney asks if she likes her employer's current practice, as an affirmative answer may endear her to current management and a negative answer may endanger her job, earning her at best the reputation of having a "bad attitude" or "not being a team player" and at worst a retaliatory termination. The incentives to answer untruthfully are even more skewed where, as here, the employer's question concerns a practice currently being litigated in a putative class action as an illegal practice.

*Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 458 (C.D. Cal. 2012), vac'd on other grounds, 596 F. App'x 579 (9th Cir. 2015); *cf. Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749 (M.D. Tenn. 2021)("happy camper" declarations given little weight in FLSA conditional certification).

class likely consists of at least 100 members and, based on a partial foreign workers list, may consist of over 1000 workers. [Doc. 129-13 at 16].[4] Other considerations also demonstrate the impracticality of joinder, including fear of retaliation and the Filipinos' unfamiliarity with English and the United States legal system. [*Id.*]

Defendants' argument that Plaintiffs' experiences are so divergent that they are fatal to certifying a class fundamentally misunderstands Plaintiffs' claims. In over seven pages of facts in Plaintiffs' certification Motion and over 850 pages of deposition testimony, GIS can only find five points to claim that Plaintiffs did not experience substantially similar treatment while living in the bunkhouse and/or quarantine vessels. [Doc. 141-43 at 7]. In part, Defendants seem to claim that because "Big E", front desk worker Melissa, and Hecton Lanasse did not yell at or threaten every Plaintiff (and presumably every Filipino worker) in one-on-one encounters—reserving this for group meetings [Doc. 74 at 11]—then the classes should not be certified. [Doc. 141-43 at 7]. However, Plaintiffs do not claim that the Filipino workers had wholly identical experiences, such that each Filipino worker was directly yelled at and threatened by each GIS employee. Rather, it is the coercive class-wide policy prohibiting the Filipino workers from leaving GIS housing—as demonstrated, *inter alia*, by these threats and the retaliatory legal actions—that form a central basis for Plaintiffs' class claims. [*See* Doc. 129-13 at 2-9]. Plaintiffs' deposition testimony is consistent with this. For example, front desk worker Melissa would have no cause to yell at Plaintiff Hernandez if she did not catch him leaving without permission or otherwise breaking the "rules"; however, Plaintiff Ortiguerra ███████████████████████████████████ ███████████████. [Doc. 141-43 at 7]. Similarly, if Plaintiff Rayos never asked to leave the

---

[4] Defendants produced a worker list with names redacted. The list includes 1,274 B-1-OCS visa holders for whom Defendants sought entry to the United States for employment in a single year (2019). All but a few are Filipino. *See* Ex. 7 (excerpted).

bunkhouse, he would not be reprimanded or told that he could not. [*Id.*][5]

In addition, the power that Defendants have over current employees and former employees hoping for new contracts, including those providing declarations, is immense. Defendants have the power to terminate, deport, and file litigation against former employees in the Philippines. [*See* Doc. 129-13 at 8-9]. As a result, numerous courts have considered fear of retaliation or reprisal by potential class members' current employer to be a factor showing the impracticability of joinder.[6] *See e.g., Leon v. Diversified Concrete, LLC*, 2016 WL 6247674, at *4 (E.D. La. Oct. 26, 2020) (Barbier, J.) ("In the employment context, fear of retaliation… cuts in favor of the numerosity requirement, because such fear might deter plaintiffs from suing individually, making a representative action especially pertinent."); *Mullen,* 186 F. 3d at 625; *see also* n.3, *supra.*

## B. Commonality under Rule 23(a)(2)

Defendants misapply the law regarding commonality. For example, while the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) indicated "suffer[ing] the same injury" is a commonality requirement, it clarifies later in the same paragraph that this refers to a

---

[5] Plaintiff Hernandez clarified in his deposition errata that "physically" he could have walked to Walmart, but he did not testify that that he was allowed to walk there. [*See* Ex. 3, Hernandez Depo. at 56:25 (errata)]. Though the Plaintiffs' timely signed errata should be considered part of their transcript for class certification (and other) purposes, *see Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 & n.2 (S.D.N.Y. 2007), GIS cites uncorrected deposition testimony [*See* Doc. 141-43 at 7] in advance of Plaintiffs' briefing or the Court's ruling on Defendants' Motion to Strike Plaintiffs' Errata Sheets [Doc. 140-4]. This is bad faith cherry-picking of details they wish to use as facts rather than what the Plaintiffs have verified under oath to be true. As Plaintiffs will explain in their opposition to Defendants' Motion to Strike, Plaintiffs' errata sheets are well within the bound of Fed. R. Civ. P. 30(e), *Carroll v. SGS Auto. Servs., Inc.*, 2020 WL 9595897, at *1 (M.D. La. Sept. 29, 2020); particularly in light of GIS's long-winded and confusing questions in depositions interpreted between English and Tagalog. For the Court's convenience, Plaintiffs have attached hereto as Exs. 2-6 excerpts of Plaintiffs' deposition transcripts with the testimony errors stricken out (yet still legible) and the corrected testimony inserted.
[6] This Court already noted the "particularly heightened concerns given the allegations of retaliation by the Defendants." *Ortiguerra v. Grand Isle Shipyard, LLC*, 347 F.R.D. 71, 78 (E.D. La. 2024).

"common contention" with "common answers." *Id.* at 348; *see also In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (same). Further, while *Dukes* was a nation-wide class wrapping in "literally millions of employment decisions at once," there is one tube of "glue" that holds Plaintiffs' claims together here: GIS's enforced prohibition on leaving applicable solely to Filipinos residing at its Galliano bunkhouse and, consequently, the same workers when quarantined on vessels. *See M.D. v. Perry*, 2011 WL 7047039, at *1 (S.D. Tex. July 21, 2011); *see also* Doc. 129-13 at 17 (collecting cases).

Here, whether GIS had a policy of prohibiting Filipinos from leaving GIS's housing other than in GIS vans, and to what extent this was different from the policy for non-Filipino workers, are central to the claims here. GIS's own words, suing some Plaintiffs for "le[aving] the bunkhouse without permission", *see supra* at 1-3, evidence a class-wide policy routinely enforced in the bunkhouse (including during Hurricane Ida) and extending to the quarantine vessels. Further, GIS made this policy abundantly clear through its threats—and following through on those threats— when Filipino workers were not compliant. [*Id.* at 6-8; Doc. 74 at 10.]

This policy and its enforcement are common questions central to the validity of Plaintiffs' and the Filipinos' TVPA and FHA claims as well as their damages. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018); *Owino v. CoreCivic, Inc.*, 60 F.4th 437 (9th Cir. 2022).[7] A common answer to these questions would drive the resolution of this litigation.

**C. Plaintiffs' Claims are Typical under Rule 23(a)(3)**

For a class to be certified, the named plaintiffs' claims must be "typical of the claims… of

---

[7] Unlike *Francis v. APEX USA, Inc.*, 2021 WL 4487985, at *6 (W.D. Oka. Sept. 30, 2021), cited by GIS, where "Plaintiffs chose not to separately address the commonality requirement, [so likewise] the Court declines to do so," Plaintiffs here have shown a strictly enforced policy of prohibiting Filipino workers from leaving GIS housing other than in a GIS van.

the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality… is not demanding." *McWaters v. FEMA*, 237 F.R.D. 155, 161 (E.D. La. 2006). Here, shown *supra* at 1-3, Plaintiffs' claims and those of the other Filipinos "share the same essential characteristics – a similar course of conduct, or the same legal theory." *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 605 (E.D. La. 2006). GIS applied the same policy prohibiting all Filipinos from leaving GIS housing—a similar course of conduct—and that policy is central to the determination of their TVPA and FHA claims.

### D. Plaintiffs are Adequate Class Representatives under Rule 23(a)(4)

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties… fairly and adequately protect the interests of the class." ████████████████████████████████

████████████████████████████████████████████ [Doc. 141-43 at 17]. Plaintiffs have already addressed the fallacy of this argument in their opposition to Defendants' motion to compel immigration status-related discovery. [Doc. 88 at 12-13].[8] █

████████████████████████████████████████████████████

████████████████████████ and it is particularly chilling in the current political climate. Further, as noted above, the fact that Plaintiffs are no longer employed at GIS makes them even stronger class representatives. GIS's retaliation notwithstanding, they are outside GIS's coercive sphere. *See In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 273 F.R.D. 424, 438 (N.D. Ind. 2008) (a benefit of former employees serving as class representatives is that they are "free from any possible coercive influence of (the company's) management.").

### E. Common Questions of Fact and Law Predominate under Rule 23(b)(3)

For a class to be certified under 23(b)(3), it is necessary that "the questions of law or fact

---

[8] In a detailed opinion, the Court denied Defendants' motion to compel, apart from accepting Plaintiffs' compromise position allowing "attorneys' eyes only" disclosure of prior sworn statements and a list of supporting evidence. *See Ortiguerra*, 347 F.R.D. at 71.

common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[I]n determining [predominance]… a factor the court must consider is whether the issues are subject to generalized proof." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 366 (E.D. La. 1997). This test does not require every issue of fact or law to be common to the class but only that one or more common questions predominate over individual questions. *Tyson Foods, Inc. Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, the common question of whether GIS had a policy of prohibiting Plaintiffs from leaving GIS housing, and to what extent this was different from the leave policy for non-Filipino workers not only predominates, but this common question would also "establish liability for every class member through proof common to the class." *Barasich v. Shell Pipeline Co., LP*, 2008 WL 6468611, at *5 (E.D. La. June 19, 2008)[9]; *see also Turner*, 234 F.R.D. at 609 (finding predominance where the claims "focus entirely on the Defendants' conduct, and require no individualized inquiry other than the amount of damages").

### a. TVPA and FHA claims

Neither TVPA nor FHA claims require individualized inquiries; rather, proof common to the class on GIS's policy of prohibiting Filipino workers from leaving the bunkhouse and other GIS accommodations will establish liability for every class member for both types of claims.

---

[9] Defendants rely heavily on *Barasich*, which appears to be a sloppily concocted lawsuit. The Court provided the plaintiffs "ample opportunity" to support their class claims, but plaintiffs "failed to do so every step of the way." *Id.* at *6. It is also inapposite. The *Barasich* plaintiffs attempted to attribute attenuated Katrina-related injuries to multiple steps-removed defendants. The Court correctly found establishing a particular defendant's harm to each class member would require individualized inquiries. Conversely, Plaintiffs here seek to certify a class based on GIS's policy directed to the class which, if proven, caused direct harm to the entire class. *Id.* GIS also relies on *Abrams v. Kelsey-Seybold Med. Grp., Inc.,* 178 F.R.D. 116 (S.D. Tex. 1997), a Title VII disparate impact case where plaintiffs do not identify a discriminatory practice. Plaintiffs do, in contrast, identify a policy or practice of prohibiting the Filipinos from leaving GIS's housing.

As argued more fully in Plaintiffs' certification Motion [Doc. 129-13 at 22-23], for the TVPA claims, GIS's intent is central to a determination of liability based on a "reasonable person" standard; the TVPA requires no individualized showing regarding Plaintiffs' choices or responses. All that needs to be answered is whether a reasonable person in these Plaintiffs' shoes would feel compelled to provide his labor against his will. *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2011 WL 7095434, at *8 (C.D. Cal. Dec. 12, 2011).[10]

Similarly, liability for the FHA claims require inquiry into a defendant's "own conduct that results in a discriminatory housing practice" and whether that defendant "fail[ed] to take prompt action to correct and end a discriminatory housing practice," 24 CFR § 100.7, not into each

---

[10] In addition, unlike *Francis*, 2021 WL 4487985, at *9, where the court denied TVPA class certification noting that "no singular or standardized policy or practice [was] at issue," Plaintiffs here have shown a strictly enforced policy of prohibiting the Filipinos from leaving GIS property. The threats and retaliation that Plaintiffs and Filipino workers faced flowed from GIS's policy and are not, by themselves, the basis of Plaintiffs' certification Motion.

GIS also cites *David v. Signal Int'l, LLC*, 2012 WL 10759668 (E.D. La. Jan. 4, 2012). The results of *Signal*, however, argue for certification as superior to individual actions. Resolving all claims in a single action is far better than twelve separate cases brought in different jurisdictions in two states on behalf of 190 plaintiffs, as occurred in *Signal*. *See* Doc. 129-13 at n.28. Further, the workers in *Signal* were free to come and go from the company's "man camps." Therefore, the basis for their coercion was the financial and reputational harm associated with their pre-employment recruitment fees, perceived promises of future green cards, and a subsequent effort to deport some of the worker leaders who were communicating with advocates. *Id*. at *2-13 (fact summary). It is therefore understandable (though subsequent courts evaluating class certification of TVPA claims have disagreed, *see, e.g., Owino v. CoreCivic, Inc.,* 2020 WL 1550218, at *27-28 (S.D. Cal. Apr. 1, 2020)), that the Court found workers' individual *perceptions* of their situation would be the driving force. In contrast, here there was a single common policy—GIS' rule prohibiting the Filipinos from leaving their housing—that formed the basis for Plaintiffs' class claims. Further, the law on the calculation of damages for TVPA claims has evolved significantly in the fourteen years since the *Signal* decision; allowing for a formulaic per diem damages calculation. [Doc. 129-13 at 14]. Finally, unlike Plaintiffs' claims here, the plaintiffs in *Signal* did not bring an "attempt" claim, which hinges entirely on the common question of Defendants' intent, rather than the employees' perception of Defendants' actions. [*Id*. at 13-14].

person's experience, as GIS claims. In addition, even if GIS had no formal policy prohibiting Filipino workers from leaving GIS property, yet such an informal policy existed at the bunkhouse and the quarantine vessels such that multiple levels of GIS's staff enforced it, GIS would still be held "vicariously liable for a discriminatory housing practice by [its] agent or employee *regardless of whether [GIS] knew or should have known of the conduct* that resulted in a discriminatory housing practice." *Id.* (emphasis added); *see, e.g. U.S. v. SSM Properties, LLC*, 619 F. Supp. 3d 602, 609 (S.D. Miss. 2022). Tellingly, GIS cannot point to any caselaw in support of its claim that the FHA claims in this case will require an individualized inquiry.

### b. Damages claims

GIS relies on *Allison v. Citgo Petroleum Corp.*, 151 F. 3d 402 (5th Cir. 1998) and *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 374 (S.D. Tex. 2006) (itself relying on *Allison*)*,* to argue that this case invites an individualized inquiry for damages and, thus, should not be certified as a class action. However, the Fifth Circuit has since distinguished *Allison* when reversing a denial of class certification in *Monumental Life Ins. Co.*, 365 F.3d 408, 419 (5th Cir. 2004) ("The prevalence of variables common to the class makes damage computation virtually a mechanical task.").

As detailed in Plaintiffs' certification Motion [Doc. 129-13 at 14, 22-23], a TVPA *per diem* damages methodology provides an objective criteria to determine non-economic damages for each class member based on Defendants' bunkhouse occupancy records. This eliminates the burden of adjudicating and fits within class damages models the Fifth Circuit has approved. *See, e.g., Deepwater Horizon*, 739 F.3d at 815-818.[11] Similarly, an individualized proof of injury is unnecessary for the Filipinos' FHA claims. In *Lincoln v. Case*, 340 F.3d 283, 294 (5th Cir. 2003), the Court upheld an FHA damage award comprised nearly entirely of punitive damages based on

---

[11] GIS also cites *Leon*, 2016 WL 6247674, at *7, but that court *did* find predominance, where restitution damages and civil penalties could be determined on a class-wide basis.

the behavior of the defendant, noting "the inherently low or hard-to-determine actual injuries in housing discrimination cases and the important goal of deterring future wrongdoing."

### F.  Class Treatment is Superior to Individual Cases under Rule 23(b)(3)

Remarkably, GIS attempts to relitigate the Court's arbitration decision issued in this case two-and-a-half years ago. *Ortiguerra v. Grand Isle Shipyard, LLC*, 630 F.Supp.3d 793 (E.D. La. 2022). However, Defendant's suggestion that *Calicdan v. MD Nigeria LLC*, 2023 WL 3946400 (5th Cir. June 12, 2023) has any bearing on class certification in this case is baseless.[12] Plaintiffs also have never claimed this is a "negative value" suit; nor is that the only basis to find superiority. Therefore, Defendants' reference to *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) is a non sequitur.

### G.  The Classes Are Adequately Defined

Reframing their prior arguments and citing no legal authority, Defendants suggest Plaintiffs' classes are not adequately defined. With respect to the TVPA claims, Plaintiffs address above, *supra* at p. 1-2, n.1, the "changed" conditions predating the actual claim period; nor, as Plaintiffs will establish at trial (but do not need to establish for class certification), is it unusual for workers subjected to forced labor to return from an underdeveloped nation to a coercive work environment in the United States. Defendants' analysis of Plaintiffs' FHA class definition is simply wrong. The class definition uses "and," meaning class members must (and do) meet all three prongs. Obviously, the class would not include a worker from Fiji.

**WHEREFORE,** Plaintiffs request that their Class Certification Motion be granted.

---

[12] *Calicdan* was a single-plaintiff case arising entirely out of the plaintiff's "working conditions and pay." *Id.* at *1. The plaintiff "worked and lived in a [single] fenced, gated, and locked compound." *See Calicdan*, 2022 WL 2165385, at *1 (M.D. La. May 17, 2022). He was not residing in employer housing between offshore work assignments, as the Court here determined was not "arising from" Plaintiffs' employment. *Ortiguerra*, 630 F.Supp.3d at 802-05.

Respectfully submitted this day: February 17, 2025.

/s/ Daniel Werner
Daniel Werner (GA Bar #422070)
Elaine Woo (GA Bar #430956)
Radford Scott, LLC
125 Clairemont Ave., Suite 380
Decatur, GA 30030
P: 404-400-3600
E: dwerner@radfordscott.com
E: ewoo@radfordscott.com
*(admitted pro hac vice)*

/s/ Kenneth C. Bordes
Kenneth C. Bordes (Bar #35668)
Amneh Attallah (Bar #41146)
Abigail L. Floresca (Bar #41248)
Kenneth C. Bordes,
Attorney at Law, LLC
4224 Canal St.
New Orleans, LA 70119
P: 504-588-2700
E: kcb@kennethbordes.com
E: amneh@kennethbordes.com
E: abigail@kennethbordes.com

11

**CERTIFICATE OF SERVICE**

 I hereby certify that on February 17, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system, which will send notification of such filing to all counsel of record.

/s/ Daniel Werner   